**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

MICHAEL LEIDIG and CENTRAL EUROPEAN
NEWS LTD,

                       Plaintiffs,

                    -against-

BUZZFEED, INC.,

                    Defendant.

No: 1:16-cv-00542 (RWS)

ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**MEMORANDUM OF LAW OF DEFENDANT BUZZFEED, INC.**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AND IN SUPPORT OF ITS MOTION TO COMPEL**

LEVINE SULLIVAN KOCH & SCHULZ, LLP
Katherine M. Bolger
Rachel F. Strom
Amy Wolf
321 West 44th Street, Suite 1000
New York, NY  10036
(T): (212) 850-6100
(F): (212) 850-6299
kbolger@lskslaw.com

OF COUNSEL:
Allison Lucas
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, NY 10003

*Attorneys for Defendant BuzzFeed, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND..................................................................................................2

A.   The Article .....................................................................................................................2

B.   The Complaint ................................................................................................................3

C.   Plaintiffs' Initial Document Production...........................................................................3

D.   The "Naked Lunch" Production......................................................................................4

E.   BuzzFeed's Compliance with its Discovery Obligations ..............................................6

F.   Plaintiffs' Improper Motion ..........................................................................................6

ARGUMENT ..........................................................................................................................6

I.   THIS COURT SHOULD DENY PLAINTIFFS'
     IMPROPER MOTION FOR PARTIAL SUMMARY JUDGMENT...............................6

     A.   Plaintiffs Have Not Come Close To Establishing Material Falsity ........................8

          1.   A Finding of Falsity Before Discovery
               is Unprecedented and Unwarranted ...............................................................9

          2.   Plaintiffs Have Failed to Demonstrate That
               the Article Is Materially False......................................................................11

          3.   This Court Should Grant Summary Judgment to BuzzFeed.....................14

     B.   Plaintiffs Cannot Be Deemed Private Figures at This Stage of the
          Litigation..........................................................................................................15

     C.   The Defamatory Implication of the Article Cannot Be Decided Before
          Discovery ..........................................................................................................19

II.  THIS COURT SHOULD GRANT BUZZFEED'S MOTION TO COMPEL
     PLAINTIFFS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS ................20

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*4Kids Entm't, Inc. v. Upper Deck Co.*,
     797 F. Supp. 2d 236 (S.D.N.Y. 2011)......................................................................14

*A.V.E.L.A., Inc. v. Estate of Monroe*,
     2014 WL 1408488 (S.D.N.Y. Apr. 11, 2014)..........................................................20

*Adler v. Conde Nast Publ'ns, Inc.*
     643 F. Supp. 1558 (S.D.N.Y. 1986)........................................................................17

*Aguilar v. Immigration & Customs Enf't Div. of DHS*,
     255 F.R.D. 350 (S.D.N.Y. 2008) ............................................................................21

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986)..................................................................................................7

*Anthropologie, Inc. v. Forever 21, Inc.*,
     2009 WL 690239 (S.D.N.Y. Mar. 13, 2009) ..........................................................22

*Aronson v. Wiersma*,
     65 N.Y.2d 592 (1985) ..............................................................................................19

*Biro v. Conde Nast*,
     883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................19

*Catalano v. BMW of N. Am., LLC*,
     2016 WL 3406125 (S.D.N.Y. June 16, 2016) .........................................................24

*Celle v. Filipino Reporter Enters. Inc.*,
     209 F.3d 163 (2d Cir. 2000).............................................................................. *passim*

*Chau v. Lewis*,
     771 F.3d 118 (2d Cir. 2014)......................................................................................8

*Church of Scientology Int'l v. Behar*,
     238 F.3d 168 (2d Cir. 2001)...................................................................................8, 9

*Coliniatis v. Dimas*,
     848 F. Supp. 462 (S.D.N.Y. 1994)...........................................................................9

*Condit v. Dunne*,
     225 F.R.D. 100 (S.D.N.Y. 2004) ......................................................................10, 11

*Contemporary Mission, Inc. v. N.Y. Times Co.*,
  842 F.2d 612 (2d Cir. 1988)...........................................................................15, 16

*In re Dana Corp.*,
  574 F.3d 129 (2d Cir. 2009)......................................................................................7

*DiBella v. Hopkins*,
  2002 WL 31357812 (S.D.N.Y. Oct. 18, 2002) .........................................................8

*Eckhaus v. Alfa-Laval, Inc.*,
  764 F. Supp. 34 (S.D.N.Y. 1991)............................................................................24

*Edmonds v. DOJ*,
  323 F. Supp. 2d 65 (D.D.C. 2004) ..........................................................................24

*Farber v. Jefferys*,
  103 A.D.3d 514 (1st Dep't 2013) ............................................................................17

*First Financial Ins. Co. v. Allstate Interior Demolition Corp.*,
  193 F.3d 109 (2d Cir. 1999).....................................................................................14

*Flamm v. Am. Ass'n of Univ. Women*,
  201 F.3d 144 (2d Cir. 2000).......................................................................................9

*G-I Holding, Inc. v. Baron & Budd*,
  218 F.R.D. 409 (S.D.N.Y. 2003) ...............................................................................7

*Gertz v. Robert Welch*,
  418 U.S. 323 (1974).............................................................................................15, 16

*Golub v. Enquirer/Star Grp.*,
  89 N.Y.2d 1074 (1997) ............................................................................................19

*Guccione v. Hustler Magazine, Inc.*,
  800 F.2d 298 (2d Cir. 1986)...................................................................................8, 9

*Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*,
  2006 WL 665005 (N.D. Ill. Mar. 8, 2006)..............................................................21

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
  201 F.3d 94 (2d Cir. 2000).........................................................................................7

*Hotchner v. Castillo-Puche*,
  404 F. Supp. 1041 (S.D.N.Y. 1975).........................................................................18

*James v. Gannet Co.*,
  40 N.Y.2d 415 (1976) .........................................................................................16, 18

iii

*Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys. Inc.*,
844 F.2d 955 (2d Cir. 1988)................................................................13, 14

*Lerman v. Flynt Distrib. Co.*,
745 F.2d 123 (2d Cir. 1984)................................................................16

*Love v. William Morrow & Co.*,
193 A.D.2d 586 (2d Dep't 1993) ........................................................9

*Massey Energy Co. v. United Mine Workers of Am., AFL-CIO, CLC*,
2006 WL 2578631 (Va. Cir. Ct. Aug. 4, 2006) ...................................18

*Masson v. New Yorker Magazine*,
501 U.S. 496 (1991)...........................................................................9

*Maule v. NYM Corp.*,
54 N.Y.2d 880 (1981) .........................................................................17

*Meloff v. N.Y. Life Ins. Co.*,
51 F.3d 372 (2d Cir. 1995)..................................................................8

*Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*,
2006 WL 2679940 (S.D.N.Y. Sept. 19, 2006)......................................12

*Metro Found. Contractors, Inc. v. Arch Ins. Co.*,
2011 WL 70561 (S.D.N.Y. Jan. 6, 2011) ............................................20

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)............................................................................15

*Patterson ex rel. Patterson v. FBI*,
893 F.2d 595 (3d Cir. 1990)................................................................24

*Phila. Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986)............................................................................9

*Ramsey v. NYP Holdings, Inc.*,
2002 WL 1402055 (S.D.N.Y. June 27, 2002) ...........................9, 10, 11

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
42 N.Y.2d 369 (1977) .........................................................................9

*Rivera v. NYP Holdings, Inc.*,
63 A.D.3d 469 (1st Dep't 2009) .....................................................9, 10

*St. Amant v. Thompson*,
390 U.S. 727 (1968)............................................................................15

*Sweeney v. Prisoners' Legal Servs. of N.Y.*,
    84 N.Y.2d 786 (1995) ...........................................................................................15

*Tavoulareas v. Piro*,
    93 F.R.D. 24 (D.D.C. 1981)...................................................................................18

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*,
    865 F.2d 506 (2d Cir. 1989)....................................................................................7

*Trulock v. Lee*,
    66 F. App'x 472 (4th Cir. 2003) ...........................................................................24

*Weiss v. Nat'l Westminster Bank, PLC*,
    242 F.R.D. 33 (E.D.N.Y. 2007) .....................................................................23, 24

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 34..........................................................................................................1, 21, 22
    Rule 56(d) .........................................................................................................7

Local Civil Rule 37.1 ...................................................................................................5

Defendant BuzzFeed, Inc. ("BuzzFeed") submits this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment and in support of its motion to compel plaintiffs Central European News Ltd ("CEN") and Michael Leidig ("Leidig" and, together, "Plaintiffs") to produce documents pursuant to Rule 34 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs, a news agency and its founder, brought this defamation action about a BuzzFeed article entitled "The King of Bullsh*t News: How a small British news agency and its founder fill your Facebook feed with stories that are wonderful, wacky — and often wrong" (the "Article").  The Article addresses the recent phenomena of "viral" or "fake" news and questions the accuracy of a number of articles that were sold by Plaintiffs to news outlets in the U.S. and U.K.  After months of research, BuzzFeed concluded that eleven of Plaintiffs' articles "proved to be completely false or to be based on images that did not match the stories," while "eight more contained suspicious details such as perfect quotes that appeared in no other coverage."  The Article specifically details the issues BuzzFeed found with fifteen of Plaintiffs' stories (together, "Disputed Stories" and, individually, a "Story"), ranging from a Story about a goat with two heads to a Story about teenagers walking cabbages on leashes that had been debunked by not only BuzzFeed but also the *Wall Street Journal* and the website *Kotaku*.

After filing its Answer, BuzzFeed served a number of discovery requests tailored to determining who worked on the Disputed Stories for Plaintiffs, who specifically was able to obtain the "perfect quotes," photos and details in the Disputed Stories and what specific sources CEN relied on for these Stories.  But, Plaintiffs have refused to comply with the document

---

[1]  The facts necessary for determination of this motion are set forth in the Declaration of Katherine M. Bolger, sworn to the 16th day of February 2017 (the "Bolger Declaration" or "Bolger Decl."), and the exhibits annexed thereto.

1

requests — claiming alternatively that they are not required to do so or that they are prohibited from doing so under European privacy statutes — and there have been no depositions.

Instead, Plaintiffs filed this baseless motion for partial summary judgment — seeking an order that the Article is defamatory and false, and that they are not public figures, as the term is defined under United States libel law.  In doing so, Plaintiffs have shown their fundamental misunderstanding of both the discovery process and their constitutional obligation to establish that the "gist" and the "sting" of the Article is materially false.  Because of this burden, there is simply no precedent to grant a pre-discovery motion for summary judgment on the issue of falsity against a media defendant in a defamation action.  In any event, the so-called evidence presented by Plaintiffs is unconvincing.  They have provided only a self-serving declaration from Leidig that claims that the Disputed Stories are accurate but presents no evidence in support thereof and a declaration from one of Leidig's colleagues who admits that a CEN Story was false but, after he conducted three hours of "internet research", believes it must have been "inspired" by some unspecified "Russian media" item.  These declarations do not establish that the Article is false or that Plaintiffs are not public figures.  Plaintiffs' motion must be denied.

The real issue here is Plaintiffs' complete refusal to engage in discovery and provide the evidence that BuzzFeed needs to defend this action.  Rather than granting Plaintiffs' motion, this Court should grant BuzzFeed's motion to compel Plaintiffs to participate in discovery.

## FACTUAL BACKGROUND

A.      **The Article**

On April 24, 2015, BuzzFeed published a months-long investigative piece about Plaintiffs.  As the Article details:

> [CEN's] business model, like that of many other news agencies, is to sell
> a regular stream of stories and pictures to other media companies, which
> publish them under the bylines of their own reporters. In CEN's case,

> these include a string of stories from relatively remote parts of China,
> India, Russia, and other non-Western countries. They tend to depict the
> inhabitants of those countries as barbaric, sex-crazed, or just plain weird.
> And often they are inaccurate or downright false.

Bolger Decl., Ex. 1 ("Compl."), Ex. A.  After months of research, during which BuzzFeed

analyzed 41 of Plaintiffs' stories, BuzzFeed concluded that many of CEN's stories "proved to be

completely false," or "contained suspicious details . . .  that appeared in no other coverage."  The

Article then specifically details the problems with fifteen Disputed Stories.  *Id.*

**B.      The Complaint**

On January 25, 2016, Plaintiffs instituted this defamation action, claiming that the Article

was false and defamatory, and asserting two claims for libel, one from Mr. Leidig and the other

from CEN.  Compl., *generally.*  BuzzFeed answered on March 25, 2016.  Bolger Decl., Ex. 2.

**C.      Plaintiffs' Initial Document Production**

On July 14, 2016, BuzzFeed served its First Request for the Production of Documents

and Things to Plaintiffs (the "First Requests").  *See* Bolger Decl. ¶ 4 & Ex. 3.  The First Requests

instructed that documents were, consistent with the Federal Rules, to be produced "in both a .pdf

or .tiff image format with a document-control number associated with each page of such images,

as well as in the native format of the material so that all associated metadata is also produced

with the electronic file."  *Id.*, Ex. 3 at Instructions & Definitions ¶ 45.

On August 16, 2016, Plaintiffs served their response to the First Requests (the

"Response"), lodging no objections and agreeing to produce all responsive documents.  *Id.* ¶ 7 &

Ex. 6.  Shortly thereafter, counsel for Plaintiffs informed counsel for BuzzFeed that Plaintiffs

had in their possession nearly 20,000 responsive documents and, therefore, Plaintiffs wished to

narrow the search terms.  *Id.* ¶ 8 & Ex. 7.  Plaintiffs never proposed new search terms, but when

Plaintiffs made their first document production on October 13, 2016, the production contained only 389 documents. *Id.* ¶ 9 & Ex. 8.

Further, the first production did not comply with the Federal Rules. The documents were either manually manipulated PDFs, PDFs of emails without related metadata, summaries of underlying documents not produced, or documents generated by Plaintiffs. For example, Plaintiffs' response to Request No. 106, which sought financial records, included one PDF that appears to be a summary of self-selected financial data as well as "an additional note," which constituted Plaintiffs' analysis of its finances and the conclusion that the Article "clearly resulted in a significant decline in sales," without providing any underlying documents in support thereof. *Id.* ¶ 9(b) & Ex. 10. In fact, Plaintiffs have produced no documents that comply with the First Requests. *See id., e.g.,* ¶ 9(c-d) & Exs. 11-14.

The first production also included several text files, seemingly prepared by Plaintiffs, containing a description of Plaintiffs' apparent defense of the truthfulness of their stories. These "arguments" were not verified and contained no supporting evidence. *Id.* ¶ 9(a) & Ex. 9.

D.     **The "Naked Lunch" Production**

Plaintiffs made a second document production on October 27, consisting of eleven documents pertaining to what was defined in the First Requests as the Naked Lunch Story, one of the Disputed Stories. *Id.* ¶¶ 11-12. That story, published by CEN, was about two Russian women who were reportedly fired from their jobs after being photographed naked while on their lunch breaks. *Id.*, Ex. 17. The Article challenged CEN's version of the story on the basis that CEN attributed the photograph to the wrong photographer, the women identified in the story did not work where CEN's story claimed they did, and their names were incorrect. Compl., Ex. A. The October 27 production, designed specifically to bolster the Naked Lunch Story, however, failed to do so. It included only manipulated and incomplete documents. Bolger Decl. ¶ 12 &

4

Ex. 17.  For example, Plaintiffs produced screenshots of web pages purporting to reflect original media reports of the Naked Lunch Story, a partial Google translation of one such web page, and a report prepared by a third party in defense of CEN's reporting of the Naked Lunch Story.  *Id.* The documents were produced with no metadata — they were simply generated by Plaintiffs after the lawsuit commenced.  *Id.*  Moreover, as explained in Exhibit 19 to the Bolger Declaration, even these documents supported the truth of the BuzzFeed Article.

On October 24, 2016, counsel for BuzzFeed notified counsel for Plaintiffs that Plaintiffs' production was incomplete and did not comply with Federal Rule of Civil Procedure 34.  *Id.* ¶ 10 & Ex. 15.  Pursuant to Rule 37, counsel for both parties met and conferred via telephone on November 1, at which point Plaintiffs took the position that Plaintiffs produced documents in groups corresponding to the relevant requests and, therefore, Plaintiffs need not produce documents in any other format.  *Id.* ¶ 13.  In response, in a letter dated November 23, 2016, BuzzFeed detailed the requirements of Rule 34 as well as production formats.  *Id.* ¶ 16 & Ex. 20. In the November 23 letter, BuzzFeed informed Plaintiffs that it intended to seek relief from the Court if the aforementioned deficiencies were not remedied by December 9, 2016.  *Id.*[2]

On December 9, Plaintiffs agreed to remedy its document productions by December 14 but did not contact BuzzFeed again until December 19, at which point Plaintiffs' counsel represented that they would reproduce documents "in a few weeks" and would be in touch shortly regarding a schedule for such additional productions.  *Id.* ¶¶ 17-18 & Exs. 21-22.  But on December 23, Plaintiffs' counsel conveyed that Plaintiffs "have hit a snag because of the potential criminal penalties under Austrian privacy law of conveying documents containing

---

[2]  Pursuant to Local Civil Rule 37.1, the discovery requests and responses to which this motion is addressed are set forth verbatim in Exhibits 3 and 6 to the Bolger Declaration.

'personal information,' which is broadly defined." *Id.* ¶ 19 & Ex. 23.  This is the first time any such objection to the First Requests were made, and no further details were given.  *Id.*

To date, Plaintiffs have neither remedied their productions nor provided BuzzFeed with any additional responsive documents.  *Id.* ¶¶ 20-21.

## E. BuzzFeed's Compliance with its Discovery Obligations

BuzzFeed, however, has made four productions, consisting of 5,371 pages, and continues to produce documents on a rolling basis.  *Id.* ¶ 22.

## F. Plaintiffs' Improper Motion

After six months of refusing to engage in any real discovery, Plaintiffs filed this pre-discovery summary judgment motion for a finding that the Article is false and defamatory and that they are not "public figures."  In doing so, Plaintiffs have provided only (1) a self-serving declaration from Plaintiff Leidig himself in which he states that he believes that five out of the fifteen Disputed Stories are true, and (2) a declaration from Leidig's former colleague that admits that the Naked Lunch story was false but claims it was "inspired" by some unspecified Russian news coverage.

## ARGUMENT

Plaintiffs' premature motion — which wholly ignores the heavy burdens the First Amendment places on libel plaintiffs — must be denied.  Rather, Plaintiffs' should be compelled to produce responsive documents and meet their discovery obligations in this case.

## I.
## THIS COURT SHOULD DENY PLAINTIFFS'
## IMPROPER MOTION FOR PARTIAL SUMMARY JUDGMENT

This Court should refuse to sanction Plaintiffs' attempt to avoid their discovery obligations and deny Plaintiffs' premature partial motion for summary judgment.  Indeed,

Plaintiffs' evidentiary support is so weak that if summary judgment were to be granted at all, it must be in favor of BuzzFeed.

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). In reviewing the summary judgment record, "the court must *draw all reasonable inferences in favor of the nonmoving party*." *Id.* at 152 (emphasis in original) (internal marks and citation omitted). If it is even "arguable" that a non-moving party's claim has merit, the summary judgment motion must be denied. *Id.* Further, pursuant to Federal Rule of Civil Procedure 56(d), a summary judgment motion must be "refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (under former rule 56(f)). Thus, "when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *G-I Holding, Inc. v. Baron & Budd*, 218 F.R.D. 409, 413 (S.D.N.Y. 2003) (Sweet, J.). This is because "[t]he nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (citation omitted). "Only in the rarest of cases may summary judgment be granted [against a party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

There are significant issues of material fact that remain outstanding in this dispute. Specifically, Plaintiffs allege the Article was false; BuzzFeed alleges it is true. This dispute is

confirmed by Plaintiffs' own 56.1 Statement, in which they note that almost every fact is disputed.  *See* Plaintiffs' 56.1 Statement, Dkt. 17, ¶¶ 4- 26.  On this basis alone, Plaintiffs' motion should be denied.

Further, in a defamation action, pre-discovery summary judgment motions in favor of the plaintiff are unheard of.  Plaintiffs fail to cite a single libel case in which summary judgment was entered against the defendant before discovery was conducted — and BuzzFeed is unaware of the existence of such a case.  That is because, to prevail on a defamation claim, a *plaintiff* must prove that there was (1) a false and (2) defamatory statement (3) published about the plaintiff without privilege or authorization to a third party (4) with the requisite degree of fault that (5) caused damage.  *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).  Because Plaintiffs bear the burden of establishing these elements, summary judgment may not be entered against BuzzFeed before discovery has proceeded, particularly when no depositions of any of Plaintiffs' witnesses have been taken.  *See Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 374 (2d Cir. 1995) (grant of summary judgment premature in defamation action before depositions taken); *DiBella v. Hopkins*, 2002 WL 31357812, at *1 (S.D.N.Y. Oct. 18, 2002) ("motion was clearly premature.  It was filed before discovery was complete in defamation action and even before" party depositions were completed).  The motion is premature, and should be denied on that basis alone.

A.      **Plaintiffs Have Not Come Close To Establishing Material Falsity**

In addition, the motion should be denied because there remains a disputed question of material fact as to whether the Article is materially false.  It is axiomatic that "[f]alsity of a statement is needed to make out a claim of libel."  *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).  A statement need not be literally true; "'substantial truth' suffices to defeat a charge of libel."  *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (citation omitted).

"Material falsity" is not the same thing as a minor error. As the United States Supreme Court has explained, a statement is not materially false so long as "'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (citation omitted); *accord Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379-83 (1977). "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson*, 501 U.S. at 517 (citation omitted); *Love v. William Morrow & Co.*, 193 A.D.2d 586, 588 (2d Dep't 1993). It naturally follows that if the statements complained of are substantially true, a defamation claim fails as a matter of law. *Id.*; *Guccione*, 800 F.2d at 301.

In cases involving matters of public concern, the First Amendment places the burden of proving material falsity entirely on the plaintiff. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000). Plaintiffs cannot meet this burden.

1.   <u>**A Finding of Falsity Before Discovery is Unprecedented and Unwarranted**</u>

First, BuzzFeed should be allowed to take discovery before the Court can determine if the Article is materially false. Material falsity is inherently a factual issue that should not be resolved against a defendant until it has had the opportunity to take discovery. *See, e.g., Church of Scientology*, 238 F.3d at 173 ("resolution of the falsity" issue "typically requires discovery"); *Coliniatis v. Dimas*, 848 F. Supp. 462, 468 (S.D.N.Y. 1994) (declining to examine whether an issue of fact as to the falsity was raised because "the parties have not yet engaged in discovery").

The right of a defendant to take discovery on a truth "defense" is so broad that it is proper "to permit the defendant to engage in discovery in support of a truth defense (or a falsity claim)" even without "some indication that [the defendant] has a good-faith basis for maintaining that its statements were in fact true." *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *4-5

(S.D.N.Y. June 27, 2002). *See also Rivera v. NYP Holdings, Inc.*, 63 A.D.3d 469, 469 (1st Dep't 2009) ("defendants are entitled to the opportunity to demonstrate the truth of the articles *as a whole* warranting disclosure even as to assertions in those articles that are not directly challenged in plaintiff's complaint" (emphasis in original) (internal citation omitted)).  For example, in *Condit v. Dunne,* 225 F.R.D. 100 (S.D.N.Y. 2004), the defendant was entitled to broad discovery on the issue of the plaintiff 's sexual relationships even though the plaintiff "only challenge[d] the statements as to their criminal implications" because, the court noted, "[u]nfortunately for plaintiff, he opened that door himself by filing this lawsuit, the Court cannot allow plaintiff to walk through freely while holding defendant in check at the gate." *Id*. at 110-11.

Here, the Article questions the accuracy of Plaintiffs' reporting, while focusing specifically on the fifteen Disputed Stories.  Compl., Ex. A.  As a result, BuzzFeed is entitled to discovery as to all these stories — and more.  As set forth in the Bolger Declaration, this means that BuzzFeed is entitled to documents and deposition testimony from Plaintiffs regarding, among other things: (1) the sources for the Disputed Stories, (2) who was responsible for the newsgathering of the Disputed Stories, (3) what Plaintiffs did to verify the Disputed Stories, and (4) if any of Plaintiffs' other stories have proved to be false or inaccurate.  Without this information, to which all libel defendants have long been entitled, BuzzFeed would be checked at the gate and cannot fully defend against this action.

Plaintiffs claim that BuzzFeed should not be entitled to take any discovery in this action because:  "[w]ith respect to the truth of the publication, either BuzzFeed has evidence of plaintiffs' fraud or it does not.  If it chose to publish without such evidence, it should not be afforded to rummage around in plaintiffs' documents hoping to find something to support its claim."  Pls.' Mem. in Supp. of Partial Summ. J., Dkt. 20 ("Mem."), at 18.  This argument is

specious at best.  As *Ramsey* and *Condit* make clear, the "rummaging" Plaintiffs refer to is the broad discovery to which BuzzFeed is entitled to take of the Plaintiffs as a libel defendant in this country.  And if Plaintiffs were correct, every libel plaintiff in America could bring a pre-discovery summary judgment motion and demand that the defendant produce all evidence in response.  But this is precisely the type of "railroading" that the Second Circuit warned against. Plaintiffs' request for a finding that the Article is materially false before they provide any discovery must be denied.

      **2.**      **Plaintiffs Have Failed to Demonstrate That the Article Is Materially False**

In any event, Plaintiffs have utterly failed to carry their burden of demonstrating that the "gist" of the Article as a whole is false such that summary judgment could be appropriate here. If anything, the weakness of their arguments highlight the truthfulness of the Article as a whole.

As discussed above, to prevail, Plaintiffs must establish the material falsity of the Article as a whole; substantial truth defeats a finding of material falsity.  *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 182, 188 (2d Cir. 2000).  Here, the Article focuses on the accuracy of Plaintiffs' reporting, including the fifteen Disputed Stories.  But Plaintiffs' motion cherry-picks only five stories to defend, wholly ignoring the ten other Disputed Stories or the accuracy of their reporting.  Leidig never mentions the Disputed Stories about the high school teacher sex scandal, the Justin Bieber ringtone that thwarted a bear attack, the Chinese "sex" vacation, the underwear thief, the naked sunbather, the cheating twin sister, or the four separate stories of penis-chopping.  Declaration of Michael Leidig, Dkt. 18 ("Leidig Decl."), *generally*.  Finally, Plaintiffs fail to address the follow-up article that BuzzFeed published debunking a CEN story about a drunken Santa Claus.  Bolger Decl. ¶ 28.  There is *no* evidence — much less sufficient evidence — that the Article's reporting as to ten out of the fifteen Disputed Stories or the follow-up article were materially false.  This failure dooms Plaintiffs' motion.

11

The evidence Plaintiffs do submit — two declarations from Leidig and a man named Flemming Emil Hansen — is too weak to meet their burden.  This Court should afford little if any weight to Leidig's self-serving declaration before BuzzFeed has had the chance to cross-examine him.  *See Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*, 2006 WL 2679940, at *7 (S.D.N.Y. Sept. 19, 2006) ("inappropriate to grant summary judgment based solely on [an employee's] self-serving affidavit when [defendant] moved for summary judgment well before discovery in this case was scheduled to close").  And Mr. Hansen's declaration is inadmissible because it is not based on first-hand knowledge or even admissible evidence.  *See* Declaration of Flemming Emil Hansen, Dkt. 19 ("Hansen Decl."), *generally*.  For example, Mr. Hansen does not claim to have any personal knowledge regarding the newsgathering or sources for the CEN story he discusses, nor has he adequately explained the procedures for his purported internet research or authenticated the documents attached to the declaration.  *See* accompanying Motion to Strike Declaration of Flemming Emil Hansen.   As such, neither declaration is enough to carry Plaintiffs' heavy burden to establish material falsity.

But even if this Court were to consider the declarations, they cannot establish falsity.  For example, the Article reports that a CEN story about a goat with two heads featured an image of the goat.  The Article explains that, while the photo is credited to Plaintiffs' publication Europics, it originated with a different Chinese news agency and was digitally altered.  Compl., Ex. A.  In response, Leidig swears "[w]e got the quotes from videos that were available online in China, so the implication that we made up the quotes is false."  Leidig Decl. ¶ 21.  This response does not address the allegation in the Article that CEN falsely claimed credit for a fabricated photograph and does not name any specific source for the CEN Story.  It is a far cry from establishing that the Article's description of the two-headed goat story was false.  Plaintiffs' so-

called evidence of the falsity of three other stories — the cabbage story, the pink kitten story and the tapeworm story — is similarly weak:  the only evidence he offers is his own statement that the stories are true.  *See id.* ¶¶ 16 (Cabbage Story), 18 (Tapeworm Story), 19 (Pink Kitten Story).

The Leidig and Hansen Declarations, designed to "prove" that Plaintiffs did not make up the "Naked Lunch Story" are also not up to the task.  As discussed above, the Article stated the CEN Naked Lunch Story misnamed the photographer, misnamed the women in the photos and misdescribed the women's employment status.  Neither declaration rebuts any of the specific issues that the Article identified in the story: neither Hansen nor Leidig address the Article's claim that women's names and job status were wrong.  Neither Hansen or Leidig dispute that a photograph that accompanied the CEN piece was attributed to the wrong photographer; Hansen only claims that *other* photos in the CEN piece must have been provided by *other* photographers. And neither Hansen nor Leidig ever identifies any single source for the CEN Story, claiming it must have been based on some other unspecified "Russian media" publication not attached to his declaration.  Hansen Decl. ¶¶ 2, 4, 7.  Hansen even concedes the Naked Lunch story is false.  *Id.* ¶ 4.  As such, the Plaintiffs have not established that they are entitled to summary judgment.

In this way, this case is much like *Celle v. Filipino Reporter Enters. Inc.*, where the Second Circuit found that the testimony from the Plaintiff, a radio commentator and broadcaster, that various allegedly defamatory statements by the defendants were false was insufficient to meet his burden of falsity.  209 F.3d 163.  "To accept such a colorless denial as sufficient proof would effectively shift plaintiffs' burden of establishing falsity onto media defendants to establish truth. . . . [B]enign denials, in the absence of *at least* foundation testimony or extrinsic evidence, are not sufficient to satisfy the constitutional requirement that a public figure establish falsity."  *Id.* at 188-89.  *See also Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys. Inc.*,

844 F.2d 955, 959-60 (2d Cir. 1988) (private figure plaintiff's "conclusory assertions" failed to meet burden to establish falsity).  In *Celle*, the Court explained that, for example, when claiming that a statement that the radio station has "dwindling listeners and advertisers" was false, instead of just relying on *ipse dixits*, plaintiff "could have discussed the advertising trends at [the station]. He also could have introduced evidence detailing advertising volume or gross advertising sales for the period leading up to the second article without revealing proprietary information in a damaging way."  209 F.3d at 188.  Similarly here, all Plaintiffs have set forth are colorless denials — Plaintiffs failed to name the sources Plaintiffs' relied on for the Disputed Stories, the names of the reporters who worked on the Stories or some other foundation for their "benign denial."  Because Plaintiffs have not met their burden here, their motion should be denied.

**3.    This Court Should Grant Summary Judgment to BuzzFeed**

As the Second Circuit has explained, "if a motion for summary judgment has been made, a district court may grant summary judgment to any party — including a non-movant."  *First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999); *see also 4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) ("Court may search the record and grant summary judgment to either party whose claim has been proved or disproved").  Here, Plaintiffs brought this premature motion and were, therefore, required to bring forward their evidence to meet their burden to ensure that this Court is "left with no apprehension on the issue of falsity. "  *Celle*, 209 F.3d at 182.  For the reasons set forth above, Plaintiffs have not established that the Article is false.  Because falsity is the *sine qua non* of a defamation claim, therefore, summary judgment should be granted to BuzzFeed and the case should be dismissed.

**B.**     **Plaintiffs Cannot Be Deemed Private Figures at This Stage of the Litigation**

This Court should also deny Plaintiffs' request for a finding that they are private figures. To the contrary, this Court should determine that they are public figures.

The First Amendment public figure doctrine strikes a balance between the state's interest in protecting against and remedying harm to an individual's reputation, on the one hand, and "'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,'" on the other.  *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 619 (2d Cir. 1988) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 270 (1964)).  Essentially, individuals who have chosen to engage in public commentary or activity must accept a greater risk of adverse comment in light of this "'profound national commitment'" to freedom of speech as embodied in the First Amendment.  *Id.*  If a plaintiff is deemed to be a public figure in a libel case, the First Amendment requires the plaintiff to establish that the defendant acted with actual malice.  Mem. at 15-16.  To demonstrate actual malice, a plaintiff must prove that the defendant subjectively *knew* that a statement was false or actually held *serious doubts* about its truth, but published anyway.  *See Sweeney v. Prisoners' Legal Servs. of N.Y.*, 84 N.Y.2d 786, 793 (1995); *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968).  "Whether a plaintiff is a public figure is a question of law for the court."  *Celle,* 209 F.3d at 176.

General fame and celebrity is not a necessary element of being a public figure for purposes of a defamation lawsuit.  Rather, defamation law recognizes a category of "limited purpose public figures" who "have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them" by their participation in the public arena, and typically they "have greater access to the media and thus are in a better position to contradict a lie or correct an error."  *Contemporary Mission, Inc.*, 842 F.2d at 619-20 (quoting *Gertz v.*

15

*Robert Welch*, 418 U.S. 323, 344-45 (1974)).  As Plaintiffs note, the Second Circuit has

identified four factors that are typically taken into account in determining whether a plaintiff will

be deemed a limited purpose public figure:

> the plaintiff has: (1) successfully invited public attention to his views in
> an effort to influence others prior to the incident that is the subject of
> litigation; (2) voluntarily injected himself into a public controversy
> related to the subject of the litigation; (3) assumed a position of
> prominence in the public controversy; and (4) maintained regular and
> continuing access to the media.

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984); Mem. at 17.  The New York

Court of Appeals has similarly framed the public figure analysis as a person who "has taken an

affirmative step to attract public attention" or "strived to achieve a measure of public acclaim."

*James v. Gannet Co.*, 40 N.Y.2d 415, 422-23 (1976).

Under this standard, even based on the slim record here, Plaintiffs must be considered a

limited purpose public figures.  Plaintiff Leidig alleged that, before the publication of the Article,

he was a "successful" journalist, Compl. ¶ 22, and swears under oath that he founded plaintiff

CEN in 1995 to report "stories from non-English speaking countries" and sells them to some of

the most well-known and successful media entities in the world,  Leidig Decl. ¶¶ 4-5.  Leidig

also swears he started the nonprofit "Journalism Without Borders," serves as vice-Chair of the

National Association of Press Agencies, authored six books, and won prestigious awards for his

journalism.  *Id.* ¶¶ 6-7.  CEN describes itself as creating "the English-language news for the

respected Austrian daily newspaper *Die Presse,* and also producing the English-language pages

of the world's oldest newspaper in continuous operation, *The Wiener Zeitung*."  Compl. ¶ 23.

These facts establish that they are public figures.

For example, in *Celle*, the Second Circuit found both a radio commentator at a radio

station that targets the New York City Filipino–American community and the owner of the radio

station to be public figures.  209 F.3d at 176-77.  The Court reasoned that plaintiff Celle's "own characterization of himself as a 'well known radio commentator' within the Metropolitan Filipino–American community" was sufficient, in and of itself, to find that he was a public figure.  *Id.* at 177.  And the "owner and operator of a primary media outlet of the Metropolitan Filipino–American community — allowing it access to the 'channels of communication' to rebut defamatory accusations — supports characterizing it as a public figure."  *Id.*

In other cases, courts have found journalists to be public figures where he or she "enjoys significantly greater access to the channels of effective communication and hence has a more realistic opportunity to counteract false statements than private individuals normally enjoy."  *Adler v. Conde Nast Publ'ns, Inc.* 643 F. Supp. 1558, 1564-65 (S.D.N.Y. 1986) (internal marks and citation omitted) (writer at Vanity Fair who had "sought publicity for her work" and several of her pieces had "invited attention and comment" could not "now claim . . . that she is not a public figure.").  *See also Farber v. Jefferys*, 103 A.D.3d 514, 515-16 (1st Dep't 2013) (award winning journalist who wrote on the subject of AIDS denialism a public figure where she challenged statements by AIDS activist claiming that plaintiff misrepresented scientific data); *Maule v. NYM Corp.*, 54 N.Y.2d 880, 882-83 (1981) (plaintiff a public figure where, by his own admission, he "was one of the best known writers at Sports Illustrated," published more than two dozen books, received a number of awards, and "all of this came from plaintiff's own lips").

Similarly here, Plaintiffs have invited comment about their role in the controversy surrounding "fake news" and "viral news" — something that was of extreme public importance even before the recent headlines in the wake of the U.S. presidential election.  And Plaintiffs access to channels of communication cannot be doubted — Plaintiffs plead they wrote a book about BuzzFeed about this dispute.  Leidig Decl. ¶ 7 (BuzzFeed Bottom Feeders).  The record is

17

clear, in the world of journalism, Plaintiffs claim to have sought and achieved recognition for their journalistic bona fides — the very crux of the public figure analysis under *James*. As such, even based on this record, there is sufficient evidence to declare Plaintiffs public figures.

In any event, if this Court does not determine Plaintiffs to be public figures at this point, at the very minimum, the law is clear that defendants are entitled to take discovery to determine whether plaintiffs are public figures. *See Hotchner v. Castillo-Puche*, 404 F. Supp. 1041, 1046-477 (S.D.N.Y. 1975) (determining public figure status based on deposition testimony and interrogatory responses); *Tavoulareas v. Piro*, 93 F.R.D. 24, 27–28 (D.D.C. 1981) (corporation required to produce documents regarding "speeches, articles, books, and press releases . . . materials highly relevant to the question of [CEO's] public figure status."); *Massey Energy Co. v. United Mine Workers of Am.*, *AFL-CIO, CLC*, 2006 WL 2578631, at *3 (Va. Cir. Ct. Aug. 4, 2006) (plaintiffs must respond to discovery aimed at establishing their public figure status and noting that "[i]t is not dispositive that Plaintiffs neither appeared in nor publicly endorsed the advertisements"). Plaintiffs are incorrect when they claim that BuzzFeed is not entitled to any discovery on the issue because the evidence must be public. Mem. at 18.

Discovery into Plaintiffs' public figure status is especially important here. In Plaintiffs' initial disclosures, they admit that they had over a dozen "publishing products" or publishing titles, and they have since removed the websites for all of the products before the lawsuit was commenced. Bolger Decl. ¶ 32 & Ex. 25 at 4. *See also id.* ¶ 37 & Ex. 28 at Admission Nos. 15-16 (admitting that Leidig instructed his IT company to close the news sites). Discovery is, therefore, particularly important as Plaintiffs have themselves disposed of the public evidence.

This Court should deem Plaintiffs to be public figures based on the record that Plaintiffs have presented here, or, at the very least, BuzzFeed should be entitled to discovery on the issue.

## C.  **The Defamatory Implication of the Article Cannot Be Decided Before Discovery**

Finally, this Court must deny Plaintiffs motion for summary judgment on the question of whether the Article is susceptible of a defamatory meaning because the motion is premature.  A statement is defamatory if it "tends to expose the person to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of the person in the minds of right thinking persons."  Mem. at 12.  As Plaintiffs note, "[w]hether a publication is capable of a defamatory meaning is an initial [question] for the court to decide."  *Id.* at 12 (internal marks and citation omitted).  In making this determination, a court must construe the words "in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction."  *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985).  *See also Golub v. Enquirer/Star Grp.*, 89 N.Y.2d 1074, 1076 (1997) (statements cannot be made defamatory by "'a strained or artificial construction.'" (citation omitted)).

Here, Plaintiffs claim the Article is susceptible of several defamatory meanings, including that the Article accuses them of "criminal conduct," Mem at 12-13, and claims that Plaintiffs are the "largest purveyors of [false] articles in the world."  *Id.* at 2-3.  In particular, Plaintiffs argue that the Article *implies* such meanings — rather than make them directly.  In libel by implication cases, however, a plaintiff is required to make "an especially rigorous showing that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (citation omitted).  Here, Plaintiffs have made no such showing both because these implications are unreasonable and because Plaintiffs did not plead that BuzzFeed intended to endorse the implications.  As such, the parties must take discovery of the journalists that worked on the Article to establish their intention in drafting the Article.

19

For these reasons, BuzzFeed respectfully requests that this Court deny Plaintiffs' motion and allow BuzzFeed time to conduct the discovery to which it is entitled.

## II.
### THIS COURT SHOULD GRANT BUZZFEED'S MOTION TO COMPEL PLAINTIFFS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS

This Court should, instead, grant BuzzFeed's motion to compel Plaintiffs to comply with their discovery obligations and produce authentic documents in response to BuzzFeed's First Requests.  Under the Federal Rules, "[w]here one party fails to respond to a discovery request, or provides evasive or incomplete responses, the aggrieved party may seek an order to compel disclosure or discovery." *A.V.E.L.A., Inc. v. Estate of Monroe*, 2014 WL 1408488, at *3 (S.D.N.Y. Apr. 11, 2014).  The party seeking to compel production bears the burden "to cast doubt on the responding party's representation that they have conducted a reasonable and adequate search for responsive documents." *Id.* (internal marks and citation omitted); *see also id.* at *5 (compelling production of underlying documentation to support previously produced summary).  As discussed in greater detail below, however, Plaintiffs' productions are woefully deficient because (1) they are incomplete, (2) they have not been produced in proper form under Rule 34 and (3) Plaintiffs have produced mostly "summaries" of arguments but not the documents that establish their foundation.

First, it is beyond question that Plaintiffs are required to produce responsive documents to Defendant in this litigation.  *See Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 2011 WL 70561, at *2 (S.D.N.Y. Jan. 6, 2011) (imposing sanctions on party that "willfully refuse[d] to produce responsive documents").  Here, despite agreeing to produce all responsive documents to the First Requests without objection and repeatedly informing BuzzFeed that it has tens of thousands of documents, Plaintiffs have produced a mere 400 documents, most of which are not

authentic or otherwise proper.  Plaintiffs are, by their own admission, withholding thousands of relevant documents.  This conduct is simply not permissible and this Court should order Plaintiffs to produce all responsive documents or face dismissal.

Next, this Court should require Plaintiffs to remedy the deficiencies in the few documents they have already produced.  Rule 34(b)(2)(E)(i) states that parties "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  In addition, as it relates to the production of electronic documents, Rule 34(b)(2)(E)(ii) states that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form of forms."  Thus, plaintiffs cannot "convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in litigation."  *See, e.g., Aguilar v. Immigration & Customs Enf't Div. of DHS*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) (compelling production of documents containing metadata that had specifically been requested and intentionally manipulated); *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L*, 2006 WL 665005, at *3 (N.D. Ill. Mar. 8, 2006) (adopting position that Rule 34 requires the presentation of evidence in its original format and compelling production where the challenged documents "do not contain all of the relevant, nonprivileged information contained in the designated electronic media").

Plaintiffs' production openly flouts these Rules.  BuzzFeed's First Requests required documents to be produced "in both a .pdf or .tiff image format with a document-control number associated with each page of such images, as well as in the native format of the material so that all associated metadata is also produced with the electronic file."  *See* Bolger Decl., Ex. 3 at

Instructions & Definitions ¶ 45.  Although Plaintiffs never objected to the requested format, Plaintiffs failed to comply.  This alone renders Plaintiffs' production insufficient.  In addition to disregarding the requested format and failing to suggest an alternative form, Plaintiffs have also manually manipulated several documents, rendering them neither authentic nor usable by BuzzFeed.  Specifically, Plaintiffs converted web pages and emails into PDFs with manual annotations and produced partial and inaccurate Google-translated version of foreign-language documents.  *See id.* ¶¶ 9, 12 & Exs. 9-14, 17.  These manipulated documents, without any original metadata, are impermissible under Rule 34(b)(2)(E)(ii) and this Court should order Plaintiffs to correct these deficiencies.

Similarly, Plaintiffs failed to produce the documents underlying various summaries of responsive documents and text files containing Plaintiffs' post-hoc arguments in defense of CEN stories.  The production "of summaries . . . is not a substitute for production of the raw data on which the summaries are based" and BuzzFeed need not "take such summaries — apparently prepared exclusively for the litigation — on faith."  *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 WL 690239, at *3-4 (S.D.N.Y. Mar. 13, 2009) (ordering production of "data and documentation on the basis of which [the non-moving party] prepared each of the summaries that they have proffered").  Here, Plaintiffs claimed that they could not produce original underlying documents — in particular the original reports that served as the basis for CEN stories — because they no longer existed and because Plaintiffs lacked the capacity to properly produce such a large volume of data.  *See* Bolger Decl. ¶¶ 17, 32 & Exs. 21, 25 at 4.  But Plaintiffs are clearly able to obtain the relevant documents because they pulled screenshots and manipulated them, or created a Google translation, prior to producing them.

Finally, to the extent that Plaintiffs argue that they cannot produce additional documents without violating Austrian data privacy laws, this argument is unpersuasive.  *See id*. ¶ 19 & Ex. 23.  Notably, Plaintiffs did not mention any such objection in their response to Defendant's First Requests.  *Id.* ¶ 19 & Ex. 6.  Instead, this was first raised long after the time to respond to Defendant's First Requests had passed.  *Id.* ¶ 19 & Ex.23.  Plaintiffs claimed to "be seeking the advice of Austrian and English counsel and are going to proceed as rapidly as possible" but have yet to provide any additional documents.  *Id.*, Ex. 23  Further, when a party objects to document requests on the basis of a foreign law, the burden is on the objecting party to "provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law."  *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 40 (E.D.N.Y. 2007) (internal marks and citation omitted).  In making the determination, courts in this Circuit consider,

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

*Id.* at 42 (citation omitted).  Applying these factors here, this Court should compel Plaintiffs to produce documents responsive to BuzzFeed's requests.

First, other than referencing Austrian "privacy law," Plaintiffs have made no specific showing as to what foreign law is prohibiting their production.  Next, the information sought by BuzzFeed is crucial to its ability to defend itself in this case.  BuzzFeed seeks documents that would establish the sourcing for the Disputed Stories and could conclusively establish that the Article's contention that the Plaintiffs published articles without proper sourcing is true.  *See,*

*e.g.*, Bolger Decl. ¶ 26 & Ex. 27 at Request Nos. 6, 8-67.  In addition, BuzzFeed seeks

documents related to Plaintiffs' now defunct websites, *id.* at Request Nos. 80-82, their alleged

damages, *id.* at Request Nos. 102-113, and other information essential to this lawsuit.  These

documents are also unavailable by alternative means.  Finally, as discussed above, Plaintiffs

disabled their websites before commencing this litigation, so BuzzFeed is unable to access them

either to establish what the Plaintiffs have reported in the past or their public figure status

without copies produced by Plaintiffs.

　　　　Plaintiffs chose to file this lawsuit; they should not now be allowed to invoke foreign law

to hamstring BuzzFeed's ability to defend itself.  *See Weiss*, 242 F.R.D. at 57-58 (rejecting

foreign law objection); *see also Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125, at *8

(S.D.N.Y. June 16, 2016) (concluding that while Germany has an interest in data protection, the

objecting party had "presented only a vague and hypothetical conflict between discovery under

the Federal Rules and the [German privacy laws], which is insufficient to warrant denial of

[Plaintiff's] discovery request[.]").  If Plaintiffs continue to invoke Austrian privacy law to avoid

disclosure, this Court should dismiss this case, as many courts have similarly done.  *See Trulock*

*v. Lee*, 66 F. App'x 472, 473-74 (4th Cir. 2003); *Eckhaus v. Alfa-Laval, Inc.*, 764 F. Supp. 34,

37-38 (S.D.N.Y. 1991); *Edmonds v. DOJ*, 323 F. Supp. 2d 65, 79 (D.D.C. 2004), *aff'd*, F. App'x

6 (D.C. Cir. 2005); *Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 604-05 (3d Cir. 1990).

Accordingly, this court should compel Plaintiffs to now produce authentic documents responsive

to the First Requests or face dismissal.

**<u>CONCLUSION</u>**

Plaintiffs' pre-discovery motion for summary judgment is so devoid of supporting evidence that, based on the record before the Court, if summary judgment were to be granted at all, it must be for BuzzFeed.  At a minimum, this Court should compel Plaintiffs to comply with the discovery obligations in the case they chose to bring and immediately produce authentic documents.  For all of the foregoing reasons, Defendant BuzzFeed, Inc. respectfully requests that this Court deny Plaintiffs' motion and, instead, either grant summary judgment to BuzzFeed and dismiss the action or compel Plaintiffs to produce authentic documents responsive to BuzzFeed's First Requests.

Dated:  February 16, 2017

Respectfully submitted,

Of Counsel:
Allison Lucas
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, NY 10003

By:  _/s/ *Katherine M. Bolger*_____
Katherine M. Bolger
Rachel F. Strom
Amy Wolf
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(T): (212) 850-6100
(F): (212) 850-6299
kbolger@lskslaw.com
rstrom@lskslaw.com
awolf@lskslaw.com

*Attorneys for Defendant BuzzFeed, Inc.*