**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL LEIDIG and CENTRAL EUROPEAN
NEWS LTD,

                   Plaintiffs,

            -against-

BUZZFEED, INC.,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No:  1:16-cv-00542 (VM) (GWG)

ECF Case

**MEMORANDUM OF LAW OF DEFENDANT BUZZFEED, INC. IN SUPPORT OF ITS**
**MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND**
**VIOLATIONS OF THIS COURT'S DISCOVERY ORDERS**

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Rachel F. Strom
Amy Wolf
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
(T): (212) 489-8230
(F): (212) 489-8340
katebolger@dwt.com

OF COUNSEL:
Allison Lucas
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, NY 10003

*Attorneys for Defendant BuzzFeed, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND ...........................................................................2

      A.     Plaintiffs Consistently Contemplated Litigation Since April 2015 ............2

      B.     Plaintiffs Fail to Produce Proper and Authentic Documents .......................3

      C.     The First Motion to Compel and Subsequent Order ...................................4

      D.     Plaintiffs' Continued Discovery Violations ................................................5

      E.     The Second Conference .........................................................................7

      F.     Plaintiffs Failed to Prepare a Rule 30(b)(6) Witness .................................7

      G.     Plaintiffs' Court-Ordered Deposition Confirmed Rampant
            Spoliation and other Violations of the Court's Discovery Orders ..............8

ARGUMENT ...............................................................................................11

  I.     PLAINTIFFS SHOULD BE SANCTIONED FOR FAILURE TO
       PREPARE A RULE 30(b)(6) WITNESS ................................................12

  II.    PLAINTIFFS' RAMPANT SPOLIATION OF EVIDENCE IS
       SANCTIONABLE ...............................................................................13

      A.     Plaintiffs' Neglected Their Duty to Preserve Evidence .............................14

      B.     Plaintiffs Were Culpable in Their Destruction of Evidence .......................16

      C.     The Destroyed Evidence is Critical to Assessing the Claims in this
            Case and its Deletion Prejudices BuzzFeed's Ability to Defend
            Itself .............................................................................................21

  III.   DISMISSAL IS THE APPROPRIATE SANCTION FOR SPOLIATION
       AND OTHER DISCOVERY VIOLATIONS .......................................25

CONCLUSION ............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agneil v. Central Park Boathouse LLC*,
  2015 WL 463971 (S.D.N.Y. Jan. 25, 2015) .......................................................................12

*Arista Records v. Usenet.com, Inc.*,
  608 F. Supp. 2d 409 (S.D.N.Y. 2009).......................................................................15, 19, 20

*Beers v. General Motors Corp.*,
  1999 WL 325378 (N.D.N.Y. May 17, 1999) ...................................................................26

*Ceglia v. Zuckerberg*,
  2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013), *cert. denied*, 136 S. Ct. 823
  (2016).........................................................................................................................13, 26

*Chira v. Lockheed Aircraft Corp.*,
  85 F.R.D. 93 (S.D.N.Y. 1980), *aff'd*, 634 F.2d 664 (2d Cir. 1980).........................26

*Contemporary Mission, Inc. v. N.Y. Times Co.*,
  842 F.2d 612 (2d Cir. 1988)...............................................................................23

*Coty Inc. v. Excell Brands LLC*,
  2016 WL 7187630 (S.D.N.Y. Dec. 9, 2016) .......................................................12, 13

*De Castro v. Kavadia and Nice Gems, Inc.*,
  309 F.R.D. 167 (S.D.N.Y. 2015) ...........................................................................25

*Diapulse Corp. of Am. v. Curtis Publ'g Co.*,
  374 F.2d 442 (2d Cir. 1967).................................................................................26

*Hochberg v. Howlett*,
  1994 WL 174337 (S.D.N.Y. May 3, 1994), *aff'd* 50 F.3d 3 (2d Cir. 1995)...............11, 26, 27

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984).................................................................................23

*Passlogix, Inc. v. 2FA Tech., Inc.*,
  708 F. Supp. 2d 378 (S.D.N.Y. 2010)................................................................16, 17

*PSG Poker, LLC v. DeRosa-Grund*,
  2008 WL 190055 (S.D.N.Y. Jan. 22, 2008) .......................................................16, 21

*Richard Green (Fine Paintings) v. McClendon*,
  262 F.R.D. 284 (S.D.N.Y. 2009) ...........................................................................11

*Sekisui Am. Corp. v. Hart*,
   945 F. Supp. 2d 494 (S.D.N.Y. 2013)................................................................14, 17

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015).......................................................14, 17, 21

*Spanski Enterprises, Inc. v. Polska*,
   2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009) .........................................................12

*West v. Goodyear Tire & Rubber Co.*,
   167 F. 3d 776 (2d Cir. 1999)...................................................................................26

*Zimmerman v. Polly Prep County Day School*,
   2011 WL 1429221 (EDNY April 13, 2011) ...........................................14, 23, 24

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ...............................................................14, 16, 18

## Other Authorities

Fed. R. Civ. P. 30(b)(6)................................................................................................12, 13

Fed. R. Civ. P 37...................................................................................................11, 12, 26

Defendant BuzzFeed, Inc. ("BuzzFeed") submits this memorandum of law in support of its motion for sanctions against plaintiffs Central European News Ltd ("CEN") and Michael Leidig ("Leidig" and, together, "Plaintiffs") for spoliation of evidence and numerous violations of this Court's discovery orders pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This Court should dismiss Plaintiffs' complaint or otherwise sanction Plaintiffs for failure to comply with their discovery obligations in a lawsuit they chose to commence.  In April 2017, BuzzFeed moved to compel Plaintiffs to produce authentic documents and raised the issue of Plaintiffs' potential spoliation of their news websites.  This Court granted that motion, finding Plaintiffs to be "woefully neglectful," Dkt. No. 44 at 2:7, and describing their document productions as "almost contumacious," *id.* at 6:18-19, and "sanctionable," *id.* at 12:15. BuzzFeed then returned to this Court in July to address further spoliation by Plaintiffs and additional violations of the Court's previous order.  At that conference, the Court ordered a deposition of the Plaintiffs about their discovery efforts, noting that after the deposition BuzzFeed "may be in a much better position on not merely a spoliation motion but a dismissal motion if [Plaintiffs] are incapable of providing acceptable answers about document production." Dkt. No. 59 at 11:1-10.

That is precisely what has happened.  Plaintiff Michael Leidig, testifying on his own behalf and as the Rule 30(b)(6) designee for CEN, testified that Plaintiffs made absolutely *no* efforts to preserve evidence relevant to their claims prior to filing the lawsuit — and, according to one of Leidig's many differing and inconsistent accounts, CEN did not send its employees any preservation instructions until *after* this Court granted BuzzFeed's motion to compel in April of this year.  Plaintiffs' deposition also confirmed that the failure to adequately preserve documents has, in fact, resulted in rampant spoliation of evidence.  Plaintiffs concede that, at the very least,

after first threatening BuzzFeed with litigation, they disabled their news websites, deleted e-mails of two critical witnesses and wholesale destroyed the metadata associated with hundreds of files they attempted to produce in this litigation.

In the face of Plaintiffs' admitted failure to preserve relevant materials and their subsequent destruction of evidence, as well as Plaintiffs' "almost contumacious" and "sanctionable" document productions, BuzzFeed is now hamstrung from defending itself in this litigation.  Plaintiffs have simply flouted the obligations imposed on them in a lawsuit they chose to bring.  Accordingly, this Court should dismiss Plaintiffs' complaint and/or otherwise sanction Plaintiffs.

## FACTUAL BACKGROUND

### A.    Plaintiffs Consistently Contemplated Litigation Since April 2015

Plaintiffs brought this suit on January 25, 2016, claiming they were defamed by a BuzzFeed article (the "Article") that challenged the veracity and sourcing of several of Plaintiffs' news stories (the "Disputed Stories").  But Plaintiffs had anticipated bringing this lawsuit long before that date.  In fact, they did so before the Article was published.  When BuzzFeed, in the course of its newsgathering, sought Plaintiffs' comment for the Article, Plaintiffs responded by retaining London's most well-known claimant's side defamation firm, Carter-Ruck.  Carter-Ruck sent a letter to BuzzFeed on April 22, 2015 complaining about the allegations in the Article and specifically reserving all legal rights.  *See* Declaration of Katherine M. Bolger ("Bolger Dec.") ¶ 1 & Ex. 1 (BuzzFeed_005712) (the "Carter-Ruck Letter"); *id.*, Ex. 25 (Deposition Transcript of Michael Leidig, August 11, 2017) ("Leidig Tr.") at 81:18-82:4.

On August 18, 2015, Plaintiffs' counsel in this lawsuit sent another legal claim letter to BuzzFeed.  Bolger Dec. ¶ 4 & Ex. 3.  Plaintiffs' counsel and BuzzFeed's in-house counsel subsequently met in person to discuss the potential claim on September 3, 2015.  *Id.*  Plaintiffs'

counsel then informed BuzzFeed on October 9, 2015 that he would provide BuzzFeed with "a copy of my complaint before I file it," as "a courtesy." *Id.* ¶ 5 & Ex. 4. Plaintiffs have, therefore, anticipated this litigation since April 2015.

### B.     Plaintiffs Fail to Produce Proper and Authentic Documents

Nonetheless, in their Initial Disclosures, Plaintiffs admitted that they disabled many of their news websites — including those on which the Disputed Stories were originally published — in the months between threatening litigation and initiating this lawsuit. *See* Bolger Dec. Ex. 5 at 4. Plaintiffs also identified Kathryn Michner, CEN's News and Picture Editor, and John Feng, CEN's China Desk Manager, as relevant witnesses who have "information concerning . . . the preparation and publication of the [Disputed Stories]." *Id.* at 1-2.

BuzzFeed served its First Request for the Production of Documents and Things to Plaintiffs (the "Document Requests") on July 14, 2016, which sought all documents concerning Plaintiffs' distribution channels for news items, Plaintiffs' websites and the decision to disable them, all Internet publications concerning Plaintiffs as well as other public recognition Plaintiffs have received. *See* Bolger Dec. ¶ 8 & Ex. 6 (Request Nos. 76, 80-82, 85-92, 94). Plaintiffs also sought all documents related to the Disputed Stories. *Id.* at Request Nos. 8-67.

On August 16, 2016, Plaintiffs served their response to the Document Requests, lodging no objections and agreeing to produce all responsive documents. *Id.* ¶ 9 & Ex. 7.

Despite representing to BuzzFeed that Plaintiffs were in possession of nearly 20,000 responsive documents, Plaintiffs thereafter made two scant productions — one on October 13, containing 389 documents, and the other on October 27, consisting of only eleven documents. *Id.* ¶ 11. Plaintiffs did not produce copies of the now-disabled websites and/or newsgathering

materials for the Disputed Stories.[1]  Plaintiffs' first document production did not contain any metadata, and instead consisted of documents that were manually manipulated PDFs, summaries of underlying documents not produced, and screenshots and other text files generated by Plaintiffs after publication of the Article.  *Id.*  Plaintiffs also represented to BuzzFeed that they had been advised that producing various documents would be improper under Austrian privacy laws.  *See id.* ¶ 12 & Ex. 9; Dkt. No. 34 at ¶ 8 & Ex. B.

### C.      The First Motion to Compel and Subsequent Order

BuzzFeed then moved to compel Plaintiffs' production of authentic documents responsive to the Document Requests.  *Id.* ¶ 15; *see also* Dkt. Nos. 26-28.  At a hearing on that motion on April 12, 2017, Plaintiffs' appeared to withdraw their argument that they were prohibited from producing documents under Austrian privacy laws.  Dkt. No. 44 at 5:22-25. And the Court rejected whatever remained of this argument in granting BuzzFeed's motion, ordering Plaintiffs' to produce *all* authentic documents responsive to the Document Requests, with corresponding metadata and without any screenshots or manual manipulations.  *See* Dkt. No. 44 at 9:12-15 ("I feel strange writing the word authentic form in an order when it's like saying don't make up documents . . . it's so obvious it seems peculiar."); *id.* at 9:21-24 ("You have to produce the original documents and if they're in electronic form they have to be extracted in some form that the defendant can use."); *id.* at 12:5-17 (stating that Plaintiffs cannot "mak[e] up documents and then act[] as if that was an appropriate production" and warning that, should Plaintiffs' counsel "have a client writing up things and claiming this is the production[,] that is sanctionable").  *See also* Dkt. No. 43 (the "April Order").

BuzzFeed also informed the Court at the conference that copies of Plaintiffs' now-

---

[1] Plaintiffs' Answer to Defendant's Requests for Admission later confirmed that the websites were destroyed over a period of time from May 2015 to October 2015 — six months after the Carter-Ruck Letter.  *See* Bolger Dec. ¶¶ 13-14 & Exs. 10-11 at Request for Admission at No. 16.

disabled websites were not among Plaintiffs' produced documents.  *See* Dkt. No. 44. at 15:3-19.

Plaintiffs assured the Court that, if the websites were able to be obtained, they would "certainly

be produced."  *Id.* at 16:21-17:2.  After BuzzFeed confirmed that these documents were sought

in their Document Requests, *id.* at 17:10-11, the Court responded "[i]f you don't get anything on

that then that will give you an answer and you have a spoliation[,]" *id.* at 17:12-14.

### D.      Plaintiffs' Continued Discovery Violations

Plaintiffs have since produced another 2,500 documents, consisting of 6,000 pages,

between May 15 and July 6.[2]  Bolger Dec. ¶ 16.  Yet Plaintiffs again failed to produce preserved

copies of their websites, and instead directed BuzzFeed to visit the "Wayback Machine" at

https://web.archive.org/ to obtain copies of the relevant websites.  *See* Bolger Dec., Ex. 13.

In addition, the productions contained hundreds of documents with missing or otherwise

incorrect metadata.  For example, although Leidig testified that all newsgathering materials

related to the Disputed Stories could be found in the Global Internet News ("GIN") database,

Plaintiffs produced only a few screenshots from that system.  *See, e.g.,* Bolger Dec., Ex 14.  As

another example, Plaintiffs produced hundreds of screenshots of Outlook files, websites and

other images related to the Disputed Stories with incomplete or incorrect corresponding metadata.

*Id.* ¶ 18(c) & Ex. 17.  Finally, Plaintiffs also produced at least one Word document containing

Plaintiffs' own description of various website links, accompanied by partial screenshots of those

websites and Google translations of the material on those websites.  *Id.*, Ex. 15 (CEN_0003711).

Some of these documents appear to have been created in 2016, *after* Plaintiffs initiated this

lawsuit.  *Id.* Ex. 16 (CEN_0003927).  The metadata that Plaintiffs' produced with these

documents was often either missing a date of creation or states they were created as recently as

May 2017 but last modified in October 2016 — *after* BuzzFeed served the Document Requests.

---

[2] BuzzFeed has produced more than 5,000 documents, consisting of almost 16,000 pages.  *Id.* ¶ 17.

*Id.* ¶ 18(d) & Ex. 17 (metadata chart with GIN documents highlighted).

These productions also contained questionable documents that suggested Plaintiffs had deleted relevant evidence.  For example, Plaintiffs produced an e-mail from Mr. Feng, CEN's China Desk Manager who was responsible for a number of the Disputed Stories, to Leidig, dated May 1, 2017.  That May 1 e-mail forwarded an earlier e-mail dated April 27, 2015 that had been sent from Mr. Feng to Ms. Michner — notably after Plaintiffs retained Carter-Ruck — that specifically addressed the purported newsgathering for one of the Disputed Stories.  Bolger Dec., Ex. 18 (CEN_0004072).  But Plaintiffs did not produce the underlying 2015 e-mail.  Bolger Dec. ¶ 18(e).  When presented with this absence, Plaintiffs suddenly found the underlying 2015 document, but produced it to BuzzFeed in an unusual format.  The document that purports to be the original 2015 e-mail is missing text, and that missing text is attached to the cover e-mail in an oddly formatted document which has no metadata.  *Id.* Ex. 19 (CEN_005771-CEN_0005773).  *See also* Bolger Dec. ¶ 18(e) & Ex. 22 (all instances of Mr. Feng's e-mails forwarded in 2017 and versions of the purported underlying 2015 e-mails later produced by Plaintiffs).

When asked about these documents, Plaintiffs first blamed this production format on a collection issue, stating that this "happened due to them being taken from a Mac version of outlook."  Bolger Dec., Ex. 20.  But Plaintiffs later placed blame on the fact that the documents were "produced from other data bases but not from computers at CEN's office in Vienna."  Bolger Dec., Ex. 21.  Plaintiffs then stated that the issue "does not reflect any failure to conduct appropriate searches" but that "some emails have been *deleted either intentionally*, to create more space in .pst files that were full, or unintentionally as a result of corruption in those files resulting from their being overly full."  *Id.* (emphasis added).  Plaintiffs simultaneously admitted that before actually deciding to bring this lawsuit, "there was no effort made to preserve, in

particular, documents that might be relevant to litigation, and no special effort was made to preserve documents concerning the BuzzFeed piece." *Id.* These failures prompted BuzzFeed to again seek this Court's intervention.

### E.      The Second Conference

On June 30, BuzzFeed filed a letter seeking a pre-motion conference to discuss with the Court a motion for sanctions based on Plaintiffs' spoliation as well as other failures to comply with their discovery obligations and violations of this Court's April Order. *See* Dkt. No. 51. The parties appeared before the Court on July 14, at which point the Court granted BuzzFeed permission to file a motion for spoliation at any time and ordered Plaintiffs to produce a witness for a deposition pursuant to Rule 30(b)(6) "on the issue of document production" to develop a factual record of "exactly how these documents were generated, what form they're kept in, [and] what documents there are." *See* Dkt. No. 59 (the "July Order") at 2:14-16; *id.* at 10:12-16. The Court stated that Plaintiffs "may designate . . . the agent they prefer as long as the person is totally educated. They may need to designate more than one agent if, for example, [an IT] firm has been involved in the search." *Id.* at 12:2-7. The Court also warned that if Plaintiffs are "incapable of providing acceptable answers about document production . . . that by itself might require a sanction or dismissal." *Id.* at 11:5-10.

### F.      Plaintiffs Failed to Prepare a Rule 30(b)(6) Witness

After serving a detailed Rule 30(b)(6) notice of deposition on the specific topics ordered by this Court, counsel for BuzzFeed deposed Leidig as a representative of CEN on August 11, 2017. *See* Bolger Dec., Ex. 24. As an initial matter, Leidig was wholly unprepared for the deposition. In fact, Leidig testified that his only preparation for the court-ordered deposition was "about a one-and-a-half hour meeting with" his counsel, where "there was some chitchat about some of the issues, but nothing really preparation." Leidig Tr. at 6:17-23. Leidig also testified

that he could not answer questions as to the search, retrieval, extraction and production of the

challenged documents, claiming that he is "not an IT expert," *id.* at 21:4-11, and that he "can't

answer [the] question" of where documents are located because "it would have been dealt with

by" someone else, *id.* at 193:14-20.  Leidig repeatedly stated that "it was never part of my remit

to ask" for certain information, *id.* at 215:4-217:22, and that he does not "know the details of

how" his IT consultant and e-discovery vendor — who he is "confident" in, *id.* at 38:3-18 —

collected documents but that he relied on them to "work[] it out," *id.* at 226:21-24.  Indeed, as to

the production of manipulated documents, Leidig testified on more than a dozen occasions that

he simply did not know how the process worked, what servers were searched, how the

documents were collected or how they came to be produced.  *See, e.g., id.* at 227:1-229:12,

233:1-5, 128:17-129:8, 232:5-237:3 (admitting the manual manipulation of John Feng

documents with no knowledge of how they were created); *id.* at 25:9-23, 28:18-27-13, 71:15-21

(no knowledge of GIN, Plaintiffs' newsgathering database); *id.* at 34:18-35:12, 116:2-123:22,

126:19 (no knowledge of which CEN servers were searched and where the produced documents

came from).  In total, Leidig testified that he "did not know" or "could not recall" an answer

nearly one hundred times throughout the six hour deposition.  *See generally*, *id.*

### G.    Plaintiffs' Court-Ordered Deposition Confirmed Rampant Spoliation and other Violations of the Court's Discovery Orders

To the extent Leidig could offer any testimony, it merely heightened Plaintiffs' discovery

failures.  Leidig testified that Plaintiffs had not preserved documents relevant to this lawsuit,

admitting that Plaintiffs made "no special effort" to preserve documents related to the BuzzFeed

Article until *after* the lawsuit was filed in January 2016, despite being on notice of such a claim

as early as April 2015.  Leidig Tr. at 44:23-46:12.  *See id.* at 44:25-46:4 ("there was no special

effort made to save those items"); *id.* at 106:21-107:2 (testifying that counsel "said to me now

8

we filed [the lawsuit], you've got to take steps to preserve everything related to this case"); *id.* at 149:10-19 ("Q: [W]hen did you preserve data or information relevant to this lawsuit?  A: I would say within an hour of the information of the actual case litigation being filed."); *id.* at 31:6-10 ("Q: Have you ever backed up GIN [Plaintiffs' system of managing news stories] or made a copy of GIN in any way to preserve it?  A: No, we haven't.  Q:  Why not?  A: Why should I?").

Leidig also testified that Plaintiffs did not send a litigation hold notice or instruct employees to maintain records until, at best, after the lawsuit was filed or, at worst, after the Court granted BuzzFeed's motion to compel in April.  *See, e.g., id.* at 219:14-220:25 ("Q: [D]id there come a time when you notified your staff to preserve documents related to the disputed stories discussed in the BuzzFeed article?  A:  Yes, there was.  Q:  When was that time?  A: Everyone in the Vienna office was notified in the first week I believe.  Q: Of what?  A:  Of the litigation being filed."); *id.* at 221:20-24 ("Q: Did you ever send a written notification to preserve documents?  A: Yes, I did.  Q: When did you do that?  A: Before the second production.").

Leidig also confirmed several instances of the destruction of documents and related metadata — sometimes intentionally — after he first retained legal counsel to address BuzzFeed's Article.  He specifically admitted that Plaintiffs' disabled their websites that had been identified in their Initial Disclosures "[s]hortly *after* the BuzzFeed legal case."  Leidig Tr. at 11:10-13:9 (emphasis added).  Leidig also confirmed that some of Ms. Michner's emails had been deleted by Plaintiffs' IT consultant, Harold Fuchs.  *Id.* at 40:4-41:7.  *See also, e.g.,* Leidig Tr. at 40:9-42:16 ("And it was — we didn't know what the problem was, I had no idea, and we called Mr. Fuchs in and he sorted it out by deleting e-mails . . . he also continued to do it as well.").  Leidig then suggested that e-mails from Mr. Feng were also deleted after Plaintiffs retained counsel.  *Id.* at 222:23-223:19 ("Q: But you no longer have these original e-mails on

your system, correct?  A: That's correct, yes.  Q: Why is that?  A: They could have been deleted. . . Could have been that Kathryn didn't want it at the time and she just deleted it when she'd had the information.  Maybe she forwarded it on to me and then deleted it. . . .  Q: This is after Carter-Ruck letter, right?  A: This is after Carter-Ruck letter, yes, it is.").  Similarly, Leidig finally conceded that the reproductions of certain 2015 e-mail chains from Mr. Feng were actually just created by his e-discovery vendor this year and were not the original preserved 2015 emails.  Leidig Tr. at 233:15-234:4 (testifying that TransPerfect "generated these documents").

Leidig also testified that while collecting documents without supervision or guidance, he moved files across devices, thus irreversibly destroying their metadata.  *See id.* at 114:14-21 ("I had to change the file name and then move it over manually to make sure it'd work and when it was there it would delete on the original, for example.").  Leidig even admitted that some of the metadata provided to BuzzFeed was, consequently, altogether missing or otherwise incorrect.  *Id.* at 165:19-21 ("Q: So the metadata is wrong?  A: It must be wrong.  That's right, yeah.").  In addition, Leidig acknowledged that when it came to the GIN database, which contained the most relevant materials pertaining to each of the Disputed Stories, including any raw newsgathering materials original sources and information concerning the reporters who worked on the Disputed Stories, *id.* at 22:6-23:21 & 34:3-16, he never "asked anyone if [he] could download information from GIN," *id.* at 72:10-21, and that he did not even ask the GIN host to access and search the database on the back end, *id.* at 84:1-23 & 88:19-23.  Instead, Leidig acknowledged that, with respect to GIN documents, Plaintiffs "took a screen shot of that and provided that — that screen shot, yes."  *Id.* at 50:21-22.  *See also id.* at 52:17-19 ("Q: So what you produced from GIN were simply screen shots?  A: Screen shots, yes.").  These screenshots admittedly contained incorrect

metadata.  *See id.* at 172:21-23 ("I don't think there can be metadata [for GIN].  How would you get metadata if you can't extract the data any other way?").

## <u>ARGUMENT</u>

This Court should sanction Plaintiffs' failure to preserve relevant evidence as well as the intentional disabling of their websites, deletion of other relevant documents and production of inauthentic documents with admittedly false or missing metadata.  Sanctions are also warranted for Plaintiffs' repeated violations of this Court's discovery orders, including failure to prepare a Rule 30(b)(6) witness and the continued assertion of the already rejected argument as to foreign privacy laws as a basis for withholding documents.

Rule 37 provides that a "court may impose a range of sanctions" for spoliation, "including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs."  *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 288 (S.D.N.Y. 2009).  *See also* Fed. R. Civ. P. 37(e).  The Federal Rules also "authorize[] a court to impose an array of sanctions for the failure of a party to obey a discovery order," including an "order striking out pleadings or parts thereof, or dismissing the action or proceeding or any part thereof."  *Hochberg v. Howlett*, 1994 WL 174337, at *3 (S.D.N.Y. May 3, 1994) (internal marks and citations omitted), *aff'd* 50 F.3d 3 (2d Cir. 1995) (table).  While dismissal of a claim is a "harsh sanction, courts have held that it is appropriate . . . where the noncompliance is due to willfulness, bad faith, fault or gross negligence[,] . . . [and] courts should not shrink from imposing harsh sanctions where they are clearly warranted."  *Id.* Here, Plaintiffs have both engaged in pervasive spoliation and repeated violations of this Court's discovery orders.  Accordingly, sanctions up to and including dismissal are appropriate.

## I.   PLAINTIFFS SHOULD BE SANCTIONED FOR FAILURE TO PREPARE A RULE 30(B)(6) WITNESS

First, this Court should sanction Plaintiffs for violating this Court's July Order to provide a knowledgeable Rule 30(b)(6) witness.

Rule 30(b)(6) provides that, "when a party seeking to depose a corporation or other organization announces the subject matter of the proposed deposition, that organization must produce someone familiar with that subject, who is able to give complete, knowledgeable and binding answers on its behalf.  When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose sanctions." *Spanski Enterprises, Inc. v. Polska*, 2009 WL 3270794, at *2 (S.D.N.Y. Oct. 13, 2009).  While the corporate representative need not have personal knowledge as to each of the noticed topics, "the corporation is obligated to prepare them so that they may give knowledgeable answers." *Id.* at *3.  *See also Agneil v. Central Park Boathouse LLC*, 2015 WL 463971, at *3 (S.D.N.Y. Jan. 25, 2015) (finding defendant neglected the obligation to prepare where witness "neither consulted with [company] employees nor reviewed any documents in preparation for the Rule 30(b)(6) deposition and [] his only preparation was an hour-and-a-half long meeting with his attorney.").  Courts will impose sanctions for failure to educate a Rule 30(b)(6) witness where "the inadequacies in a deponent's testimony [are] egregious." *Spanski*, 2009 WL 3270794, at *2.  A party's failure to prepare for a Rule 30(b)(6) deposition is especially egregious where the court "explicitly order[s] [the company] to produce a witness who was prepared to testify about the noticed topics" and the witness instead is "patently unprepared to do so." *Coty Inc. v. Excell Brands LLC*, 2016 WL 7187630, at *2-3 (S.D.N.Y. Dec. 9, 2016) (witness' failure to "to gather additional information prior to his deposition," given that it was court-ordered, "is egregious and worthy of sanctions.").

Here, as in *Coty*, sanctions are warranted for Plaintiffs' failure to prepare a Rule 30(b)(6) witness on the topics of Plaintiffs' document collection and production efforts.  The scope of the deposition as ordered by Your Honor — and the specific topics noticed — pertained to the technical aspects of Plaintiffs' document collection efforts and the subsequent manipulation of documents, affecting the merits of Plaintiffs' claims.  *See* Bolger Dec., Ex. 24.  And Your Honor specifically warned Plaintiffs that although they "may designate . . . the agent they prefer," they were required to ensure that the designee "is totally educated.  They may need to designate more than one agent if, for example, [an IT] firm has been involved in the search."  Dkt. No. 59 at 12:2-7.  Despite this explicit instruction, as set forth above, *see* supra at p. 7-8, Leidig failed to adequately prepare for the deposition, failing to even inquire about the noticed topics with Grainger Laffan, the IT programmer who designed GIN, or Mr. Fuchs, his IT consultant, or even to learn the name of the German company that provided his IT.  *See* Leidig Tr. at 6:13-7:15 (describing minimal preparation for the deposition).  This failure alone warrants dismissal.

## II.   PLAINTIFFS' RAMPANT SPOLIATION OF EVIDENCE IS SANCTIONABLE

Plaintiffs must also be sanctioned for the admitted and widespread failure to preserve data and the resultant destruction of relevant evidence.  Sanctions for the spoliation of evidence are appropriate where Plaintiffs "[1] had control over and an obligation to preserve the spoliated evidence, [2] the evidence was spoliated with a culpable state of mind given that Plaintiff[s] had to have understood the ramifications of [their] actions, and [3] the spoliated evidence was relevant to establishing either Plaintiffs' claims or Defendants' defenses."  *Ceglia v. Zuckerberg*, 2013 WL 1208558, at *69 (W.D.N.Y. Mar. 26, 2013), *cert. denied*, 136 S. Ct. 823 (2016).

A.       **Plaintiffs' Neglected Their Duty to Preserve Evidence**

The first prong of the spoliation test requires a showing that Plaintiffs had a duty to preserve relevant evidence — and it is indisputable that Plaintiffs were in possession of such evidence and had a duty to preserve it long before actually filing this lawsuit.

"[A] litigant has the duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 407 (S.D.N.Y. 2015) (internal marks omitted).  This Court has held that this "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  In other words, a duty to preserve arises when "litigation was reasonably anticipated." *Id.* at 217.  Litigation is reasonably anticipated, and a party is on notice of its duty to preserve, when the plaintiff threatens litigation and informs the other side of its purportedly unlawful conduct. *Skyline Steel*, 101 F. Supp. 3d at 409; *Zimmerman v. Polly Prep County Day School*, 2011 WL 1429221, at *16 (EDNY April 13, 2011) (duty attached when "given notice of potential pending litigation").

"If triggered, the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also take affirmative steps to prevent inadvertent spoliation." *Skyline Steel*, 101 F. Supp. 3d at 408 (internal citations and quotation marks omitted).  Litigants must therefore "identify all sources of potentially relevant evidence and implement a litigation hold suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *Id.  See also Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507-508

14

(S.D.N.Y. 2013) (finding failure to preserve documents and instruct a vendor to do the same was "inexcusable given that Sekisui is the plaintiff in this action and, as such, had full knowledge of the possibility of future litigation"); *Arista Records v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 433-34 (S.D.N.Y. 2009) (noting an obligation to preserve images of webpages from defendant's website, which contained evidence related to accusations).

Here, Plaintiffs do not dispute that they maintained and controlled the news websites at issue, Leidig Tr. at 8:15-11:9, or the relevant CEN employees' e-mails, *id.* at 62:8-11 & 124:12-17. It is clear that Plaintiffs' obligation to preserve this and other evidence arose as early as April 22, 2015, when they retained Carter-Ruck, their UK defamation counsel, to send a claim letter to BuzzFeed, *see* Bolger Dec., Ex 1; Leidig Tr. at 81:18-82:4, and it was certainly triggered by August 18, 2015 when Plaintiffs' American counsel was hired, Bolger Dec., Ex. 3.

Yet despite this obligation, Plaintiffs made absolutely no effort to preserve relevant documents until, at the earliest, when they actually filed this lawsuit. *See* Leidig Tr. at 44:25-46:4 (confirming that no efforts were made to preserve documents concerning the Article) & 106:21-107:2 (testifying that counsel instructed him to preserve documents after the lawsuit was filed). And, indeed, it is not clear that they made preservation efforts even then. In fact, while Leidig testified that Plaintiffs preserved data within one hour of filing the lawsuit, *id.* at 149:10-19, he later testified that Plaintiffs did not make any such efforts until one week after litigation commenced, *id.* at 219:14-220:25, and that he did not instruct employees to maintain records and not delete documents until just before "the second [document] production," which started just four months ago, in May 2017. *Id.* at 221:20-24; *see also* Bolger Dec. ¶ 16. [3]

---

[3] More generally, Leidig also confirmed that Plaintiffs failed to properly search and collect the data of all relevant custodians, including two CEN senior editors and two reporters who were responsible for editing some of the Disputed Stories. *See* Leidig Tr. at 99:2-100:2, 208:2-4. Leidig also revealed that his wife, Violeta Leidig would have information responsive to BuzzFeed's Document Requests but no such documents were produced. *See id.* at

Plaintiffs therefore ignored their obligation to take affirmative steps to prevent inadvertent spoliation when the duty to do so first arose.

## B.      Plaintiffs Were Culpable in Their Destruction of Evidence

Next, Plaintiffs failed to preserve and subsequently destroyed evidence with a culpable state of mind, thus satisfying the second prong of the spoliation test.  This Court has held that "a culpable state of mind for purposes of a spoliation includes ordinary negligence."  *Zubulake*, 220 F.R.D. at 220.  Indeed, "[o]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."  *Id.* at 220 & n.46 (citing *Keir v. Unumprovident Corp.*, 2003 WL 21997747, at *13 (S.D.N.Y. Aug. 22, 2003) (criticizing defendant for loss of e-mails even though loss occurred "through the fault of no one")).  The "failure to implement a litigation hold is, by itself, considered grossly negligent behavior" and sufficient to "satisf[y] [the] burden with respect to" culpability.  *Passlogix, Inc. v. 2FA Tech., Inc.*, 708 F. Supp. 2d 378, 414 (S.D.N.Y. 2010).  And a party's "repeated failure to either produce relevant documents or a credible story regarding their whereabouts — despite the admonitions of [the] court and repeated requests from [the opposing party] — can only be interpreted as an intentional and willful act."  *PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008).

Plaintiffs' failure to preserve relevant evidence and the subsequent disabling and deletion of such evidence is, at best, negligent and thus sufficiently culpable.  At worst, however, Plaintiffs intentionally destroyed these materials and dismissal is appropriate.

*First*, Plaintiffs' admitted failure to preserve documents or issue a litigation hold notice is, at minimum, grossly negligent.  Indeed, Plaintiffs conduct here is similar to that of the plaintiffs

---

107:22-24, 122:15-20, 167:8-20, 171:1-6.  Plaintiffs' counsel has since informed BuzzFeed that Plaintiffs did search and collect documents from these custodians but has not explained Leidig's completely contradictory testimony. *See* Bolger Dec., Exs. 25-26.  What is more, Leidig's testimony also made clear that he allowed CEN employees to first determine for themselves which documents were relevant to the litigation and to send that set of documents to him and/or Plaintiffs' vendor, at which point he and/or the vendor applied the relevant search terms. *See, e.g.,* Leidig Tr. at 51:21, 97:14-18, 109:14-20.

in *Sekisui*, where plaintiffs did not "implement appropriate document retention practices" until many months after first alerting defendants of their claim. 945 F. Supp. 2d at 507. And, once the litigation hold was issued, the *Sekisui* plaintiffs waited another six months to notify its vendor of the same duty to preserve. *Id.* The court found, then, that "failure to meet even the most basic document preservation obligations constitutes gross negligence[.]" *Id.* at 508. This was especially true where it was *plaintiffs* who failed to preserve materials, as it is *plaintiffs* who had full knowledge of their intent to initiate the litigation. *Id.* 507-508. *See also Skyline Steel*, 101 F. Supp. 3d at 411 ("spoliation sanctions are warranted based on [plaintiff's] failure to preserve the relevant [] data); *Passlogix, Inc.*, 708 F. Supp. at 414 (same).

Here, Plaintiffs admitted that they made "no special efforts" to preserve documents until after filing the lawsuit — long after the duty to do so attached. *See supra* at pp. 6-7.[4] They waited even longer to notify employees to maintain all relevant documents. *Id.* at pp. 8-9. Because Plaintiffs were the ones who knew of their claims and intent to file a lawsuit in April 2015, these failures to implement even the most basic of measures to preserve relevant evidence until nearly nine months later are sufficient to establish that they destroyed evidence with a culpable state of mind.

If that were not enough, however, Plaintiffs' culpability reaches far beyond their failure to preserve evidence. In fact, this failure resulted in confirmed instances of the disabling of

---

[4] Plaintiffs are similarly violating this Court's April Order by continuing to assert that Austrian privacy laws prohibit proper document collection and production although this argument was withdrawn by Plaintiffs' counsel and rejected by this Court. *See* Bolger Dec. ¶ 12 & Ex. 9. *See also* Dkt. No. 34 ¶ 8 & Ex. B.

Nonetheless, throughout his deposition, Leidig cited Austrian privacy laws as an excuse for Plaintiffs' failure to search several e-mail servers and produce the e-mails from particular custodians. Leidig specifically testified that Plaintiffs' IT consultant, Harold Fuchs, advised him that he could not search e-mails, Leidig Tr. at 32:3-36:12, and that it "would be illegal" to "access from CEN e-mails sent by CEN staffers" because "Austria has very, very strict privacy laws and [he] would not be allowed to see that material," *id.* at 31:20-32:16. *See also id.* at 37:8-38:18 (testifying that Mr. Fuchs insisted such searches were not possible). But Plaintiffs' failure to search documents under the guise of an already abandoned and rejected argument violates the Court's April Order and is, therefore, sanctionable.

Plaintiffs' websites, deletion of e-mails of two critical witnesses and destruction of the accompanying metadata — and these are just the examples of deletion that BuzzFeed knows about.  *See* Leidig Tr. at 11:10-13:9; Bolger Dec., Exs. 5 & 11 (conceding that their websites were disabled between May 2015 and October 2015); Leidig Tr. at 40:9-42:16 & 222:23-223:19 (admitting to the deletion of e-mails from two core custodians who were identified by Plaintiffs in their Initial Disclosures as having relevant information); *id.* at 114:14-21, 165:19-21, 177:21-25 & 179:4-7 (testifying to irreversibly destroying the metadata of hundreds of documents when improperly removing and deleting original files during the document collection process). Because *Zubulake* holds that *any* deletion after the duty to preserve attaches is at least negligent, 220 F.R.D. at 220 & n.46, Plaintiffs' admitted deletion of relevant documents and metadata establishes that they acted with a culpable state of mind.

All told, instead of complying with the April Order to produce original and authentic documents — not manufactured screenshots — that contain appropriate metadata, Plaintiffs produced twenty screenshots of the pages in GIN for the Disputed Stories and hundreds of screenshots of various websites that Plaintiffs claim were created in 2015 when investigating the allegations in BuzzFeed's Article.  *See* Bolger Dec. ¶ 18 & Exs. 14-17.  And Leidig confessed that the metadata for the aforementioned screenshots was either destroyed, Leidig Tr. at 114:14-21 & 179:4-7, or otherwise incorrect, *id.* at 165:19-21 & 177:21-25.  *See also id* at 50:21-22, 52:17-19, 172:21-23.  Bolger Dec., Ex. 17 (list of bates numbers for the documents that contain incorrect, incomplete or altogether missing metadata, with GIN documents highlighted). BuzzFeed, therefore, is left with no explanation for when the screenshots were actually created — and no reliable metadata with which to cross-examine Plaintiffs on their claims.

*Second*, although this Court need not find that Plaintiffs *intentionally* destroyed evidence, Plaintiffs' inconsistent and ever-changing explanations as to what efforts were made to preserve documents warrants such a finding.  This court has made clear that, where a party "has provided, at best, misleading" or contradictory explanations for the "failure to preserve the requested discovery," a court "can assume the deletion was made in bad faith."  *Arista Records*, 608 F. Supp. 2d at 434-39.  Such contradictory testimony is exactly what Plaintiffs have offered here. Plaintiffs provided three separate answers as to what specific efforts Plaintiffs took to preserve documents and when those steps were taken.  *See* Leidig Tr. at 106:21-107:2 & 149:10-19.  And, similar to the defendants in *Arista*, Plaintiffs also have failed to provide a credible story as to why or how relevant documents and metadata were destroyed, further supporting a finding that their deletion was intentional.  Specifically, Plaintiffs first represented to this Court that their websites were disabled because they were purportedly "no longer useful" *after* publication of the Article.  Dkt. No. 44 at 16:1-7.  But Plaintiffs' counsel has since informed BuzzFeed that the websites were already "almost moribund at the time of publication of the BuzzFeed piece" and were destroyed *before* the publication of the article because they later became too difficult to maintain.  *See* Bolger Dec., Ex. 13 and Leidig Tr. at 11:24-13:5.

Similarly, Plaintiffs cannot provide a coherent story regarding their production of screenshots with incorrect or missing metadata.  The most glaring example stems from Plaintiffs' production of screenshots of their GIN database.  By Plaintiffs' own admission, GIN contains the most relevant materials pertaining to each of the Disputed Stories, including all newsgathering materials, which are critical to Plaintiffs' ability to prove the elements of their claims and BuzzFeed's ability to establish its defenses.  *See, e.g.,* Leidig Tr. at 22:6-23:21, 34:3-16.  Yet Plaintiffs produced only screenshots from GIN and failed to meaningfully produce any *original*

19

files containing the information stored in the database.  In fact, Leidig testified that he made no

efforts to do so.  *Id.* at 72:10-21 (stating that he never "asked anyone if [he] could download

information from GIN"); *id.* at 84:1-23 & 88:19-23 (testifying that he did not inquire about

accessing GIN servers or database).  Here, as in *Arista*, Plaintiffs have presented no coherent

explanation for their discovery failures.

    More egregiously, perhaps, as it pertains to the missing 2015 e-mails from Mr. Feng to

Ms. Michner, Plaintiffs concealed that these e-mails had been deleted for weeks on end — only

admitting as much at the Court-ordered deposition.  When BuzzFeed first questioned why one of

Mr. Feng's e-mails was produced as a forwarded document rather than the original underlying

2015 e-mail chain, Plaintiffs never admitted that the 2015 e-mails were deleted and, instead,

offered to and subsequently did reproduce that specific 2015 e-mail chain.  As noted above,

however, it was produced in a very suspicious format with missing metadata.  Bolger Decl. ¶

18(e).  BuzzFeed then identified several more examples of the same type of missing 2015 e-mail

chains, which were subsequently re-forwarded to Leidig in 2017, raising doubts as to whether the

original 2015 documents had been preserved or the original collection was adequate.  But, again,

instead of just admitting the documents were deleted, Plaintiffs reproduced the underlying e-mail

chains in the same suspect manner.  *Id.*

    It was not until Leidig's deposition that he finally acknowledged that Mr. Feng's e-mails

had been deleted and the reproductions were created just this summer by Plaintiffs' e-discovery

vendor.  Leidig Tr. at 233:6-234:4 ("This was generated by TransPerfect, correct.  Yes, it was.").

But, even then, Plaintiffs' story was not consistent.  In fact, in the same answer Leidig offered

*five* different explanations for the deletion.  *See id.* at 222:23-223:19 ("Could have been deleted

by the IT guy.  They could have been lost because PST files when they got too large don't work

properly . . . Could have been that Kathryn didn't want it at the time and she just deleted it when she'd had the information.  Maybe she forwarded it on to me and then deleted it.  Maybe she pasted it into GIN and deleted it.").   As in *PSG Poker*, Plaintiffs' consistent failure to provide a "credible story" as to both their preservation efforts and subsequent deletion of documents and production of missing or incorrect metadata can only lead to one conclusion:  that it was an "intentional and willful act."  2008 WL 190055, at *12.

Plaintiffs incoherent and contradictory explanations for their wholesale failure to preserve relevant evidence and, in fact, destruction of evidence, warrants a finding of bad faith.

**C.     The Destroyed Evidence is Critical to Assessing the Claims in this Case and its Deletion Prejudices BuzzFeed's Ability to Defend Itself**

Finally, there can be no question that the destroyed evidence — Plaintiffs' websites, both Ms. Michner's and Mr. Feng's e-mails and the metadata for produced documents — are relevant to the elements of Plaintiffs' claims as well as BuzzFeed's affirmative defenses.

Where deletion of evidence is willful, courts will presume its relevance.  *See Skyline Steel*, 101 F. Supp. 3d at 411.  Where the failure to preserve and destruction of documents is negligent, "a court may, but is not required to, presume the relevance of the evidence."  *Id.*  In that case, courts can also look for "extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party."  *Id.*  As discussed above, circumstances strongly suggest that Plaintiffs' spoliation here was intentional and, therefore, this Court can presume the destroyed evidence was relevant.  But, this Court need not presume:  even if Plaintiffs' spoliation is only found to be negligent, the evidence establishes that the deleted materials are relevant and their destruction is prejudicial to BuzzFeed.

First, Kathryn Michner and John Feng's e-mails and the metadata for those e-mails are critical to Plaintiffs ability — or lack thereof — to establish that the Article is materially false.

Plaintiffs specifically disclosed that Ms. Michner "has information concerning . . . the preparation and publication of the articles discussed in the BuzzFeed piece." Bolger Dec., Ex. 5 at 1. Plaintiffs also informed BuzzFeed that Mr. Feng "has information concerning the preparation of" the Disputed Stories. *Id.* at 2. As the News and Picture Editor, Ms. Michner was responsible for, among other things, commissioning stories and overseeing the editing and publication process, including for stories written by Mr. Feng. *See, e.g.,* Leidig Tr. at 207:13-17. *See also, e.g., id.* at 55:12-16, 58:22-24, 162:9-164:9, 218:15-225:25 (confirming that Mr. Feng wrote or edited a number of the Disputed Stories).

As discussed above, however, Plaintiffs admitted that they deleted many of Ms. Michner's e-mails as well as e-mails between Mr. Feng and Ms. Michner from 2015 that were specifically about newsgathering efforts for the Disputed Stories. *See* Bolger Dec., Ex. 21; Leidig Tr. at 40:4-18; *id.* at 41:9-42:16; *id.* at 222:23-223:19; *id.* at 233:15-234:4. Documents establishing what newsgathering efforts were made for the Disputed Stories is critical to establish the substantial truth of the BuzzFeed Article — and their destruction hamstrings BuzzFeed's effort to cross-examine Plaintiffs' claims that the Disputed Stories are true.

Further, Plaintiffs conceded that they destroyed the metadata for many documents they produced, which Plaintiff claims establish the truth of the Disputed Stories. Leidig Tr. at 177:17-25 (describing the screenshots as "part of the research process which [Leidig claims] proves that the stories that we allegedly faked, I would argue were not faked, and they were submitted on the basis that we had gathered them."); *id.* at 179:2-9 ("And I produce these documents to prove that the stories that we wrote were not faked by myself or my staff, and whether we accidentally damage or destroyed the original metadata when it was created, as we obviously did do in moving them around, seems to be very little relevance to the usefulness of the documents."). *See*

*also* Bolger Dec., Ex. 17 (metadata chart).  The metadata for these documents is relevant here to establishing that, in fact, Plaintiffs did not gather these materials as part of CEN's original reporting for the Disputed Stories; but instead crated them, *long* after the Disputed Stories were published as part of a post-hoc justification for the publication of the Disputed Stories.

Next, Plaintiffs' disabled websites are pertinent to this Court's public figure analysis, which, in turn, determines the level of fault Plaintiffs must prove to establish their defamation claims.  *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 617 (2d Cir. 1988).  Two of the main factors in the public figure analysis are whether plaintiff "successfully invited public attention" as well as his or her "access to the media."  *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).  Plaintiffs' online presence prior to publication is clearly relevant to both of those prongs.  It would confirm both their "access to the media" and related ability to counter the allegations against them by communicating directly to the public.  This evidence would also demonstrate their visibility to the public at large, including any recognition they may have received as journalists.  Similar to the e-mails, Plaintiffs' websites are also highly relevant to the issues of falsity and substantial truth.  The now-deleted websites would have confirmed that Plaintiffs published the Disputed Stories.  They also would have contained additional items published by Plaintiffs that are either inaccurate or lacking proper authentication, thus precluding Plaintiffs from establishing falsity and supporting BuzzFeed's defense of substantial truth.  Plaintiffs' websites, therefore, would certainly contain relevant evidence.

In addition to relevance, the moving party "must show that they have been prejudiced by the loss of documents."  *Zimmerman*, 2011 WL 1429221 at *25.  In certain circumstances, though, where the court and the parties do not know with certainty what documents have been

destroyed, "it is impossible to accurately assess what harm has been done to the innocent party and what prejudice it has suffered." *Id.* (internal marks omitted). This is just such a case.

There is ample evidence to support BuzzFeed's fears of more extensive spoliation that BuzzFeed does not — and cannot possibly — know about. First, Leidig testified that in moving documents to different devices in the process of gathering documents for discovery in this case, he would "actively delete [those documents] on the original" computer. Leidig Tr. at 114:14-24. But Leidig also could not testify as to precisely what documents were moved and, therefore, what documents were deleted or what metadata was destroyed. *See id.* at 117:6-121:4-7 (confirming that he "arbitrarily" moved files but he "certainly never took any notice of where they came from in the production process. I don't know, I have no idea.").

The complete absence of contemporaneous newsgathering materials also raises flags about additional spoliation. Specifically, after Plaintiffs retained Carter-Ruck for legal guidance, Plaintiffs' published a book entitled "Buzz Bottom Feeders: An Inside Look At How BuzzFeed Tried To Destroy A Rival Business" to rebut the allegations in the BuzzFeed Article. *See* Bolger Dec., Ex. 2 (CEN_0002071-CEN_0002173); Leidig Tr. at 132:24-133:23 & 180:13-181:22. The Book details purported newsgathering efforts for many of the Disputed Stories. For example, with respect to a CEN story about lonely teenagers walking cabbages, the Book claims that CEN "staff based in China" conducted various online research, and that "on the basis of that information, a psychiatrist was contacted," who "was happy to comment." *See* Bolger Dec., Ex. 2 at CEN_0002071-72. Despite Plaintiffs' allegations in the Book, none of the referenced research was produced. And, at his deposition, Leidig was unable to coherently address this missing research, including naming the CEN staff members identified in the Book, *see, e.g.,* Leidig Tr. at 191:2-19, and detailing the research that was conducted or even identifying the

name of the psychologist contacted by CEN, *id.* at 191:20-202:7. *See also id.* at 202:8-205:19

(providing incoherent answers about the location and existence of supporting documents and

notes allegedly generated prior to publication of the Disputed Stories).  Leidig's testimony is

therefore strongly suggestive that the most likely explanation for this absence of newsgathering

materials pertaining to the Disputed Stories is that they, too, were deleted or made up.

This is what we know — Plaintiffs deleted e-mails from CEN's News and Picture Editor

who was responsible for many of the Disputed Stories as well as e-mails from one of the authors

of a number of the Disputed Stories.  We know that they destroyed metadata that would establish

when documents were actually created and failed to preserve their news websites.  And, because

CEN has failed to produce any contemporaneous newsgathering materials for the Disputed

Stories — materials they seemingly relied on in writing the Book — there is great cause for

concern that the admitted destruction is just the tip of the iceberg.  Accordingly, this Court

should find that the deleted evidence is both relevant and would be damaging to Plaintiffs, and

BuzzFeed is prejudiced by its deletion, thus satisfying the third element of the spoliation test.

## III.   DISMISSAL IS THE APPROPRIATE SANCTION FOR SPOLIATION AND OTHER DISCOVERY VIOLATIONS

Plaintiffs' rampant spoliation and other violations the Court's orders warrants a harsh

sanction.  "It is well settled that the court has broad discretion to determine the type of sanction

to impose upon a party" and will consider:

> (1) the willfulness of the non-compliant party or the reason for the
> noncompliance;  (2)  the  efficacy  of  lesser  sanctions;  (3)  the
> prejudice  to  the  other  party;  (4)  the  duration  of  the  period  of
> noncompliance;  and  (5)  whether  the  non-compliant  party  had  been
> warned of the consequences of his noncompliance.

*De Castro v. Kavadia and Nice Gems, Inc.*, 309 F.R.D. 167, 181 (S.D.N.Y. 2015) (internal

citations and marks omitted).  "The sanction should be designed to: (1) deter parties from

engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully

created the risk; and (3) restore the prejudiced party to the same position he would have been in

absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire &*

*Rubber Co.*, 167 F. 3d 776, 779 (2d Cir. 1999) (internal citations and marks omitted).

"[T]he only suitable sanction for . . . spoliation is dismissal of the action [when the]

spoliation of the evidence has placed Defendants at an increased risk of an erroneous judgment,

and it is not possible to restore Defendants to the position they would have been in absent the

spoliation." *Ceglia*, 2013 WL 1208558, at *69 (citing *Miller v. Time-Warner Comms., Inc.* 1999

WL 739528, at *2-4 (S.D.N.Y. Sept. 22, 1999) (dismissing case based on plaintiff's spoliation of

evidence)). *See also Beers v. General Motors Corp.*, 1999 WL 325378, at *4 (N.D.N.Y. May 17,

1999) (dismissing case where lesser spoliation sanctions would not cure prejudice).

Plaintiffs' admitted destruction of relevant materials undoubtedly increases the risk that

any judgment here against BuzzFeed would be erroneous, thus requiring dismissal.  When a

party violates discovery orders, and fails to provide evidence that "is essential to Defendant['s]

ability to prove the truth of the allegedly defamatory statements" dismissal of the action is an

appropriate remedy.  *See, e.g. Hochberg*, 1994 WL 174337, at *4 (granting motion to dismiss

under Rule 37 because the "willful conduct of Plaintiffs and/or Plaintiffs' counsel calls for strong

medicine"); *see also Diapulse Corp. of Am. v. Curtis Publ'g Co.*, 374 F.2d 442, 445 (2d Cir.

1967); *Chira v. Lockheed Aircraft Corp.*, 85 F.R.D. 93, 99 (S.D.N.Y. 1980) (dismissing "an

especially egregious case" where, as here, plaintiff "repeatedly and contumaciously obstructed

the orderly and expeditious disposition of this case"), *aff'd*, 634 F.2d 664 (2d Cir. 1980).

While the Court has discretion to impose lesser sanctions, any such sanctions would not

suffice.  Neither monetary sanctions nor additional discovery would return BuzzFeed to the

position it would have been in prior to Plaintiffs' spoliation, namely, having the ability to present all supporting evidence to the Court.  Specifically, Plaintiffs assert that the Disputed Stories are accurate and, therefore the BuzzFeed Article is false, and they have submitted an affidavit in support of this position.  *See* Dkt. No. 18.  But BuzzFeed now has limited ability to cross-examine Plaintiffs on these assertions, as many of the relevant materials that would establish the falsity of the Disputed Stories and the truth of the Article have been destroyed.  BuzzFeed simply cannot be restored to the position it would have been in absent such spoliation.

Similarly, an adverse inference that the deleted materials and improperly produced documents were created out of whole cloth or otherwise manipulated would be tantamount to dismissal, as it would render Plaintiffs unable to establish the truth of the Disputed Stories — and therefore the falsity of the Article — thus dooming their defamation claims.  *See Hochberg*, 1994 WL 174337 at *4.  Dismissal is, therefore, the appropriate sanction here for Plaintiffs' violation of the Federal Rules of Civil Procedure and repeated violations of this Court's orders.

## CONCLUSION

For all of the foregoing reasons, Defendant BuzzFeed, Inc. respectfully requests that this Court grant its motion for sanctions and dismiss the action or award such other relief as this Court deems just and proper.  And, under the current discovery schedule in this matter, depositions were to be completed by September 14, 2017.  Given the present motion and the numerous deficiencies outlined above, BuzzFeed would like to address the discovery schedule with the Court to evaluate the best and most efficient way forward.


Dated:  September 15, 2017

Of Counsel:
Allison Lucas
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, NY 10003



*Attorneys for Defendant BuzzFeed, Inc.*

Respectfully submitted,

By:  /s/ *Katherine M. Bolger*
Katherine M. Bolger
Rachel F. Strom
Amy Wolf
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(T): (212) 489-8230
(F): (212) 489-8340
katebolger@dwt.com

28