UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL LEIDIG and CENTRAL EUROPEAN NEWS LTD,

                Plaintiffs,

      -against-

BUZZFEED, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No: 1:16-cv-00542 (VM) (GWG)

ECF Case

# REPLY MEMORANDUM OF LAW OF DEFENDANT BUZZFEED, INC. IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND VIOLATIONS OF THIS COURT'S DISCOVERY ORDERS

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Rachel F. Strom
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(T): (212) 489-8230
(F): (212) 489-8340
katebolger@dwt.com

OF COUNSEL:
Allison Lucas
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, NY 10003

*Attorneys for Defendant BuzzFeed, Inc.*

Defendant BuzzFeed submits this reply memorandum of law in further support of its motion for sanctions against Plaintiffs for spoliation of evidence and numerous violations of this Court's discovery orders pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure.[1]

## **PRELIMINARY STATEMENT**

In this lawsuit, Plaintiffs complain that the Article falsely accuses them of making "up fake tabloid-style stories, or add[ing] fake quotes to stories to make them more saleable." Opp. at 2. In their opposition to BuzzFeed's motion for sanctions, Plaintiffs all but admit to making up documents in discovery and destroying others, but argue these failures are insufficient to warrant sanctions. Plaintiffs do not, for example deny that they:

1. contemplated bringing this litigation in April 2015 (Bolger Decl. Ex. 1);
2. took no preservation efforts until after instituting this lawsuit in January 2016 (Opening Memo. 8-9);
3. started disabling their then existing news websites on which they had published the Disputed Stories debunked in the Article in May 2015 (Opp. at 17-19);
4. deleted the e-mails of two critical witnesses and wholesale destroyed the metadata associated with hundreds of files they attempted to produce in this litigation (Bolger Dec., Ex. 2; Opening Memo. at 10, 18);
5. continued to assert that Austrian privacy laws prohibit proper document collection and production although this argument was withdrawn by Plaintiffs' counsel and then rejected by this Court (Opening Memo. at 17);
6. reproduced screen shots of webpages this Court already found to be "almost contumacious" (Dkt. No. 44 at 6:18-19, 12:15, Opening Memo. at 18);
7. failed to ask any IT personnel or the actual hosts of the GIN database to obtain original files from the database (Opening Memo. at 10); and
8. failed to produce digital Outlook files because "it did not occur" to them after this Court order to produce documents in a digital format (Bolger Decl. Ex. 25 ("Leidig Tr.") 153:5-12).

By any standard, Plaintiffs' failures warrant dismissal of this action.

---

[1] All defined terms herein have the same meaning as in the Memorandum of Law of Defendant BuzzFeed, Inc. in Support of its Motion for Sanctions and for Spoliation of Evidence and Violations of this Court's Discovery Orders ("Opening Memo.").

**ARGUMENT**

As set forth more fully in the Opening Memo, this Court should dismiss this action because Plaintiffs spoliated evidence necessary to the defense of this action and because they routinely violated this Court's orders.

**I.   THIS COURT SHOULD SANCTION PLAINTIFFS FOR SPOLIATION**

In the Opening Memo., BuzzFeed showed that, even after Plaintiffs threatened BuzzFeed with this litigation in April 2015, Plaintiffs disabled their news websites,[2] intentionally deleted the e-mails of two critical witnesses and wholesale destroyed the accompanying metadata. *See* Leidig Tr. at 11:10-13:9; Bolger Dec., Exs. 5 & 11 (testifying he began disabling Plaintiffs' websites in May 2015); Leidig Tr. at 40:9-42:16 & 222:23-223:19 (admitting to the deletion of e-mails from two core custodians who were identified by Plaintiffs in their Initial Disclosures as having relevant information); *id.* at 114:14-21, 165:19-21, 177:21-25 & 179:4-7 (testifying to irreversibly destroying the metadata of hundreds of documents when improperly removing and deleting original files during the document collection process).  BuzzFeed also demonstrated that because Plaintiffs failed to take appropriate and timely preservation efforts, and collected documents haphazardly, there is no way to fully understand just how much evidence has been destroyed.  Opening Memo. at 23-25.

In response, Plaintiffs do not deny *any* of these facts but instead argue only that under the revised Rule 37 of the Federal Rules of Civil Procedure, this conduct does not warrant a sanction.  They are wrong.  As a preliminary matter, the revised "new rule applies only to electronically stored information."  Fed. R. Civ. P. 37 2015 Advisory Committee Notes.  The three-part

---

[2] Plaintiffs complain that BuzzFeed noted that Plaintiffs disabled the websites after the "BuzzFeed legal case," insisting that most of the websites were disabled in May 2015.  Opp. at 17-19.  BuzzFeed, however, was clear that Plaintiff conceded the "websites were disabled between May 2015 and October 2015" (Opening Memo. at 18), all of which was *after* Plaintiffs sought legal counsel to address BuzzFeed's Article in April 2015.  Bolger Decl. Ex. 1.

spoliation standard cited in the Opening Memo. governs all other documents.[3]  In addition, courts still apply the pre-amended Rule 37(e) standard, which is set forth in the Opening Memo., even for electronically stored information, because "sanctions would be available under the court's inherent authority even if Rule 37(e) did not apply." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016); *Ottoson v. SMBC Leasing & Fin., Inc.,* 13 Civ. 1521, 2017 WL 2992726, at *8 (S.D.N.Y. July 13, 2017) (specifically citing three-part standard set out in Opening Memo.).

Dismissal is also appropriate under Fed. R. Civ. P. 37(e)(2).  Plaintiffs' blanket claim that they cannot be sanctioned because they did not intentionally deprive BuzzFeed of evidence cannot defeat this motion.  Instead, there is sufficient evidence for this Court to infer that Plaintiffs' deletion of evidence was intentional within the meaning of Rule 37(e).  This case is like *Ottoson v. SMBC Leasing & Fin., Inc.*  In that case, Judge Sweet found that:

> Defendants have provided this court with sufficient evidence, both direct and circumstantial, that: (1) Plaintiff communicated with Mr. Berger via email; (2) Plaintiff failed to take any reasonable steps to preserve these communications; and/or (3) Plaintiff failed to produce these communications in violation of her discovery obligations.  The logical inferences that can be drawn from these facts are that Plaintiff: (a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession but has failed to produce them. Any of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e).

*Id.* at *9 (citing cases and granting adverse inference instruction).  Here, as in *Ottoson*, Defendant has sufficient evidence to infer that Plaintiffs intentionally deprived Defendant of evidence.  Plaintiffs admitted to three instances of spoliation.

- Plaintiffs testified under oath that Kathryn Michner, CEN's News and Picture Editor, had various emails (Leidig Tr. at 40:4-43:22) and, in their Rule 26 Disclosures, disclosed

---

[3]Here, Plaintiffs have not produced any hard copies of financial documents supporting their damages charts, or hard copies of complaints against their news reporting or even hard copies of any newsgathering materials.  Because we do not know what non-electronic documents were destroyed based on Plaintiffs total failure to timely preserve documents, the former Rule 37 standard applies.

3

> Michner as having information relevant to this action. Bolger Dec. Exs., 18, 19, 22. Plaintiffs then also admitted that emails from Michner's files were intentionally deleted. Opening Memo. at 9-10, 15; Bolger Dec., Ex. 21 (Plaintiffs' counsel admitting that some of Plaintiffs' emails were intentionally deleted).

- Plaintiffs testified that they disabled their websites (Leidig Tr. at 11:4-44), which would have provided evidence of Plaintiffs' newsgathering and public figure status, *after* retaining English counsel to make claims against BuzzFeed.

- Plaintiffs also testified that Plaintiffs had relevant metadata, which would have established when Plaintiffs started investigating the Disputed Stories from the BuzzFeed Article and would have helped BuzzFeed to determine if Plaintiffs are producing actual newsgathering information or *post hac* explanations for the Disputed Stories. But, Plaintiffs also testified they destroyed that metadata and/or failed to take reasonable efforts to preserve it. Opening Memo. at 10, 15.

Just as in *Ottoson*, any of these situations is sufficient evidence of "intent" required by Rule 37(e). For the reasons set forth in the Opening Memo., therefore, this Court can and should dismiss this case under rule 37(e)(2).[4]

As discussed in the Opening Memo at 21-24, BuzzFeed was prejudiced by Plaintiffs failure to produce authentic and complete documents because it impaired BuzzFeed's ability to argue, among other things, Plaintiffs' public figure status and the substantial truth of the Articles. In the Opposition, Plaintiffs dismiss this argument and claim that because they produced a handful of Michner's emails that were found in John Feng's files, BuzzFeed cannot show it was prejudiced by the deletion of an unknown number of emails from Michner's own files. This argument was expressly rejected in *Ottoson*. There, as here, the plaintiff had not taken sufficient

---

[4] A sanction is also warranted under Rule 37(e)(1). According to the advisory committee notes, "[a]n example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case. On the other hand, it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." Fed. R. Civ. P. 37. In this case, the appropriate (e)(1) measure would be prohibiting Plaintiffs from producing any evidence regarding the newsgathering process for the Disputed Stories. As discussed below, such an instruction – which would essentially leave Plaintiffs without any evidence that they engaged in any newsgathering for the Disputed Stories – would be tantamount to dismissal because it would establish the truth of the Article.

efforts to preserve documents and had deleted some emails. And, there as here, some of the deleted emails were produced from the files of a different custodian. But, the court reasoned that a sanction was nevertheless warranted because "Defendants are unable to inspect all of Plaintiff's email communications with all of her witnesses because Plaintiff 'failed to take reasonable steps to preserve' them, in violation of Rule 37(e), and this critical evidence cannot be 'restored or replaced.'" *Ottoson*, 2017 WL 2992726, at *10. Similarly here, BuzzFeed cannot inspect all of Plaintiffs' email communications to determine what is missing, because Plaintiffs deleted the evidence. A sanction is therefore warranted under Rule 37(e).

While the sanction issued in *Ottoson* was an adverse inference, the only appropriate sanction here is dismissal. In a defamation case, where "the thwarted discovery sought by Defendant is essential to Defendants' ability to prove the truth of the allegedly defamatory statements; deeming such statements to be true would be tantamount to dismissing Plaintiffs' claims." *Hochberg v. Howlett*, No. 92 Civ. 1822 (RPP), 1994 WL 174337, at *4 (S.D.N.Y. May 3, 1994), *aff'd*, 50 F.3d 3 (2d Cir. 1995). And, in such a case, dismissal is warranted. *Id.* at *3. This is just such a case. As BuzzFeed argued in the Opening Memo., an adverse inference that Plaintiffs deleted or improperly manipulated documents would be tantamount to dismissal, as it would make it impossible for Plaintiffs to establish the Article is materially false. Opening Memo. at 27. Specifically, Plaintiffs allege that the defamatory implication of the Article is that Plaintiffs "made up" and/or "added fake quotes" to news stories. Opp. at 2. An adverse inference that Plaintiffs here have manipulated or falsified documents in discovery in this action would all but establish that the alleged defamatory implication was substantially true. Thus, dismissal is the only appropriate sanction here.

5

## II. SANCTIONS ARE WARRANTED FOR PLAINTIFFS' CONTINUED VIOLATIONS OF COURT ORDERS

In addition, as set forth more fully in the Opening Memo, this Court should sanction Plaintiffs on the alternate ground that they have repeatedly violated this Courts' orders, an argument Plaintiffs all but ignore in their Opposition.

Rule 37(b)(2) authorizes this Court to award a broad array of sanctions, including "dismissing the action or proceeding in whole or in part" where a party or 30(b)(6) witness "fails to obey an order to provide or permit discovery." While "dismissal of an action [is] a harsh sanction," it is still appropriate in cases "where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Hochberg*, 1994 WL 174337, at *3 (dismissing defamation claim based on plaintiffs' failure to provide court-ordered discovery). A harsh sanction, such as dismissal, "serves to emphasize the importance we place on a party's compliance with discovery orders. Such compliance is necessary to the integrity of our judicial process. A party who flouts such orders does so at his own peril." *Id.* (internal marks omitted). Here, dismissal of this action is more than warranted for Plaintiffs' consistent pattern of flouting this Court's specific and clear orders.

*First*, Plaintiffs simply ignored this Court's order to produce a 30(b)(6) witness who was fully prepared to address questions regarding the Plaintiffs' document collection and production efforts in this case. As explained in the Opening Memo., this Court ordered Plaintiffs to produce a 30(b)(6) witness "on the issue of document production" to develop a factual record of "exactly how these documents were generated, what form they're kept in, [and] what documents there are." *See* Bolger Decl. Ex. 23 at 2:14-16; *id.* at 10:12-16. In doing so, the Court specifically warned Plaintiffs that they were required to ensure that their designee "is totally educated. They may need to designate more than one agent if, for example, [an IT] firm has been involved in the

search." *Id.* at 12:2-7.  Nevertheless, Plaintiffs produced Mr. Leidig as the sole 30(b)(6) witness. He repeatedly testified that he could not answer questions as to the search, retrieval, extraction and production of the documents, often claiming that he is "not an IT expert," Leidig Tr. at 21:4-11, and that he "can't answer [the] question" of where documents are located because "it would have been dealt with by" someone else, *id.* at 193:14-22.  *See also* Opening Memo. at 8 (noting times Plaintiff could not answer a question because, for example, he did not "know the details of how" his IT consultant and e-discovery vendor collected documents, or even what servers were searched, how the documents were collected or how they came to be produced).

In the Opposition, Plaintiffs gloss over this failure and instead rely on the newly produced declaration of "their e-discovery expert, Alex Seigle-Morris" – spanning a full quarter of their opposition.  Opp. at 8-12.  As an initial matter, if Mr. Seigle-Morris is the witness most knowledgeable about Plaintiffs' document production efforts, Plaintiffs should have produced him as a 30(b)(6) witness, as this Court specifically suggested.  But, in any event, relying on his declaration now raises more questions than it answers – questions that should have been asked at the Court-ordered deposition.

For example, when it comes to the missing emails from John Feng (discussed in detail in the Opening Memo. at 6-7), Mr. Seigle-Morris does not explain why the documents were not produced in Plaintiffs' original production or why the emails as eventually reproduced were the underlying 2015 emails from Mr. Feng (emails Leidig testified were destroyed, *id*. at 9-10) or portions from the 2017 email exchange that forwarded the underlying 2015 emails.  Similarly, Mr. Seigle-Morris declares that it is "his understanding" that certain documents were produced in various formats, but does not give any explanation for that "understanding."  Seigle -Morris Decl. at ¶ 15.  BuzzFeed could have explored these issues if Plaintiffs produced Mr. Seigle-Morris as a

7

30(b)(6) witnesses.  Instead, in violation of this Court's order, they chose to withhold this information until now.[5]

Plaintiffs only other argument on this point – relegated to the last page of their brief – is that in addition to the hour and a half meeting between Plaintiff Leidig and his lawyer, Leidig also reviewed documents to prepare for the 30(b)(6) deposition.  But this is *no* excuse for Leidig's inability to competently testify to the precise topics this Court ordered at the parties' hearing in July.  As explained in the Opening Memo., this is precisely the conduct that warranted sanctions in *Coty Inc. v. Excell Brands LLC*, 15-CV-7029 (JMF), 2016 WL 7187630 (S.D.N.Y. Dec. 9, 2016). There, as here, the court "explicitly order[ed] [the company] to produce a witness who was prepared to testify about the noticed topics" and the witness was "patently unprepared to do so." *Id.* at *2.  In *Coty*, the 30(b)(6) witness answered "I don't know" almost forty times in response to questions about the noticed topics, explaining that "[i]t's not my role or area of expertise, so I don't know." *Id.*  Here, Leidig testified that he "did not know" or "could not recall" an answer nearly **one hundred** times, and on four occasions cited his lack of IT expertise as a reason, despite the fact that the Court-ordered topics dealt precisely with the technical aspects of Plaintiffs' document collection and production. Leidig Tr. generally.  Just as in *Coty*, sanctions are warranted here.

*Second*, as set forth in the Opening Memo. at 4, 18, Plaintiffs ignored this Court's instruction that they were required to produce authentic documents and "if they're in electronic form they have to be extracted in some form that the defendant can use."  Bolger Decl. Ex. 12 at 9:21-25.  Indeed, in the Opposition, Plaintiffs all but concede they did not even try to comply

---

[5] This Court stated that Plaintiffs' failure to provide sufficient responses in a 30(b)(6) deposition would be the basis for a 16(f) dismissal.  Bolger Decl. Ex. 23 at 10:24-11:18.  This Court is empowered to issue such a sanction on its own initiative. Fed. R. Civ. P. 16(f).  *See also Cohen v. U.S. Dep't of Justice/ATF*, No. 1:16-CV-05505-GHW, 2017 WL 149987, at *2 (S.D.N.Y. Jan. 13, 2017) (dismissing case where plaintiff failed to abide by court orders and court gave warning that the failure could result in dismissal).

with this rule. For example, Plaintiffs insist in the Opposition that Leidig believes there is no way to produce digital files from GIN and that this representation is sufficient. (Opp. at 20) [6] But the remainder of Leidig's testimony makes it clear that Leidig simply did not make any effort to do so; he admitted that he never asked the actual hosts of the database if they could find a way to produce digital files. *Id.* at 84:1-23 & 88:19-23.[7] In fact, he could not even name the "German company" that provided his IT infrastructure. Leidig Tr. at 25:9-26:17. Similarly, Leidig admitted that Plaintiffs produced screenshots of Outlook files without Metadata because it "it didn't occur to him" to export the Outlook files. Leidig Tr. at 153:5-12. Failing to engage an IT expert to attempt to export these files violates the Court's order.

The effects of this failure are clear – BuzzFeed simply does not know when the documents Plaintiffs produced were created. For example, Plaintiffs testified that the screenshots of websites they produced, which this Court already described as "almost contumacious," *Cf.* Bolger Decl. Ex. 12 at 6:18-19, Bolger Decl. Exs. 14 & 15, *may* have been created not when the Disputed Stories were written but "in the process of investigating the preparation of the articles criticized in the BuzzFeed piece." Opp. at 17.[8] But there is nothing that allows BuzzFeed to cross-examine that claim because the documents lack authentic

---

[6] Plaintiff takes issue with BuzzFeed requesting "authentic" documents. Opp. at 17. This Court also struggled to explain to Plaintiffs that their document production was improper and needed to contain authentic documents. Bolger Dec., Ex. 12 at 9:12-15 ("I feel strange writing the word authentic form in an order when it's like saying don't make up documents . . . it's so obvious it seems peculiar.").

[7] It is also just not credible that there is a database that allows users to input newsgathering and invoicing information, allows users to export invoices when Leidig needs one (Leidig Tr. at 168:12-24) but does not let users export any other information.

[8] If Plaintiffs are trying to argue that these documents were made before this litigation, it is hard to see why the screen shot shows a date from months after the litigation was filed. *See* Bolger Decl. Ex. 16 (showing screen shot made in October 2016, although complaint was filed in January 2016).

metadata or any metadata at all.  This failure alone warrants dismissal. [9]

*Finally*, when this Court ordered Plaintiffs to produce all relevant documents, it did so after Plaintiffs withdrew their argument that they were prohibited from producing documents under Austrian privacy laws.  Bolger Decl. Ex. 12 at 5:22-25.  But, throughout his deposition, Leidig continued to cite Austrian privacy laws as an excuse for Plaintiffs' failure to search several e-mail servers and produce the e-mails from particular custodians.  *See* Opening Memo. at 17 n. 4.  Leidig Tr. at 32:3-36:12, 31:20-32:16, 37:8-38:18.  Plaintiffs' resurrection of their already abandoned and rejected argument violates the Court's April Order and is sanctionable.

## CONCLUSION

For all of the foregoing reasons, Defendant BuzzFeed, Inc. respectfully requests that this Court grant its motion for sanctions and dismiss the action or award such other relief as this Court deems just and proper.

Dated:  October 20, 2017

Respectfully submitted,

Of Counsel:  
Allison Lucas  
Nabiha Syed  
BuzzFeed, Inc.  
11 E. 18th Street, 13th Floor  
New York, NY 10003

By: /s/ *Katherine M. Bolger*  
Katherine M. Bolger  
Rachel F. Strom  
DAVIS WRIGHT TREMAINE LLP  
1251 Avenue of the Americas, 21st Floor  
New York, NY 10020  
(T): (212) 489-8230  
(F): (212) 489-8340  
katebolger@dwt.com

*Attorneys for Defendant BuzzFeed, Inc.*

---

[9] Relatedly, this Court ordered Plaintiffs to produce all documents with corresponding metadata.  Bolger Decl. Ex. 12 at 20:3-9.  But *after* that order, without any supervision or guidance, Leidig collected documents for this case in a manner that irreversibly destroyed their metadata.  *See* Opening Memo. at 9-10; Leidig Tr. at 114:14-21.  Now, Plaintiffs have produced incorrect metadata – or the metadata is missing altogether – because they did not abide by this Court's order to ensure they collect and produce documents with metadata.  Leidig Tr. at 50:21-22, 52:17-19, 165:19-21, 172:21-23, 177:21-25, 179:4-7.