UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHAEL LEIDIG, et al.,                          :

                    Plaintiffs,                   :          OPINION AND ORDER
                                                             16 Civ. 542 (VM) (GWG)
        -v.-                                      :

BUZZFEED, INC.                                    :

                    Defendant.                    :
---------------------------------------------------------------X
GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

        Defendant Buzzfeed, Inc. ("Buzzfeed") brings this motion seeking sanctions for

spoliation of evidence against plaintiffs Central European News Ltd. ("CEN") and Michael

Leidig.[1]  For the reasons stated below, this motion is granted in part and denied in part, and the

sanctions described in section II.C below are imposed on plaintiffs.

I.      BACKGROUND

        A.  Initiation of Lawsuit

        This case stems from an article published by Buzzfeed on its website bearing the

headline "The King of Bullsh*t News," of which plaintiffs are the subjects (the "Article").  See

Complaint, filed Jan. 25, 2016 (Docket # 1) ("Compl.") ¶ 1; The King of Bullsh*t News

_____

        [1]  See Notice of Defendant Buzzfeed, Inc.'s Motion for Sanctions for Spoliation of
Evidence and Violations of This Court's Discovery Orders, filed Sept. 15, 2017 (Docket # 61)
("Notice of Motion"); Memorandum of Law of Defendant Buzzfeed, Inc. in Support of Its
Motion for Sanctions for Spoliation of Evidence and Violations of This Court's Discovery
Orders, filed Sept. 15, 2017 (Docket # 62) ("Def. Mem."); Declaration of Katherine M. Bolger in
Support of Defendant Buzzfeed, Inc.'s Motion for Sanctions for Spoliation of Evidence and
Violations of This Court's Discovery Orders, filed Sept. 15, 2017 (Docket # 63) ("Bolger
Decl."); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Sanctions,
filed Oct. 6, 2017 (Docket # 66) ("Pls. Mem."); Declaration of Alex Seigle-Morris, filed Oct. 6,
2017 (Docket # 65) ("Seigle-Morris Decl."); Declaration of Harry H. Wise III, filed Oct. 11,
2017 (Docket # 67) ("Wise Decl."); Reply Memorandum of Law of Defendant Buzzfeed, Inc. in
Further Support of Its Motion for Sanctions for Spoliation of Evidence and Violations of This
Court's Discovery Orders, filed Oct. 20, 2017 (Docket # 68) ("Def. Reply").

(annexed to Compl.) ("The Article").  Plaintiffs allege that the Article defamed them by, among other things, accusing them of "fabricating and selling fake news stories."  See Compl. ¶ 8.  In particular, plaintiffs argue that the Article defamed them by disputing the veracity and newsgathering efforts behind specific stories sold or published by plaintiffs (the "Disputed Stories"), including stories about people walking cabbages like pets in China due to loneliness, id. ¶¶ 27-32; "a Chinese man who had reportedly gotten tapeworm from eating too much sashimi," id. ¶¶ 38-44; "a [Russian] woman named Elena Lenina, who dyed her kitten pink, which supposedly caused the animal's death from blood poisoning," id. ¶¶ 45-54; Russian women who lost their jobs after stripping in public, id. ¶¶ 55-6; and a two-headed goat in China, id. ¶¶ 62-68.  In addition to selling the Disputed Stories, plaintiffs also published some of these stories to websites they maintained, including the "Austrian Times, Croatian Times," and others.  See Plaintiffs' Initial Disclosure (attached as Ex. 5 to Bolger Decl.) ("Initial Disclosure"), at 4; The Article at 5, 7, 8, 10, 11, 15, 17.

Two days before the Article was published, Buzzfeed sought comment from Leidig regarding its contents.  See Letter from Carter-Ruck to Alan White Dated Apr. 22, 2015 (annexed as Ex. 1 to Bolger Decl.) ("Carter-Ruck Letter").  In response, Carter-Ruck, a London law firm, sent a letter dated April 22, 2015 to Buzzfeed on behalf of plaintiffs.  See Bolger Decl. ¶ 1; Carter-Ruck Letter.  In this letter, Carter-Ruck stated, inter alia, that if Buzzfeed published the Article, the allegations contained therein would be "highly defamatory of [plaintiffs] and . . . are likely to cause serious reputational harm, in particular in the eyes of their customers."  Carter-Ruck Letter at *4.[2]  It also asserted that "the proposed publication of the allegations is

---

[2]  Page numbers noted as "*__" refer to the pagination created by the ECF system.

calculated to damage CEN's business," Id.  The letter concluded by stating that plaintiffs "will take very seriously the publication of any false allegations about them" and that they reserved "all their legal rights."  Id. at *6.  Buzzfeed published the Article on April 24, 2015.  Compl. ¶ 1. Plaintiffs and Buzzfeed continued to correspond through counsel in August, September, and October of 2015.  See Bolger Decl. ¶¶ 4-5; First Email from Nabiha Syed (annexed as Ex. 3 to Bolger Decl.); Second Email from Nabiha Syed (annexed as Ex. 4 to Bolger Decl.).  On January 25, 2016, plaintiffs filed the instant complaint against Buzzfeed, alleging libel.  Compl. ¶¶ 94-103.

On March 25, 2016, Buzzfeed answered the complaint and asserted affirmative defenses that the Article is "substantially true," and that "[p]laintiffs are public figures and cannot prove constitutional malice by clear and convincing evidence."  Answer to Complaint, filed Mar. 25, 2016 (Docket # 8), ¶¶ 105-06.  Plaintiffs later moved for partial summary judgment on the ground that, inter alia, they were not public figures.  See Plaintiffs' Memorandum of Law in Support of a Motion for Partial Summary Judgment, filed Jan. 13, 2017 (Docket # 20), at 15-17. This motion was denied, and the court noted that the issue of whether plaintiffs were public figures was "far from settled."  See Decision and Order, filed May 9, 2017 (Docket # 47), at 14-15.

B.  Beginning of Discovery

Some time after filing the complaint, plaintiffs submitted their initial disclosure to Buzzfeed pursuant to Federal Rule of Civil Procedure 26(a)(1)(A).  See Initial Disclosure.  In this disclosure, plaintiffs indicated that they had "taken down" websites on which they had previously published articles (including the Austrian Times and Croatian Times), but planned to use screenshots of these websites as they appeared before they were taken down.  Initial

Disclosure at 4.  Plaintiffs also indicated in this disclosure that Kathryn Quinn,[3] the News and

Picture Editor for CEN, and John Feng, the China Desk Manager for CEN, had information

relevant to the preparation of the Disputed Stories.  See id. at 1-2.

Buzzfeed served a document request on July 14, 2016.  See Bolger Decl. ¶ 8; Buzzfeed

Inc.'s First Request for the Production of Documents and Things to Plaintiffs (attached as Ex. 6

to Bolger Decl.) ("First Document Request").  This request sought documents relating to, inter

alia, "the distribution channels of CEN News Items," First Document Request ¶ 76; the

identification of websites "purchased, created, or maintained by CEN and/or Leidig," id. ¶ 80;

the disabling of such websites, including the ones mentioned above, id. ¶¶ 81-82; plaintiffs'

social media accounts, broadcasts, publications, awards won, and other public communications,

id. ¶¶ 85-92, 94; and the Disputed Stories, id. ¶¶ 8-77.  In response, plaintiffs produced 400

documents over the course of two productions in October 2016.  See Bolger Decl. ¶ 11.  These

productions included "documents bearing no metadata, including manually manipulated PDFs,

summaries of underlying documents not produced, and screenshots and other text files generated

by Plaintiffs after production of the Article," but did not include "any preserved copies of the

now-disabled websites."  Id.

C.  Conference on Motion to Compel

After this production, Buzzfeed moved to compel the production of "authentic"

documents responsive to the First Document Request.  See Bolger Decl. ¶ 15; Notice of

Defendant Buzzfeed, Inc.'s Motion to Compel, filed Feb. 16, 2017 (Docket # 26).  This Court

---

[3]  Kathryn Quinn later married and assumed the name Kathryn Michner.  See Videotaped Deposition of Michael Leidig (annexed as Ex. 25 to Bolger Decl.) ("Leidig Tr.") 13:23-14:2. For consistency, we will refer to her as Kathryn Quinn.

held a conference on April 12, 2017.  See id. ¶ 15; Transcript, filed May 1, 2017 (Docket # 44)

("Tr. 1") 1.  With respect to electronically stored information ("ESI"), the Court ordered that

plaintiffs produce the original versions of the documents responsive to the First Document

Request in a format Buzzfeed could use, id. 9:12-15, 9:21-24, along with the corresponding

metadata, id. 20:8.  The Court specifically forbade plaintiffs from producing screenshots of

original documents, or from otherwise having the client create new documents for production.

Id. 10:10-15, 11:9-12, 12:5-17.  The Court also noted the possibility of spoliation sanctions

should original versions of plaintiffs' disabled websites not be produced.  Tr. 1 17:12-14.

    D.  Second Production

    Following this conference, plaintiffs produced more documents.  To aid in these

productions, plaintiffs retained TransPerfect Legal Solutions ("TransPerfect"), an e-discovery

vendor.  See Leidig Tr. 112:8-16; Seigle-Morris Decl. ¶ 1.  Alex Seigle-Morris of TransPerfect

was "responsible for [plaintiffs'] case."  See Leidig Tr. 112:17-21.  Although plaintiffs produced

additional documents after the Court's order, Buzzfeed contends that such productions failed to

conform to the instructions set forth by the Court and to plaintiffs' discovery obligations in a

number of respects.  See Bolger Decl. ¶¶ 16-18.

    First, plaintiffs failed to produce preserved versions of the disabled websites, saying that

they had no such copies, and instead directed Buzzfeed to access data from a website that

purportedly archives internet websites.  Id.; Letter from Harry H. Wise III to Katherine M.

Bolger Dated June 14, 2017 (annexed as Ex. 13 to Bolger Decl.) ("Letter from Wise to Bolger").

    Second, plaintiffs produced screenshots from plaintiffs' "Global Internet News" ("GIN")

system.  Bolger Decl. ¶ 18.a; Screenshots from GIN (annexed as Ex. 14 to Bolger Decl.).  GIN is

plaintiffs' proprietary software that contains the first and last drafts of articles produced by

plaintiffs — including some of the Disputed Stories — as well as the source material gathered while researching these stories.  <u>See</u> Leidig Tr. 17:4-18:3, 22:6-23:18, 50:6-16.  These screenshots contained metadata indicating that they had been created after this litigation had been initiated.  <u>See</u> Bolger Decl. ¶ 18.c-d; Chart of Plaintiffs' Improperly Produced Documents (annexed as Ex. 17 to Bolger Decl.) ("Metadata Chart").  Leidig has explained that the reason for this production format is because GIN was not designed with an extraction feature, and thus no GIN files with original metadata could be produced.  <u>See</u> Leidig Tr. 85:19-87:21.

Third, plaintiffs produced ESI with missing or incorrect metadata.  Some documents were produced with metadata indicating that the files had been created after this lawsuit was initiated.  <u>See</u> Bolger Decl. ¶ 18.c-d; Metadata Chart.  Other documents contained no metadata whatsoever.  <u>See</u> Bolger Decl. ¶ 18.d; Metadata Chart.

Finally, plaintiffs produced an email from May 1, 2017, from Feng to Leidig that forwarded an April 27, 2015, email from Feng to Quinn, but plaintiffs failed to produce the underlying April 27, 2015, email.  <u>See</u> Bolger Decl. ¶ 18.e; Email from John Feng to Michael Leidig Dated May 1, 2017 (annexed as Ex. 18 to Bolger Decl.) ("Leidig Email").  This email concerned Feng's research and sources relating to one of the Disputed Stories.  <u>See</u> Leidig Email.  Plaintiffs later produced the underlying April 27, 2015, email, but instead of containing the text of the email within the email itself, this newly produced version contained the text of the email as an attachment with no metadata.  <u>See</u> Bolger Decl. ¶ 18.e; Email from John Scot Feng to Kathryn Quinn Dated Apr. 27, 2015 (annexed as Ex. 19 to Bolger Decl.) ("Quinn Email").  Plaintiffs claimed that this issue "happened due to [the email] being taken from a Mac version of outlook."  <u>See</u> Bolger Decl. ¶ 18.e; Email from Harry Wise to Rachel Strom Dated June 23, 2017 (annexed as Ex. 20 to Bolger Decl.); Seigle-Morris Decl. ¶ 10.  Plaintiffs also later noted that

some of Quinn's emails were "produced from other data bases but not from computers at CEN's office in Vienna."  Bolger Decl. ¶ 18.e; Letter from Harry H. Wise III to Katherine M. Bolger and Rachel Strom Dated June 27, 2017 (annexed as Ex. 21 to Bolger Decl.) ("Letter from Wise to Bolger and Strom").

E.  Pre-Motion Conference

At Buzzfeed's request, this Court held a pre-motion conference in contemplation of the instant motion on July 14, 2017.  See Bolger Decl. ¶¶ 19-20; Transcript, filed Aug. 10, 2017 (Docket # 59) ("Tr. 2").  At this conference, the Court granted Buzzfeed permission to file a motion for spoliation of evidence, Tr. 2 2:14-16, and ordered a Rule 30(b)(6) deposition of CEN relating to the production of documents, id. 17:3-15.  The Court opined that at such a deposition, CEN may need to designate more than one deponent if one person was not "totally educated" on the document production process.  Id. 12:2-7.  On August 4, 2017, Buzzfeed served notice of the Rule 30(b)(6) deposition on CEN's counsel, which indicated that the deposition topics would include, inter alia, "efforts to collect documents and metadata for Your document production," including "the software used to prepare the production and the transfer of data to counsel for both parties," and "[w]here the collection of documents and/or metadata for Your document production took place, including, but not limited, [sic] where the servers and custodians were located as well as where the person(s) conducting the searches, collection and production were located."  See Amended Notice of Deposition Pursuant to Rule 30(b)(6) Dated Aug. 4, 2017 (annexed as Ex. 24 to Bolger Decl.) ("Buzzfeed's Noticed Topics").

F.  Rule 30(b)(6) Deposition

The Rule 30(b)(6) deposition was held on August 11, 2017.  See Leidig Tr. 4:10-12. CEN's Rule 30(b)(6) designee was Leidig, id. 5:8-11, who testified that to prepare for the

deposition, he "read through as much documentation as [he] could in [his] office," including Court documents and correspondence with his lawyer, and had "about a one-and-a-half hour meeting with [his lawyer] Mr. Wise," id. 6:16-7:12.

Leidig was unable to answer a number of questions relating the Quinn Email and documents extracted from Feng's computer. When asked about the Quinn Email, Leidig testified that it was produced by TransPerfect in cooperation with Feng, but that he did not know how it extracted the email. Id. 225:10-226:24. Similarly, Leidig testified that he did not know whether the original version of this email was extracted from the Leidig Email or from the original email as sent, id. 227:4-17, but that Seigle-Morris knew the answer to that question, id. 227:18-20. Leidig also testified that he was not sure why this document lacked metadata, but that TransPerfect "would be able to inform [Buzzfeed] as that — whether it's an error or not, I'm afraid I don't know." Id. 234:5-14. Leidig also testified that he did not know what, if anything, the discovery expert did to extract files from Feng's computer. Id. 127:20-129:8.

Leidig was also unable to answer certain questions relating to GIN. Leidig testified that he did not know where the server for GIN was located, but was "pretty certain" it was in Germany. Id. 25:9-26:17. Leidig also demonstrated a non-technical understanding of GIN at times, stating inter alia, that "GIN is not maintained . . . it just works," id. 71:18-21, and that GIN stores no documents but is "purely information," id. 74:6-9. Leidig also testified that he knew that documents could not be "downloaded" from GIN because he designed GIN. Id. 72:13-21. When further pressed on whether information could be downloaded from GIN, Leidig responded that "[y]ou can't do it because it wasn't programmed like that and it wasn't designed to do that," id. 87:2-11, and that Granger Laffan, a communications expert and IT technician who helped to design GIN, id. 27:20-28:19, had told him "the only information that is available

is what you see.  What you see is what you get," id. 87:17-21.  He also noted that Laffan had stated approximately "four years ago" that it would have been "expensive and complicated" to modify GIN to export documents, id. 72:22-73:6, and that since the Article's publication, he had not asked anyone whether it was possible to "download information" from GIN, id. 73:12-15.

Leidig was also unable to answer certain questions relating to the recovery of emails for production.  Leidig testified that he did not know whether CEN had an email server.  Id. 34:18-35:2.  He further stated that his IT expert, Harold Fuchs, told him that the emails sent from CEN staffers to third parties could not be obtained using those staffers' email domain names, but that he could not recall the reason Fuchs provided for this.  Id. 35:21-36:18.

Nevertheless, Leidig offered information relevant to plaintiffs' document collection during his deposition.  Leidig confirmed that, with the exception of materials saved in GIN with respect to the preparation of a story, "no special effort was made to preserve documents concerning the Buzzfeed piece" prior to "the decision to proceed with the lawsuit."  Id. 44:23-46:12.  Leidig further testified that he was instructed by counsel to preserve evidence only after the lawsuit was filed, id. 106:21-107:2, and that he began preserving data and information relevant to this lawsuit "within an hour of the information of the actual case litigation being filed," id. 149:10-19.  Similarly, Leidig testified that he began notifying staff to preserve documents relating to this litigation only after it was initiated.  Id. 220:16-221:24.  With respect to the disabled websites, Leidig testified that plaintiffs disabled the "vast majority" of them on May 7, 2015.  Id. 11:4-22.  Regarding emails, Leidig stated that some of Quinn's emails had been deleted by an IT consultant either to create additional space or because they were corrupted.  Id. 40:1-42:20.  More specifically, Leidig suggested that the original Quinn Email may have been deleted, but in any event had not been preserved.  Id. 222:8-223:15.  With respect

to metadata, Leidig noted that he inadvertently changed or deleted the metadata for certain produced documents when he attempted to manually move the files to another hard drive containing materials to be produced, thereby deleting the original file and creating a new version with new metadata. Id. 113:10-115:4. Finally, with respect to GIN, Leidig stated that he retrieved the produced information from GIN by taking screenshots of the relevant material. Id. 50:6-51:8, 52:17-19. However, Leidig admitted that he did not ask the German company that maintains the GIN server whether GIN documents could be retrieved from the server. Id. 85:8-18.

Buzzfeed thereafter filed the instant motion for sanctions on September 15, 2017. See Notice of Motion.

II. DISCUSSION

Buzzfeed asserts two grounds for sanctions: (1) plaintiffs' failure to properly prepare a Rule 30(b)(6) witness, see Def. Mem. at 12-13; and (2) plaintiffs' spoliation of evidence, see id. at 13-25.[4] We address each in turn.

A. Whether Plaintiffs Should Be Sanctioned for Failing to Properly Prepare a Rule 30(b)(6) Witness

Federal Rule of Civil Procedure 30(b)(6) permits a party to depose a representative of a corporation regarding matters about which the corporation possesses or can reasonably access information. See Fed. R. Civ. P. 30(b)(6). Under the rule, the person or persons designated

---

[4] Buzzfeed also occasionally asserts that sanctions are appropriate based on "Plaintiffs' repeated violations of this Court's discovery orders." Def. Mem. at 11; see also Def. Reply at 8-9 (seeking sanctions because plaintiffs ignored this Court's order to produce "authentic" documents). This argument, however, appeared in the section of Buzzfeed's main brief relating to the spoliation of evidence. See Def. Mem. at 18. Thus, we do not view Buzzfeed as having sought sanctions for plaintiffs' failure to obey a Court Order under Rule 37(b)(2) — a provision that it does not cite in its main brief.

"must testify about information [that is] known or reasonably available" to the corporation.  Id.

Thus, at the deposition, the corporation "must produce someone familiar with" the noticed

subjects.  Reilly v. Natwest Mkts. Grp., Inc., 181 F.3d 253, 268 (2d Cir. 1999) (citations

omitted).  The corporation is obligated to make a good faith effort to prepare the representative

witness to be able to "answer fully, completely, [and] unevasively the questions posed . . . as to

the relevant subject matters."  S.E.C. v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (alteration

in original) (citations and internal quotations omitted); see also Reilly, 181 F.3d at 268 ("[T]he

corporate deponent has an affirmative duty to make available such number of persons as will be

able to give complete, knowledgeable and binding answers on its behalf.") (citations and internal

quotations omitted).

Federal Rule of Civil Procedure 37(d) provides that sanctions may be imposed on a party

whose Rule 30(b)(6) designee "fails, after being served with proper notice, to appear for that

person's deposition."  Fed. R. Civ. P. 37(d)(1)(A)(i).  "When an adverse party seeks sanctions

after deposing a Rule 30(b)(6) witness, courts treat the production of an unprepared witness as

tantamount to a failure to appear."  Crawford v. Franklin Credit Mgmt. Corp., 261 F.R.D. 34, 38-

39 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).  However, "[i]n order for

the Court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and

not merely lacking in desired specificity in discrete areas."  Kyoei Fire & Marine Ins. Co. v.

M/V Mar. Antalya, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) (internal quotation marks omitted)

(quoting Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd., 171 F.R.D. 135, 151 (S.D.N.Y.

1997)).  "[I]t is settled law that a party need not produce the organizational representative with

the greatest knowledge about a subject; instead, it need only produce a person with knowledge

whose testimony will be binding on the party."  Eid v. Koninklijke Luchtvaart Maatschappij

N.V., 310 F.R.D. 226, 229 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting Rodriguez v. Pataki, 293 F. Supp. 2d 305, 311 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 315 (S.D.N.Y. 2003)).

While it is a close question, in the end we find that Leidig's Rule 30(b)(6) deposition is best characterized as "lacking in desired specificity in discrete areas," and thus is not sufficiently egregious to warrant sanctions. Kyoei Fire & Marine Ins. Co., 248 F.R.D. at 152. Buzzfeed has indicated only scattered topic areas over the course of his approximately five and a half hour deposition where Leidig's answers were inadequate. For example, Buzzfeed singles out Leidig's responses to questions regarding TransPerfect's collection of the Quinn Email. See Def. Mem. at 7-8. However, Buzzfeed's list of topics did not specifically mention this event, but instead referenced more generally CEN's collection efforts. See Buzzfeed's Noticed Topics ¶ 7.e. Leidig actually offered substantial information within this topic, such as testimony concerning the destruction of metadata, Leidig Tr. 113:10-115:4, the preservation of documents in anticipation of litigation (or lack thereof), id. 44:23-46:12, 149:10-19, the disabling of plaintiffs' websites, id. 11:4-13:19, and the deletion of employee emails, id. 40:2-42:20, 222:8-223:15.

Buzzfeed also points to instances in which Leidig was unable to answer questions relating to the servers used to store emails, id. 34:18-35:2, and GIN, id. 25:9-26:17. See Def. Mem. at 8. These questions related to Buzzfeed's noticed topic regarding "[w]here the collection of documents and/or metadata for [plaintiffs'] document production took place, including, but not limited, [sic] where the servers and custodians were located as well as where the person(s) conducting the searches, collection and production were located." See Buzzfeed's Noticed Topics ¶ 7.g. Once again, these discrete gaps in knowledge cannot be viewed as so egregious as to warrant sanctions (as opposed to a requirement that a new witness be produced

who can answer questions on these topics). We also note, however, that such gaps may not have been plaintiffs' fault entirely. For example, because the listed topic referenced only those areas where collection "took place," it is not clear that Leidig should have been prepared to testify about servers that he had admittedly not searched as part of his collection efforts, as was seemingly the case in the two instances in which Leidig lacked knowledge of the locations and custodians of certain servers. Leidig Tr. 85:8-18 (Leidig did not ask the German company that maintains the GIN server whether GIN documents could be retrieved from the server); id. 34:18-37:19 (Leidig did not know whether CEN employees emails were sent to a server and stated that his IT consultant had told him that the only way to retrieve emails was through the PST files in Outlook).

In support of its motion, Buzzfeed relies on Coty Inc. v. Excell Brands LLC, 2016 WL 7187630 (S.D.N.Y. Dec. 9, 2016). See Def. Mem. at 12-13. In Coty Inc., a company produced an investor and board member as a Rule 30(b)(6) designee to testify about "the ingredients and chemical composition of Excell's fragrances, Excell's compliance with applicable health, labeling, and consumer laws, and tests or studies regarding the liquid scent (or 'juice') and packaging of Excell's fragrances." Coty Inc., 2016 WL 7187630, at *1 (citations omitted). The designee, however, "lacked a background in chemistry and had no involvement in the day-to-day operations of [the designating company] — indeed, he was not, and is not, even an [] employee [of that company]." Id. at *2. The situation is far different here in that Leidig is intimately familiar with both CEN's day-to-day affairs as well as the noticed topics regarding plaintiffs' document production, a process in which Leidig was personally involved.

Accordingly, we find that sanctions against CEN and/or their counsel for failing to produce a proper Rule 30(b)(6) designee are inappropriate. That being said, the noticed topics

are relevant and we will permit Buzzfeed to notice a new Rule 30(b)(6) deposition to require

plaintiffs to produce a witness in areas about which Leidig did not have knowledge. The Court

notes that CEN is permitted to designate its IT consultant to answer these questions and must do

so if CEN has no other individual who can answer these questions. The Court further notes that,

with respect to the question of whether the GIN system can export documents or files, the Court

will require the CEN designee to answer questions specifically and with an appropriate basis for

its knowledge. If CEN must retain an IT consultant to provide that basis of knowledge, it is

required to do so.

     B. <u>Whether Plaintiffs Should Be Sanctioned For Spoliation of Evidence</u>.

     Spoliation is "the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

<u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 107 (2d Cir. 2001) (internal quotation

marks omitted) (quoting <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir.

1999)). A party seeking sanctions for spoliation has the burden of establishing the elements of a

spoliation claim. <u>Id.</u> at 109; <u>accord</u> <u>Centrifugal Force, Inc. v. Softnet Commc'n, Inc.</u>, 783 F.

Supp. 2d 736, 740 (S.D.N.Y. 2011) (citations omitted).

     Federal Rule of Civil Procedure 37(e) governs sanctions for spoliation of ESI. The rule,

completely rewritten in 2015, now provides that a court "may order measures no greater than

necessary to cure" prejudice to the requesting party if ESI "that should have been preserved in

the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to

preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ.

P. 37(e)(1). Separately, it provides that, if the court finds that "the party acted with intent to

deprive another party of the information's use in the litigation," the court may, <u>inter</u> <u>alia</u>,

"presume that the lost information was unfavorable to the party; [] instruct the jury that it may or must presume the information was unfavorable to the party; or [] dismiss the action or enter a default judgment." Id. 37(e)(2)(A)-(C).

Rule 37(e) amended the traditional spoliation rule as it related to ESI in a number of ways — most significantly, by providing that the harsh sanctions listed in Rule 37(e)(2) were to be applied only in cases in which a party acted with "intent to deprive" another of ESI. See Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.[5]

### 1. The Alleged Spoliated Evidence

As a threshold matter, we note that spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been "lost." Fed. R. Civ. P. 37(e); see also Byrnie, 243 F.3d at 107 (sanctions may be imposed for evidence that is destroyed, altered, or otherwise not properly preserved) (quoting West, 167 F.3d at 779); Khaldei v. Kaspiev, 961 F. Supp. 2d 564, 570 (S.D.N.Y.) ("because plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions"), aff'd, 961 F. Supp. 2d 572 (S.D.N.Y. 2013). Buzzfeed seeks spoliation sanctions, however, with respect to certain items that it fails to allege has been lost. For example, Buzzfeed seeks spoliation sanctions because it finds the screenshots of the GIN database produced by plaintiffs to be inadequate, but

---

[5] Given the plain language of the rule, we reject any argument by Buzzfeed, see Def. Mem. at 16-18; Def. Reply at 3, that a court retains inherent power to impose the sanctions listed in Rule 37(e)(2) even in the absence of proof that Leidig did not act with intent to deprive Buzzfeed of information. We view the cases Buzzfeed cites as recognizing that a court's inherent power to sanction could only be exercised for bad faith or similar willful conduct. See Ottoson v. SMBC Leasing & Fin., Inc., 2017 WL 2992726, at *8 (S.D.N.Y. July 13, 2017); CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016).

makes no claim that plaintiffs have "lost" any of the GIN data. See Def. Mem. at 10-11, 19-20.

Similarly, it seeks sanctions for plaintiffs' failure to produce "hard copies of financial documents

supporting their damages charts, or hard copies of complaints against their news reporting or

even hard copies of any newsgathering materials," Def. Reply at 3 n.3, but does not suggest that

any documents or data have been lost. Thus, spoliation sanctions are not appropriate based on

plaintiffs' failure to produce such information.[6]

Buzzfeed has, however, identified three categories of evidence that it asserts were lost.

These categories are: (1) plaintiffs' websites that were disabled following the publication of the

Article; (2) deleted emails from Feng and Quinn; and (3) metadata for documents that Leidig

collected for discovery while moving the files from one device to another. See Def. Mem. at 9-

10. The websites, metadata, and emails all constitute ESI. Accordingly, we will apply Rule

37(e) to determine whether sanctions are appropriate.

### 2. Obligation to Preserve

The first element of the traditional spoliation test — still applicable to non-ESI evidence

— requires the moving party to demonstrate that the spoliating party "had an obligation to

preserve [the evidence] at the time it was destroyed." Byrnie, 243 F.3d at 107 (citation and

internal quotation marks omitted). Similarly, Rule 37(e) requires a showing that the lost ESI

"should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e).

The advisory committee's note to the 2015 amendment of Rule 37(e) provides that in evaluating

this factor, "Courts should consider the extent to which a party was on notice that litigation was

likely and that the information would be relevant." Fed. R. Civ. P. 37(e) advisory committee's

---

[6] We do not address whether Buzzfeed would be entitled to any other relief with respect to plaintiffs' document production.

note to 2015 amendment. This is the same standard applicable to the traditional spoliation test. See, e.g., Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (citation omitted); accord R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 23 (S.D.N.Y.), adopted, 271 F.R.D. 55 (S.D.N.Y. 2010); Scalera v. Electrograph Sys., Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009); Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008). Thus, we will apply cases relevant to the traditional spoliation test in deciding whether certain ESI "should have been preserved in the anticipation or conduct of litigation."

The obligation to preserve evidence arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126-27 (2d Cir. 1998) (citations omitted). "[W]hen the duty to preserve evidence arises may, under certain circumstances, be dependent upon the nature of the evidence." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009).

The plaintiffs' duty here to preserve evidence relating to the Disputed Stories arose at the very latest on April 24, 2015, the date the Article was published. This is because plaintiffs' law firm, Carter-Ruck, sent Buzzfeed a letter dated April 22, 2015, implicitly threatening legal action against Buzzfeed in the event the Article were published. See Bolger Decl. ¶ 1; Carter-Ruck Letter. This letter expressly referred to the planned Article as containing "defamatory" allegations that would damage plaintiffs and specifically stated that plaintiffs reserved "all their legal rights." Carter-Ruck Letter at *4, *6. Thus, as soon as the Article was published on April

24, 2015, in defiance of the Carter-Ruck letter, the plaintiffs knew that there was a realistic potential for litigation against Buzzfeed, thereby triggering plaintiffs' obligation to preserve.  We discuss below which categories of evidence were allegedly lost after that date.

The next issue is to what documents this duty extended.  Under the traditional test, the obligation ran to documents that a party knew or "should have known" were relevant to future litigation.  Fujitsu, Ltd., 247 F.3d at 436.  We thus examine each of the categories of allegedly spoliated evidence to determine their relevance.

a. Websites.

Some of the Disputed Stories were posted on websites maintained by plaintiffs and that plaintiffs "disabled" after the Article was published.  See, e.g., Leidig Tr. 8:2-12:15; see also The Article at 5, 7, 8, 10, 11, 15, 17.  There was a duty to preserve them, however, because the websites were plainly relevant to the plaintiffs' claims and Buzzfeeds' defenses.  Some of these websites — such as the Austrian Times and the Croatian Times — were referred to by name in the Article as websites that hosted some of the Disputed Stories.  See, e.g., The Article at 10, 17.  Indeed, one of the excerpts from the Article that plaintiffs claim to be defamatory makes reference to these websites.  See Compl. ¶¶ 7-13.

Apart from the fact that they are connected to the Disputed Stories, all of plaintiffs' websites are relevant to the question of whether Leidig or CEN are "public figures" for the purpose of plaintiffs' defamation claims.  It is well-established that in a defamation suit brought by a public figure, unlike a defamation suit brought by a private figure, the plaintiff must establish both the falsity of the allegedly defamatory statements as well as a heightened degree of culpability.  See, e.g., Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974) ("public figures . . . may recover for injury to reputation only on clear and convincing proof that the defamatory

falsehood was made with knowledge of its falsity or with reckless disregard for the truth"). As Buzzfeed notes, whether plaintiffs may be deemed "limited purpose public figures" in this context hinges on factors such as whether plaintiffs "successfully invited public attention to [their] views in an effort to influence others prior to the incident that is the subject of litigation . . . [and] maintained regular and continuing access to the media." Lerman v. Flynt Distrib. Co., Inc., 745 F.2d 123, 136-37 (2d Cir. 1984). Thus, plaintiffs' websites, insofar as they provided plaintiffs with an outlet of communication with the general public, are relevant to these factors and thus were within the scope of plaintiffs' duty to preserve.

Plaintiffs respond that Leidig lacked the legal "sophisticat[ion]" to know that his status (or lack thereof) as a public figure would have been relevant to a libel lawsuit in the United States. See Pls. Mem. at 13-14. Thus plaintiffs argue that the duty to preserve these websites did not attach because Leidig had no reason to know that these websites would have provided relevant evidence. See id. Leidig cites no case law to support the proposition that a party's legal acumen affects the duty to preserve. Nor is such an argument consistent with Rule 37(e), which imposes the obligation to take "reasonable" steps to preserve evidence, or with spoliation law generally, which requires a party to preserve evidence the party "reasonably should know is relevant to claims or defenses in the action." R.F.M.A.S., Inc., 271 F.R.D. at 23-24. Because this is phrased as an objective test, Leidig's own personal beliefs are not the point. Even if Leidig did not know exactly how Buzzfeed might use these websites, a reasonable person in his situation — particularly one who had retained a lawyer to implicitly threaten litigation — should have understood that the websites were relevant to his defamation case. As already noted, Buzzfeed refers to some of these websites throughout the Article. See The Article at 5, 7, 8, 10, 11, 15, 17. Leidig's own complaint quotes one such passage, which he alleges was false and

defamatory insofar as it asserted that he "decided to go into the business of fabricating and selling fake news stories" by <u>inter alia</u>, launching the Austrian Times and Croatian Times.  <u>See</u> Compl. ¶¶ 7-13.  It therefore should have been readily apparent to Leidig that these websites were relevant to his defamation lawsuit in some fashion.[7]

### b. Emails

Plaintiffs had a duty to preserve the original version of the Quinn Email, which was purportedly sent from Feng to Quinn on April 27, 2015, three days after the publication of the Article.  <u>See</u> Quinn Email.  The Quinn Email addressed the newsgathering efforts supporting one of the Disputed Stories.  <u>See</u> Leidig Email; Quinn Email.  Indeed, both Feng and Quinn were listed in plaintiffs' initial disclosure as individuals who might have "information concerning . . . the preparation and publication" of Disputed Stories.  Initial Disclosure at 1-2.  Nevertheless, plaintiffs failed to produce the original version of this email, initially producing only a forwarded version of this email, <u>see</u> Bolger Decl. ¶ 18.e; Leidig Email, and later producing an email that contained the majority of the original email's text as an attachment with no metadata, <u>see</u> Bolger Decl. ¶ 18.e; Quinn Email; Leidig Tr. 233:15-234:4.

Buzzfeed has not, however, demonstrated that any of the other emails were destroyed after the Article was published, and thus within the relevant time period.  Although Buzzfeed does cite to one excerpt from Leidig's deposition indicating that Fuchs had deleted some of Quinn's other emails in "2015," <u>see</u> Leidig Tr. 40:4-42:20, it is not clear whether this occurred

---

[7] Plaintiffs also assert that such websites are not relevant because plaintiffs are not public figures.  <u>See</u> Pls. Mem. at 14-15.  The court refused to grant plaintiffs' request for summary judgment on the issue of plaintiffs' statuses as public figures.  <u>See</u> Decision and Order, filed May 9, 2017 (Docket # 47), at 14-15.  Thus, evidence establishing or refuting the existence of this element remains relevant to this case.

before or after the Article was published. Accordingly, we find that Buzzfeed has established only that the original version of the Quinn Email was deleted after the duty to preserve arose, but has failed to establish spoliation with respect to Feng's and Quinn's other emails.

### c. Metadata

The duty to preserve encompassed the metadata that Leidig deleted while collecting documents. Buzzfeed alleges that "[p]laintiffs produced hundreds of screenshots of Outlook files, websites and other images related to the Disputed Stories with incomplete or incorrect corresponding metadata." Def. Mem. at 5; see also Bolger Decl. ¶ 18.c-d. Buzzfeed has produced a spreadsheet of documents cataloguing allegedly inaccurate metadata. See Metadata Chart. Although Buzzfeed does not state in detail the contents or authors of these documents, Buzzfeed provides some examples. One such document includes a compilation of links and descriptions supporting the allegations in one of the Disputed Stories. See Chinas Cabbage Patch Kids (annexed as Ex. 15 to Bolger Decl.). Although Leidig testified that Feng originally produced this document in 2015, the metadata indicated that this document was in fact created in 2016. Leidig Tr. 162:9-165:21. Leidig also testified at his deposition that he destroyed metadata for certain documents and emails by transferring these files from the devices on which they were originally stored to new devices. See id. 113:10-115:4. The example provided by Buzzfeed, coupled with its assertion that the documents missing metadata were relevant to the production of the Disputed Stories, is sufficient to show that the duty to preserve extended to the metadata associated with these documents.

### 3. Culpable State of Mind and Reasonable Steps

Prior to the 2015 amendments to Rule 37(e), a party who sought sanctions for the spoliation of ESI was required to show that the evidence was destroyed "with a culpable state of

mind." Byrnie, 243 F.3d at 109. Under that rule, harsh spoliation sanctions such as an adverse

inference instruction, were available on a showing that a party acted negligently. See

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002) ("The

sanction of an adverse inference may be appropriate in some cases involving the negligent

destruction of evidence"). Now, however, the new version of Rule 37(e) permits sanctions such

as an adverse inference instruction or dismissal only in instances in which the spoliating party

acted with "intent to deprive another party of the information's use in the litigation." Fed. R.

Civ. P. 37(e)(2)(A)-(C). As for other sanctions, the opening paragraph of Rule 37(e) permits

sanctions upon a threshold showing that a party "failed to take reasonable steps" to preserve the

evidence, which we equate to roughly a negligence standard. See generally Fed. Hous. Fin.

Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc., 873 F.3d 85, 129 (2d Cir.

2017) ("Negligence, broadly speaking, is conduct that falls below the standard of what a

reasonably prudent person would do under similar circumstances. . . ." ) (quoting Fane v.

Zimmer, Inc., 927 F.2d 124, 130 n.3 (2d Cir. 1991)).

Buzzfeed urges this Court to find that plaintiffs acted with an intent to deprive it of the

evidence based on plaintiffs' misleading and contradictory explanations for their failure to

properly preserve evidence. Def. Mem. at 19-21. Buzzfeed alleges that plaintiffs have variously

claimed that their websites were shut down both before and after the Article's publication. See

Def. Mem. at 19. However, the documents Buzzfeed cites for this proposition show that

plaintiffs have consistently claimed that the websites, though not heavily used just before the

Article's publication, were disabled only after its publication. See Letter from Wise to Bolger;

Leidig Tr. 11:2-13:5.

Similarly, Buzzfeed claims that plaintiffs concealed the fact that the original Quinn Email

had been deleted until Leidig's August 11, 2017, deposition, and have still failed to present any credible explanation for it. <u>See</u> Def. Mem. at 20-21. However, a June 27, 2017, letter from plaintiffs' counsel to Buzzfeed's counsel expressly noted that plaintiffs had to produce some of Quinn's emails from outside of CEN's Vienna Office because some of these emails were deleted either "intentionally, to create more space" or "unintentionally as a result of corruption in those files." <u>See</u> Letter from Wise to Bolger and Strom at *2. Moreover, although the "original" copy of the email ultimately produced by plaintiffs' was not an adequate substitute insofar as it lacked metadata, plaintiffs have provided a plausible explanation for this formatting issue: Seigle-Morris, plaintiffs' discovery expert who was responsible for collecting this document, stated that this irregular format is attributable to "Mr. Feng's use of an Apple computer and a specific email client's configuration." Seigle-Morris Decl. ¶ 15. This is consistent with plaintiffs' explanation that this document was retrieved from "other data bases but not from computers at CEN's office in Vienna." <u>See</u> Letter from Wise to Bolger and Strom at *2.

Finally, Buzzfeed urges this Court to find that plaintiffs acted with the requisite intent because some documents were either intentionally or knowingly destroyed. Def. Reply at 3-4. For example, Leidig testified that he "made the decision" to disable his websites after the Article was published. Leidig Tr. 11:4-12:17. Similarly, as just noted, some of the Quinn emails may have been intentionally deleted to create space or because they were corrupted. <u>See</u> Letter from Wise to Bolger and Strom at *2. Under the standard applicable to the spoliation of ESI prior to the 2015 amendment to Rule 37(e), Leidig's actions might have been sufficient to obtain a harsh sanction such as an adverse inference instruction. <u>See</u> <u>Residential Funding Corp</u>, 306 F.3d at 108. However, Rule 37(e)(2) permits an adverse inference instruction or dismissal of a case only on a showing that evidence was destroyed with "intent to <u>deprive another party of the</u>

information's use in the litigation." Fed. R. Civ. P. 37(e)(2)(A)-(C) (emphasis added). In other words, the intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence. Buzzfeed has shown only the former type of intent.

In arguing that plaintiffs intentionally spoliated evidence, Buzzfeed relies on Ottoson, 2017 WL 2992726. That case found that plaintiff Ottoson's spoliation of emails met the requisite intent requirement under Rule 37(e)(2) because Ottson "(a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession but has failed to produce them." See Ottoson, 2017 WL 2992726, at *9. However, the evidence that Ottson acted with the intent to deprive another party of relevant evidence was much stronger than it is here. For example, some of the spoliated emails in that case sought to "direct the exact contents of [a] witness statement." See id. at *9. The circumstances in that case thus strongly supported the inference that plaintiff intended not just to spoliate the emails, but to keep the emails from her litigation adversaries. By contrast, Buzzfeed has failed to directly or circumstantially establish that plaintiffs spoliated any evidence out of the desire to deprive Buzzfeed of such evidence during the litigation. Ottoson therefore is not contrary to the conclusion we reach here.

While there is insufficient evidence that plaintiffs acted with an intent to deprive Buzzfeed of the evidence, the plaintiffs' actions were certainly negligent.[8] Despite having reason to anticipate litigation as soon as the Article was published in April 2015, plaintiffs made

---

[8] Buzzfeed argues that plaintiffs acted with "gross negligence" based on their failure to timely implement a litigation hold. Def. Mem. at 16-18. It is not necessary to reach this issue because Rule 37(e)(1) provides no reason to distinguish between gross negligence and ordinary negligence.

no efforts to preserve relevant evidence and issued no "litigation hold" until after this lawsuit was initiated in January 2016.  See, e.g., Leidig Tr. 44:23-46:4.  The failure to implement such a litigation hold is particularly unreasonable in light of the fact that plaintiffs were the ones who themselves threatened litigation.  See Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013) (failure to implement a litigation hold was "inexcusable given that Sekisui is the plaintiff in this action and, as such, had full knowledge of the possibility of future litigation.").  Instead of preserving documents after the Article's publication, plaintiffs instead disabled their websites shortly thereafter.  See Leidig Tr. 11:4-12:4.  Similarly, Leidig testified that the original version of the Quinn Email was deleted from CEN's Austrian database after April 27, 2015.  See id. 222:8-223:19.[9]  Finally, the metadata relating to the documents listed in Buzzfeed's Metadata Chart were seemingly destroyed during discovery — well after the Article was published and even after the litigation hold was issued in January 2016 — when Leidig, by his own admission, irreversibly destroyed metadata by transferring files from one device to another.  See id. 106:1-107:13, 113:10-115:4.  This amateurish collection of documents leading to the destruction of perhaps critical metadata certainly reflects that plaintiff did not take "reasonable steps" to preserve the evidence as required by Rule 37(e).  Thus, sanctions are available under Rule 37(e)(1), although not under Rule 37(e)(2).

---

[9]  The fact that a duplicate version of this email was allegedly found and produced from Feng's computer does not change this analysis.  Ordinarily, "[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."  CAT3, LLC, 164 F. Supp. 3d at 497 (alteration in original) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).  However, when the duplicated version of ESI differs from the alleged original version, then the duplicated version cannot be deemed an adequate substitute.  See id. at 497.  Here, the Quinn Email as produced differs from the purported original in that the Quinn Email includes most of the email's text as an attachment with no metadata.  It is therefore not an adequate substitute for the original deleted version.

4. <u>Prejudice</u>

Federal Rule of Civil Procedure 37(e)(1) permits the imposition of sanctions only when there is "prejudice to another party from loss of the information." This differs from the traditional rule of spoliation, which allowed a court to "impose sanctions even if the discovery violation did not prejudice the other parties, [although] the absence of prejudice generally militate[d] toward the imposition of a less harsh sanction." <u>R.F.M.A.S., Inc.</u>, 271 F.R.D. at 24. The advisory committee's note to the 2015 amendment of Rule 37(e)(1) stated that "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. The Advisory Committee further cautioned that "[t]he rule does not place a burden of proving or disproving prejudice on one party or the other," and that "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." <u>Id.</u>

With respect to the destruction of the original Quinn Email, Buzzfeed argues that this email's destruction prejudices them because "[d]ocuments establishing what newsgathering efforts were made for the Disputed Stories is critical to establish the substantial truth of the Buzzfeed Article — and their destruction hamstrings Buzzfeed's effort to cross-examine Plaintiffs' claims that the Disputed Stories are true." Def. Mem. at 22. However, the Quinn Email indicates that it was originally sent on April 27, 2015, after the Article's publication. <u>See</u> Quinn Email. In other words, even if the original Quinn Email was produced with metadata indicating that it was created on the date plaintiffs claim it was, it still would not be evidence of contemporaneous newsgathering. Buzzfeed would therefore be able to argue, just as it can now, that the information contained in the Quinn Email was gathered only after the Article's and Disputed Stories' publications. Thus, we find no prejudice from the spoliation of the original

26

version of this email.

We find differently with respect to the websites and metadata. With respect to the websites, their very existence would have likely helped Buzzfeed establish that plaintiffs were public figures for the reasons described in section II.B.2.a above. Meanwhile, the metadata destroyed by Leidig in discovery may have been critical in this case because, as Buzzfeed notes, the dates on which documents relating to plaintiffs' newsgathering activities were created and last modified may have shown that "[p]laintiffs did not gather these materials as part of CEN's original reporting for the Disputed Stories; but instead cr[e]ated them, <u>long</u> after the Disputed Stories were published as part of a post-hoc justification for the publication of the Disputed Stories." Def. Mem. at 23 (emphasis in original). This was likely the case with respect to at least some of the deleted metadata, as the purported date of the original Quinn Email makes clear that plaintiffs continued compiling information regarding their newsgathering efforts for the Disputed Stories even after the Article was published. <u>See</u> Quinn Email. We therefore find that the spoliation of the disabled websites and metadata has prejudiced Buzzfeed.

C. <u>What Sanctions are Appropriate</u>

Before imposing sanctions for spoliation of ESI, Rule 37(e) requires us to consider first whether the spoliated evidence "cannot be restored or replaced through additional discovery." Plaintiffs claim that Buzzfeed has not been prejudiced by their failure to preserve the original websites because the websites can be accessed through https://archive.org, commonly known as the "wayback machine." <u>See</u> Pls. Mem. at 15. We reject this argument. Plaintiffs have provided no evidence or argument showing that the data generated from the website is reliable,

complete, and admissible in court.[10]  Accordingly, this archive does not provide an adequate substitute for plaintiffs' failure to produce their websites through discovery, and fails to mitigate the prejudice to defendant.

With regard to the destroyed metadata, Leidig testified at his deposition that his discovery expert informed him that the missing metadata had been irreversibly destroyed when he transferred the files to a new device.  Leidig Tr. 113:10-20.  Thus, additional discovery would not lead to the production of the spoliated metadata.

In fashioning applicable sanctions, Federal Rule of Civil Procedure Rule 37(e)(1) authorizes this Court to "order measures no greater than necessary to cure the prejudice" caused by the loss of information.  Fed. R. Civ. P. 37(e)(1).  The advisory committee note to the amendment of Rule 37(e)(1) provides that in an "appropriate case," a court may impose "serious" sanctions on the spoliating party, "such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  However, the advisory committee cautions that "[c]are must be taken [] to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2)."  Id.  Lastly, the advisory committee notes that the "authority to order measures no greater than necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect."  Id.

---

[10]  At least one court has held that whether data from the "wayback machine" is admissible depends on what foundational evidence is offered to support it.  See, e.g., United States v. Gasperini, 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017).

Based on the these considerations, we find the following sanctions are necessary, and no more than necessary, to remedy the identified prejudice.

First, with respect to any document with metadata that was modified or deleted in discovery,[11] plaintiffs will be precluded from using the date contained in any such document to argue that the presence of the date alone proves the date on which the document was created. Rather plaintiffs will be required to provide independent evidence (such as witness testimony) to show the document's creation date. In addition, Buzzfeed will be permitted to present evidence to a factfinder regarding plaintiffs' destruction of their metadata so that Buzzfeed may make arguments that the material presented was not created on the date claimed.

Second, Buzzfeed may present evidence to the jury that plaintiffs disabled the websites listed in their Initial Disclosure after litigation was threatened and at a time when they were legally obligated to preserve those websites. In addition, Buzzfeed will be permitted to offer into evidence archived websites from the internet archive https://archive.org/ if it chooses to do so, the jury will be instructed that the data from this website should be presumed to be authentic and accurate if offered by Buzzfeed, and plaintiffs will be precluded from arguing that the archived websites are inadmissible. This ruling may be inadequate to remedy all prejudice resulting from the spoliation of these websites to the extent the archive does not systematically preserve all former aspects of a website. Nevertheless, harsher sanctions risk falling outside of those permissible under Rule 37(e)(1) or being greater than necessary to remedy any resulting prejudice.[12]

---

[11] The Court notes that this category does not include screenshots of GIN.

[12] This ruling should not be construed as opining on whether a permissive (rather than a mandatory) adverse inference instruction is appropriate as a result of the plaintiffs' loss of

III. <u>CONCLUSION</u>

For the reason set forth above, Buzzfeed's motion for sanctions for spoliation of evidence and violations of this Court's discovery orders (Docket # 61) is granted in part and denied in part, and the sanctions described in section II.C above are hereby imposed.  As discussed during the December 1, 2017, telephone conference, the parties are to submit a letter no later than one week from the date of this decision setting forth their proposed schedule for additional discovery in this case.

SO ORDERED.

Dated:  December 19, 2017
       New York, New York

                                        GABRIEL W. GORENSTEIN
                                   United States Magistrate Judge

---

evidence.  As the Second Circuit has made clear, a permissive adverse inference instruction does not necessarily reflect a sanction, and its delivery to a jury does not require the same findings necessary to impose a spoliation sanction.  See <u>Mali v. Fed. Ins. Co.</u>, 720 F.3d 387, 391-94 (2d Cir. 2013); <u>Klipsch Grp., Inc. v. Big Box Store Ltd.</u>, 2014 WL 904595, at *4 (S.D.N.Y. Mar. 4, 2014).  Additionally, the decision whether to grant a permissive adverse inference instruction "will necessarily be informed by factors and evidentiary support different from what is necessary to obtain a spoliation sanction."  <u>Singh v. Penske Truck Leasing Co., L.P.</u>, 2015 WL 802994, at * 7 (S.D.N.Y. Feb. 26, 2015).  Such an instruction may be requested at the time pretrial order materials are submitted to the Court.