# EXHIBIT 14

**To the Sept. 12, 2018 Declaration of Harry H. Wise, III**

Direct Email: claire.gill@carter-ruck.com
Direct Fax: 020 7353 1062

Our Ref: CFG/HS/15785.1

22 April 2015

**By Email:** alan.white@buzzfeed.com

Alan White
BuzzFeed
2nd Floor
40 Argyll Street
London
W1F 7EB

Carter-Ruck

**Private and Confidential**
**Not for publication**

Dear Sir

**Central European News Ltd and BuzzFeed**

We are instructed on behalf of our clients Central European News [CEN] and Michael Leidig in connection with your recent communications with him and, in particular, in relation to your emails of 15 and 20 April 2015. We note that you asked for a reply originally by Tuesday, 21 April. Given the scope of your questions, this was an unreasonable deadline and our clients have not had time properly to investigate the matters you have raised, some of which relate to stories that were published over a year ago. Mr Leidig did not see your email of 15 April at the time it was received, as it went into his spam folder. We understand that you have also sent enquiries to the Mirror Group, and have given them a deadline of 5 pm today. Our client told you today that we would write to you, and we trust you will properly take account of our clients' response, notwithstanding the fact they did not meet your original arbitrary deadline.

You state in your correspondence that BuzzFeed News is preparing to publish "an article which proposes to report that [CEN] is responsible for the circulation of a string of stories that have subsequently been proven false either in part or in their entirety". In your questions, you assert that our clients are to be suspected of "fabricating" quotes. These allegations are highly defamatory of our clients and if published are likely to cause serious reputational harm, in particular in the eyes of their customers. As you know, unlike Buzzfeed, our client does not publish news itself, rather it sells material to customers, including the mainstream media organisations in the UK. As you also well know, two of our client's customers are Mirror Group Newspapers and Associated Newspapers, to whom you have already made these allegations, ostensibly in the guise of an enquiry about stories published by them which originate from CEN.

CEN is Buzzfeed's main competitor for viral news content in the UK market. Our client is not therefore prepared to engage with Buzzfeed about the detail of any of your questions as to do so would involve giving information about its sources and practices to a competitor. As we explain below, it seems that the true purpose of your investigation is to fish for information from our clients, and the proposed publication of the allegations is calculated to damage CEN's business.

**Carter-Ruck Solicitors**
6 St Andrew Street
London EC4A 3AE
T 020 7353 5005
F 020 7353 5553
DX 333 Chancery Lane
www.carter-ruck.com

**Partners**
Alasdair Pepper
Guy Martin
Nigel Tait
Ruth Collard
Cameron Doley
Claire Gill
Adam Tudor
Isabel Martorell
Stephen Loughrey

**Partnership Secretary**
Helen Burdick

Authorised and regulated by the Solicitors Regulation Authority

SRA No 44769

EXHIBIT J

Our client denies absolutely that it makes up false stories or fabricates quotes. It relies on trusted contributors to source content. None of the stories upon which you rely in your questions provide evidence, or, as you put it, "proof" to support such claims. Our clients are not aware of any complaint having been made either by the subjects of the articles or by its customers about any of the stories to which you refer. In relation to your statement that you find it "incredible" that CEN gets quotes from sources that no-one else does, the fact that you have been unable to find quotes online does not provide any basis for any suspicion that our client fabricates quotes. The allegations upon which you base your questions appear to a large extent to be based not on proper investigation but on information you have apparently found on other investigative sites (for example Snopes).

You state that you intend to report "on this pattern as a matter of legitimate public interest and concern". However, there is no evidence of a "pattern" of behaviour of fabricating stories. We understand that, since January 2014, BuzzFeed has been a subscriber to CEN's newsfeed. In that time, it has therefore received newsfeed for over 8,000 stories and, of those, you have identified 17 items about which you have raised questions. On any analysis, the fact that a tiny minority of stories might raise questions, is not indicative of what you have described as "a pattern". For the avoidance of doubt, our client does not accept the claims you make about these stories to be accurate, but, as BuzzFeed will itself be well aware, on occasion, mistakes are made or information that is received in good faith proves later to be unreliable, in which case our clients will promptly correct their story.

You said at the end of your email of 15 April that you are "interested in writing a new ... and balanced piece about the pressures of running an online news organisation in the viral internet age". We do not accept that the story that you indicate you plan to write is a matter of public interest, nor can you reasonably believe that publishing the article is in the public interest. There is of course no public interest in a false story and if the true purpose of your article was to write about "the pressure of running an online news organisation in the viral internet age", then your own organisation, BuzzFeed, is surely the place to start. Your proposed article, however, is in fact about a rival organisation and, as we say above, the purpose of the article therefore appears to be to attack or undermine your biggest competitor in the UK market, possibly, our clients suspect, to detract from negative publicity that BuzzFeed has itself been receiving, relating to charges of plagiarism, copyright infringement and, more recently, in April 2015 the suggestion that it deleted articles that criticised its advertisers.

You were entirely disingenuous in your early efforts to engage our client in your investigation, stating, falsely, that you wanted to write an article about the great way the agency was expanding and "to explore the challenges of reporting in the digital age in depth". It is now obvious from the nature of your questions, that this was not the true purpose of your enquiries. Even though in your email of 15 April you refer to our client's "laudable investigative journalism", and, at the beginning professed to be interested in how our client balances challenging investigative journalism whilst at the same time producing a high volume of lighter viral or tabloid stories, this, if mentioned in your proposed article, would not detract from the damage that would be caused were you to allege that our client made up stories or fabricated quotes.

As to your questions about Journalism with Borders [JWB], our client has already given you details of those to whom enquiries about its finances can be addressed. Mr Leidig is Vice-Chair of the National Association of Press Agencies, with responsibility for special projects, and he is constantly looking for new ideas. Whilst JWB has not, to date, raised significant sums, it is a project in which our client still believes and hopes can be re-invigorated, but this requires time and energy from volunteers.

Our client's Wikipedia page is entirely uncontroversial and has nothing at all to do with your story.

In light of what we have said, it will be clear that our clients will take very seriously the publication of any false allegations about them, and all their legal rights are reserved.

Yours faithfully

Carter-Ruck

**Carter-Ruck**

cc: Luke Lewis & Heidi Blake

heidi.blake@buzzfeed.com
luke.lewis@buzzfeed.com