USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
MICHAEL LEIDIG and CENTRAL       :
EUROPEAN NEWS LTD,               :
                                 :
                   Plaintiffs,   :     16 Civ. 0542 (VM)
                                 :
      - against -                :     **DECISION AND ORDER**
                                 :
BUZZFEED, INC.,                  :
                                 :
                   Defendant.    :
--------------------------------- X
**VICTOR MARRERO, United States District Judge.**

Plaintiffs Michael Leidig ("Leidig") and Central European News Ltd ("CEN") (collectively, "Plaintiffs") commenced this litigation against defendant BuzzFeed, Inc. ("BuzzFeed") alleging libel and seeking $5,000,000 in damages in connection with an article published by BuzzFeed regarding Plaintiffs. (See "Complaint," Dkt. No. 1.)

BuzzFeed moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), on the grounds that Plaintiffs cannot satisfy two of the elements required for a libel claim: (1) falsity of the defamatory statement; and (2) the requisite degree of fault. (See "Motion," Dkt. No. 102.) For the reasons discussed below, the Court finds that there are no genuine issues of material fact regarding the falsity of BuzzFeed's statements and thus summary judgment is warranted. BuzzFeed's Motion is therefore GRANTED.

1

## I.     BACKGROUND

A. FACTUAL BACKGROUND

On April 24, 2015, BuzzFeed, an internet media company that operates the popular eponymous website, published an article titled "The King of Bullsh*t News" (the "Article") on its website. (See Dkt. No. 1-1.) The Article's primary subject is a selection of stories sold by CEN, a British news agency founded by Leidig in 1995 which "provid[es] news from non-English-language countries" to third-party media services in Britain and elsewhere. (Complaint, ¶¶ 14-15, 22-23; see also "April 2018 Leidig Dep. Tr.," Dkt. Nos. 104-10, 104-11 at 17:9-17.)

The Article specifically focuses on stories disseminated and sold by CEN on topics such as teens in China walking cabbages on leashes due to loneliness; a Justin Bieber ringtone saving a Russian fisherman from a bear attack; and numerous stories involving male castration. (See Dkt. No. 1-1 at 3, 6, 13-17.) The Article developed after many months of investigation, and in the footsteps of prior reporting by other news organizations pointing to alleged inaccuracies in CEN's stories. Three veteran journalists worked for over five months researching the facts contained in these and other CEN stories. (See "White Decl.," Dkt. No. 109 ¶¶ 6-14.) From the beginning, the question among the BuzzFeed team members was

2

whether they could "reach the point where [they] can go '[t]his [CEN story] is definitely fake.'" (Id. Ex. 2 at 2.) At the conclusion of the investigation, the BuzzFeed team members summarized that "the evidence assembled by BuzzFeed News suggests that an alarming proportion of CEN's 'weird news' stories are based on exaggeration, embellishment, and outright fabrication[.]" (Dkt. No. 1-1 at 4.)

On January 25, 2016, Plaintiffs commenced this litigation alleging that BuzzFeed's Article falsely suggests that Plaintiffs are "in the business of publishing news articles presented as true that are false" -- or so-called "fake news" -- and "that [P]laintiffs are the largest purveyors of such articles in the world." (Complaint ¶ 3.) Plaintiffs specifically excerpt eight statements from the Article which they allege are defamatory and published with "reckless disregard" as to their truth or falsity. (Id. ¶¶ 3, 6, 7, 27, 33, 38, 46, 55, 62.) These eight statements form the basis of Plaintiffs' libel claims and are set forth below.

### 1.   Statement One -- Cabbage Story

The Article details a story CEN sold "concerning people in China walking cabbages, rather than pets, out of loneliness" (the "Cabbage Story"). (Id. ¶ 27.) Plaintiffs cite the following statement in the Article about the Cabbage Story as defamatory:

3

The story included quotes from "Chinese psychiatrist Wen Chao", explaining how walking a cabbage on a lead can help reduce feelings of isolation, and a 17-year-old called Lui Ja Chen, who supposedly said:

> I feel I can transfer my negative thoughts about myself to the cabbage, go for a walk with it and come home feeling better about myself.

The pictures were credited to CEN, and the same quotes appeared on the Austrian Times site.

Unsurprisingly, the story was quickly debunked[] by *Kotaku*, BuzzFeed, and the *Wall Street Journal*. The teens were not walking cabbages because they were lonely: they were walking cabbages as part of an art event at a music festival by Chinese artist Han Bing (who has been walking cabbages as part of his art for over a decade).

("Statement One"). (Id. ¶ 27.) Plaintiffs allege that this statement implies "that [P]laintiffs' story was untrue, and that it was made up by [P]laintiffs, and that [P]laintiffs had made up quotes from non-existent persons," and that these implications are defamatory to Plaintiffs. (Id. ¶¶ 29-30.)

2.   Statement Two -- Sashimi Tapeworm Story

The Article also covers a story by Plaintiffs about "a Chinese man who had reportedly gotten tapeworm from eating too much sashimi, [and the] story was accompanied by a photo purporting to be a photo of the man's x-ray showing the spots of disseminated cysticercosis" (the "Sashimi Tapeworm Story"). (Id. ¶ 38.) Plaintiffs allege that the following statement in the Article is defamatory:

> Soon after the story made the rounds, it was investigated by the debunking site *Snopes*, which found that the x-ray photos of the alleged victim were "similar to those

4

included in a 2014 case report published by the *British Medical Journal* that dealt with a man who contracted a rare case of disseminated cysticercosis through the consumption of uncooked pork (with no mention of raw fish)". It does not appear that CEN ever alerted its customers to the fact that the images had been debunked; the original story remains online at the *Daily Mail* and elsewhere.

("Statement Two"). (Id. ¶ 38.) Plaintiffs allege that, through this statement, BuzzFeed "intended to and did assert that [P]laintiffs had used an x-ray of some other person and passed it off as an x-ray of the Chinese man they were writing about, and failed to make a correction when this was revealed," and the statement is false and defamatory to Plaintiffs. (Id. ¶¶ 39, 42-43.)

### 3. Statement Three -- Pink Kitten Story

The next allegedly defamatory statement in the Article involves a story about a Russian woman named Elena Lenina ("Lenina") who had dyed her kitten pink, supposedly causing its death (the "Pink Kitten Story"):

> As *Gawker's Antiviral* site pointed out, the story was false. The kitten was not dead. Lenina was in fact simply posting pictures of her -- very much alive -- kitten on social media.
>
> [T]his appears to be a situation where CEN sold a false (and potentially defamatory) story about a real person with little regard for the consequences that person would face when the story went viral. Nor has there been any apparent attempt to correct the story since it was proved to be false.

5

("Statement Three"). (Id. ¶ 46.) Plaintiffs allege that, through this statement, BuzzFeed intended to and did assert that "[Plaintiffs] are intentional purveyors of false stories, and do not care whether they injure any persons by their publications, and persist in such conduct even after a story is proven to be false." (Id. ¶ 47.) Furthermore, Plaintiffs allege that the statement is false and defamatory. (Id. ¶¶ 47-48.)

### 4.   Statement Four -- Nude Women Story

The Article also describes a story by Plaintiffs "concerning some Russian women who stripped in public and lost their jobs as a result" (the "Nude Women Story"). (Id. ¶ 55.) Plaintiffs excerpt the following statement in the Article about the Nude Women Story:

> [I]t appears that CEN took the photos, invented a newsworthy narrative, inserted false names for the women, credited a nonexistent photographer, and fabricated four sets of quotes to fill out the text.

("Statement Four"). (Id.) Plaintiffs allege that this statement "meant to and did accuse [Plaintiffs] of creating a false news story and fraudulently selling it as true," and the assertions in the story are false and defamatory. (Id. ¶¶ 56-58.)

6

5.   Statement Five -- Two-Headed Goat Story

The Article also covers Plaintiffs' story concerning "the birth of a two-headed goat on a farm in China" (the "Two-Headed Goat Story"). (Id. ¶ 62.) For the Two-Headed Goat Story, BuzzFeed also quoted an expert who explained that the story's accompanying photograph was "digitally enhanced." (Id.) Plaintiffs claim the following statement in the Article is defamatory:

> A Xinhua journalist who claims to have seen the goat in person didn't get the farmer to talk, but a news agency based in Vienna somehow did, despite the story taking place in a remote rural community a six-hour train ride from Beijing.

("Statement Five"). (Id.) Plaintiffs allege that BuzzFeed meant to and did imply that "[P]laintiffs had published a fake photograph and had invented quotes to make a story more interesting," and that implication is false and defamatory. (Id. ¶¶ 63-65.)

6.   Statement Six

Apart from its coverage about specific stories Plaintiffs sold, the Article also describes CEN and Leidig more broadly:

> But then the bottom fell out of the business . . . after 9/11, and it seemingly never recovered.
>
> . . .
>
> So it appears that Leidig decided to play the online game, as he saw it. He launched websites such as the *Austrian Times* and *Croatian Times*. He cast his net far

7

afield to China, India, and Latin America, scouring for images and posts on social networks that he could weave a story around in order to hit up old clients with a new kind of content.

("Statement Six"). (Id. ¶ 7.) Plaintiffs allege that, through Statement Six, BuzzFeed "intended to and did assert that, suffering from financial difficulties, [Plaintiffs] decided to go into the business of fabricating and selling fake news stories." (Id. ¶ 8.) Plaintiffs further assert that BuzzFeed "had seen no documents" and "had spoken with no persons who had said that, suffering from financial difficulties, [Plaintiffs] had decided to go into the business of fabricating and selling fake news stories." (Id. ¶¶ 9-10.) Thus, Plaintiffs claim this statement is false and defamatory. (Id. ¶¶ 11-12.)

7.   Statement Seven

Plaintiffs also highlight a similarly broad statement about CEN in the Article as allegedly defamatory:

CEN's stories frequently contain lines from someone that no one else could persuade to talk, including the local media. And many of those quotes, especially those from anonymous "officials", include phrases that one would expect to hear from someone who grew up in the UK.

("Statement Seven"). (Id. ¶ 33.) Plaintiffs allege that, through Statement Seven, BuzzFeed "meant to and did imply that Mr. Leidig or others at CEN frequently make up quotes

8

included in CEN's stories," which is false and defamatory to Plaintiffs. (Id. ¶¶ 34-35.)

### 8. Statement Eight

Finally, Plaintiffs allege that the headline of the Article -- "The King of Bullsh*t News" ("Statement Eight") -- is an assertion that Plaintiffs "were in the business of publishing news articles presented as true that are false, and known to be false by [Plaintiffs], and that [Plaintiffs] are the largest purveyors of such articles in the world." (Id. ¶¶ 2-3.) Plaintiffs assert that Statement Eight is false and defamatory. (Id. ¶¶ 4-5.)

### B. PROCEDURAL BACKGROUND

Plaintiffs sued BuzzFeed on January 25, 2016. Shortly thereafter and prior to discovery, Plaintiffs moved for partial summary judgment, arguing that the Article's statements were defamatory and false as a matter of law and that neither CEN nor Leidig could be a public figure for the purposes of this action. (See Dkt. No. 16.) On May 9, 2017, the Court denied the motion, finding that "there remain numerous genuine issues of material fact such that filing a motion for summary judgment would be premature and granting it would be improper." Leidig v. BuzzFeed, Inc., No. 16 Civ. 542, 2017 WL 2303670, at *5 (S.D.N.Y. May 9, 2017) (hereafter,

"May 2017 Order," Dkt. No. 47). The parties spent the next year engaged in discovery.

On August 22, 2018, BuzzFeed filed a motion for summary judgment pursuant to Rule 56. (See Motion; see also "Notice of Motion," Dkt. No. 101.) In conjunction with the Motion, BuzzFeed submitted a statement of 216 numbered undisputed material facts, as required by the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. (See "BuzzFeed's Rule 56.1 Statement," Dkt. No. 103.) In sum, BuzzFeed argues that Plaintiffs cannot establish a genuine dispute of material fact regarding the falsity of the eight statements and the requisite degree of fault with which BuzzFeed made the statements, regardless of whether Plaintiffs are public figures.

On September 12, 2018, Plaintiffs responded to the Motion. (See "Opposition," Dkt. No. 115.) Plaintiffs also submitted their own statement of 79 numbered undisputed material facts, but contested only one undisputed material fact contained in BuzzFeed's Rule 56.1 Statement. (See "Plaintiffs' Rule 56.1 Counter Statement," Dkt. No. 112.) Plaintiffs argue that they have sufficient evidence to show that the publication is false, that Plaintiffs are not public figures, and, even if they are public figures, enough evidence

10

of actual malice exists to nevertheless fulfil the fault requirement for libel claims. (See Opposition at 13-24.)

On September 27, 2018, BuzzFeed filed a reply in support of its Motion, as well as a reply to Plaintiffs' Rule 56.1 Counter Statement. (See Dkt. Nos. 116, 117.)

## II.  **LEGAL STANDARDS**

A. RULE 56(A)

Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Celotex Corp., 477 U.S. at 323; Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment. See Shannon v. New York City Transit Auth., 332 F.3d 95, 98—99 (2d Cir. 2003).

11

In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008); see also Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) ("Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication.") (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). Although the party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), if there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. See Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

B. LOCAL RULE 56.1 STATEMENTS

Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires the party moving for summary judgment to file "a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule

56.1(a). The non-moving party opposing the motion for summary judgment "shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Rule 56.1(b). In addition, the facts set forth in a moving party's statement "will be deemed to be admitted" by the opposing party's statement "unless specifically controverted." Local Rule 56.1(c). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001).

C. LIBEL

To make a case of libel under New York law, a plaintiff must establish the following five elements:

> 1) a written defamatory statement of fact concerning the plaintiff;
> 2) publication to a third party;
> 3) fault (either negligence or actual malice depending on the status of the libeled party);
> 4) falsity of the defamatory statement; and
> 5) special damages or per se actionability (defamatory on its face).

Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000); see also Church of Scientology Int'l v. Eli Lilly & Co., 778 F. Supp. 661, 666 (S.D.N.Y. 1991). Based on

the parties' arguments, this Order largely focuses on the fourth element, the falsity of the defamatory statements.

A defamatory statement of fact is one "which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Balestriere PLLC v. CMA Trading, Inc., No. 11 Civ. 9459, 2014 WL 929813, at *16 (S.D.N.Y. Mar. 7, 2014) (internal quotation marks and citations omitted); see also Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005); Foster v. Churchill, 642 N.Y.S.2d 583, 587 (1996). "[O]nly factual statements are actionable as defamation or libel[,]" because "New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014).

Upon reviewing the statement in question, a court "must give the disputed language a fair reading in the context of the publication as a whole" and construe it as the intended readership would. Celle, 209 F.3d at 177 (quoting Armstrong v. Simon & Schuster, Inc., 625 N.Y.S.2d 477, 481 (1995)). When a statement's defamatory implication is at issue, a plaintiff must make "an especially rigorous showing" that "the language may be reasonably read to impart a false

14

innuendo," and "that the author intends or endorses the defamatory inference." Biro v. Conde Nast, 883 F. Supp. 2d 441, 465-66 (S.D.N.Y. 2012) (internal quotation marks omitted).

Despite truth often being framed as a defense to libel, the burden of proving the falsity of a statement rests with the plaintiff. "The standard for assessing falsity is informed by the 'common law of libel[,] . . . [which] overlooks minor inaccuracies and concentrates upon substantial truth.'" Blair v. Inside Edition Prods., 7 F. Supp. 3d 348, 357 (S.D.N.Y. 2014) (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516 (1991)). "[W]here 'the substance, the gist, [or] the sting' of a statement is true, it cannot be libelous." Stern v. Cosby, 645 F. Supp. 2d 258, 276 (S.D.N.Y. 2009) (quoting Masson, 501 U.S. at 517).

However, truth does not necessarily entail pinpoint accuracy about the statements either. "New York law recognizes that an alleged libel is not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 242-43 (2d Cir. 2017). Where "the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their

ordinary usage to sustain a charge of libel, no legal harm has been done." Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 303 (2d Cir. 1986) (quoting Cafferty v. Southern Tier Publ'g Co., 226 N.Y. 87, 93 (1919)).

"The 'substantial truth' standard finds basis in the realities and purposes of defamation law." Tannerite Sports, 864 F.3d at 243. To require absolute accuracy of allegedly libelous statements would damage a system of "reasonable regulation . . . by an overly technical or exacting conception of truth in publication." Id. (quoting Cafferty, 226 N.Y. at 93).

Necessarily, in order to assess a statement for falsity or substantial truth, the statement must be specifically identified by the plaintiff. See id. at 251. Such "specificity is necessary so defendants and courts may address themselves to the parts of a communication alleged to be false and defamatory instead of those not objected to." Id. Even a short publication "often includes thousands of direct statements and implied messages whose veracity could be questioned by a defamation plaintiff." Id.

A defendant can prevail on a motion for summary judgment if it can show that "no rational jury could find . . . that the statements at issue are false." Blair, 7 F. Supp. 3d. at

16

358.[1] Put another way, if a defendant can conclusively establish the statements' truth or substantial truth, the libel claim must fail, resulting in summary judgment in favor of the defendant. See id. at 359 (granting summary judgment for defendant media company after finding that a statement calling plaintiff a "squatter[,]" even if "literally false[,]" sufficiently captured the "'substance' or 'gist'" of the truth); see also Chau, 771 F.3d at 130 (affirming district court's dismissal of libel claims and finding statements that plaintiffs, financial traders, made "bets" and "fear[ed] . . . that the U.S. economy would strengthen" as "substantially true" because "bets are the nature of much of the financial market").

## III. **APPLICATION**

BuzzFeed argues that Plaintiffs cannot show the falsity of the allegedly defamatory statements, and thus Plaintiffs' claims must fail. The Court agrees. In the face of repeated instances where BuzzFeed points to specific evidence

---

[1]     "The Supreme Court has not yet expressed a view on 'whether the element of falsity must be established by clear and convincing evidence or by a preponderance of the evidence.'" Blair, 7 F. Supp. 3d. at 357 (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 661 n.2 (1989)). While BuzzFeed does not address this point, Plaintiffs assert that the burden of proof for falsity turns on whether Plaintiffs are public or private figures. (See Opposition at 11-12.) Because Plaintiffs fail to carry their burden under either standard, the Court need not determine whether Plaintiffs are public or private figures or the proper burden of proof under New York law in these circumstances.

17

supporting the truth of the Article, Plaintiffs' sole rejoinder is that neither Leidig nor any CEN employee admitted to knowingly publishing "a fake news story" or to "add[ing] phony quotations to a story." (Opposition at 15-16.) Although such "bland cryptic claim[s] of falsity supported by the credibility of a witness might be sufficient to establish a proposition in other civil cases, the First Amendment demands more." Celle, 209 F.3d at 188 (reversing jury verdict in plaintiffs' favor where the only evidence of falsity was one plaintiff's testimony that the allegedly defamatory statement was not true); see also D'Amico, 132 F.3d at 149. Apart from these statements, Plaintiffs provide no evidence that BuzzFeed's eight statements about the CEN stories are false. As such, no jury could find BuzzFeed's statements to be false. See Blair, 7 F. Supp. 3d. at 358.

Plaintiffs' inability to identify a genuine dispute of material fact is best exemplified by their decision to contest only one of the over two hundred numbered paragraphs in BuzzFeed's Rule 56.1 Statement. For the remainder of the statements, Plaintiffs rely the blanket denial that "[i]n not challenging [BuzzFeed's] other 215 assertions of fact, [P]laintiffs do not mean to concede that any particular ones are relevant and material to the issues raised on this motion[.]" (Plaintiffs' Rule 56.1 Counter Statement at 2.)

18

Plaintiffs' "blanket denial" does not even "purport to dispute the facts that are material" to the disposition of BuzzFeed's Motion. <u>Chimarev v. TD Waterhouse Inv'rs Services, Inc.</u>, 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (accepting as true facts set forth in a Rule 56.1 statement because the counter-statement consisted solely of "blanket denials" and was "not supported by citation to any evidence"), <u>aff'd</u>, 99 Fed. App'x 259 (2d Cir. 2004). Moreover, Plaintiffs' Rule 56.1 Counter Statement presents no other facts that dispute the key facts regarding falsity contained in BuzzFeed's Rule 56.1 Statement. These concessions doom Plaintiffs' Opposition. Absent any facts validating CEN's stories and supported by evidence, no jury could find for Plaintiffs on falsity.

Plaintiffs' strategy of painting with broad brush strokes is not limited to blanket denials. Plaintiffs also attempt to expand the scope of their claims in the Opposition. That is, because "Plaintiffs' pleading is a complaint, not a bill of particulars[,]" Plaintiffs assert that the Court should analyze "the libelous 'sting' of the article as a whole, not the effect of the" eight statements at issue. (Opposition at 24.) Plaintiffs now "challenge any assertion in the [A]rticle that [P]laintiffs make up stories or fabricate quotes." (<u>Id.</u>) The Court rejects Plaintiffs'

maneuver -- which would force BuzzFeed to defend a moving target -- because Plaintiffs must specifically identify the defamatory statements relevant to their claims. See Tannerite Sports, 864 F.3d at 251. The only relevant statements for Plaintiffs' claims are the eight excerpted in the Complaint.

Thus, whereas in the May 2017 Order the Court was wary of making determinations regarding the falsity of the eight statements on the basis of allegations in a complaint, now, with discovery concluded, it is clear that Plaintiffs cannot meet their burden. Because the Court finds that Plaintiffs cannot satisfy the falsity element for any of the eight statements, the Court does not address BuzzFeed's alternative argument that Plaintiffs are public figures and would need to show that BuzzFeed made the statements with actual malice as to their falsity.

A. STATEMENT ONE

In Statement One, the Article describes the Cabbage Story as "debunked," implying that Plaintiffs manufactured false quotes of individuals walking cabbages on leashes to combat depression. Plaintiffs claim that the quotes contained in the Cabbage Story are true, and that the persons quoted are real. (Complaint ¶ 31.) However, deposition testimony from Leidig and CEN's employees belie these claims. Leidig could not verify the quotes, but claimed that John Feng

("Feng"), a journalist employed by CEN, was responsible for writing and researching the Cabbage Story. (See "August 2017 Leidig Dep. Tr.," Dkt. No. 104-6 at 48:5-16, 58:21-24, 164:7-23; April 2018 Leidig Dep. Tr. 330:20-332:25.)

Yet Feng admitted that he did not work on the Cabbage Story because he started work at CEN only two months after CEN distributed the story to clients. (See "Feng Dep. Tr.," Dkt. No. 104-12 at 29:4-24, 47:4-13, 164:6-15.) Further, when Feng researched the Cabbage Story in connection with the Article, he was unable to verify the quotes CEN included in their story. (See id. 38:13-44:2.) In fact, Feng ultimately verified BuzzFeed's findings that the Cabbage Story originated from an artist who started placing cabbages on leashes as part of his artistic work. (See id. 40:21-41:9.)

Other than Leidig's self-serving and discredited testimony, which is plainly insufficient to support a motion for summary judgment, see Celle, 209 F.3d at 188, Plaintiffs offer no evidence regarding the Cabbage Story's veracity. Even CEN's employees could not trace or verify any relevant quotes or sources. Thus, the Court finds that Statement One regarding the Cabbage Story is at least substantially true and there are no genuine issues of material fact regarding its falsity.

B. STATEMENT TWO

The Article covers CEN's Sashimi Tapeworm Story and claims that CEN failed to alert its customers that the website *Snopes* debunked the story. (Complaint ¶¶ 38-44.) According to BuzzFeed, *Snopes* reported that certain x-ray photographs accompanying the Sashimi Tapeworm Story were "similar to those included in a 2014 case report published by the British Medical Journal that dealt with a man who contracted a rare case of disseminated cysticercosis through the consumption of uncooked pork (with no mention of raw fish)." (Id. ¶ 38.)

To start, Plaintiffs never argue that BuzzFeed's reporting on *Snopes*' findings was inaccurate, regardless of the findings' underlying truth. Necessarily then, their claims regarding Statement Two must fail. But even when assessing the Sashimi Tapeworm Story itself, as with the Cabbage Story, Plaintiffs do not offer evidence supporting the veracity of their version. Although Plaintiffs' reporting database listed Leidig as the story's writer, he explained that Feng would have been the one to speak to the doctors mentioned in the story. (See April 2018 Leidig Dep. Tr. 418:2-425:16.) However, Feng stated that he did not contact any doctors in China for this story and, once again, could not corroborate Leidig's testimony. (See Feng Dep. Tr. 92:20-

94:21.) Plaintiffs never claim to have sent a correction to their subscribers.

Plaintiffs fail to provide any support for their position that BuzzFeed's reporting on the Sashimi Tapeworm Story was false. Thus, the Court finds that Statement Two regarding the Sashimi Tapeworm Story is at least substantially true and there are no genuine issues of material fact regarding its falsity.

C. STATEMENT THREE

Next, the Article describes the Pink Kitten Story, in which Plaintiffs wrote that Lenina's pet kitten died as a result of being dyed pink. (Complaint ¶¶ 46-48.) BuzzFeed's Tom Phillips ("Phillips") authored this part of the Article, relying on the reporting of an online authentication website, *Gawker's Antiviral*. According to Phillips, *Gawker's Antiviral* reported that Lenina "had posted pictures of her kitten on social media (very much alive)." ("Phillips Decl.," Dkt. No. 105 ¶¶ 24-29; id. Ex. 10.) Phillips relied on *Gawker's Antiviral* because he found the website "to be particularly good at verifying viral news and [it] had a great reputation for this kind of work." (Id. ¶ 26.) He also independently reviewed the photographic evidence upon which *Gawker's Antiviral* relied. (Id.)

The most straightforward reading of Statement Three is simply as a summary of *Gawker's Antiviral* findings regarding the Pink Kitten Story. Much like the situation regarding BuzzFeed's summary on *Snopes'* findings about the Sashimi Tapeworm Story, because Plaintiffs do not contest the Article's summary of *Gawker's Antiviral* findings (regardless of their underlying truth), they fail to show the statements are false for the purposes of their libel claims.

However, another, more strained, reading of the Article is that BuzzFeed's repetition of *Gawker's Antiviral* findings is an independent assertions by BuzzFeed. Even when evaluating the Article in this light, which is the most favorable to Plaintiffs, Plaintiffs still cannot show falsity. In Statement Three, BuzzFeed summarizes *Gawker's Antiviral's* findings that "[t]he kitten was not dead. Lenina was in fact simply posting pictures of her -- very much alive -- kitten on social media. . . . [T]his appears to be a situation where CEN sold a false (and potentially defamatory) story . . . . Nor has there been any apparent attempt to correct the story since it was proved false." (Complaint ¶ 46.) The relevant factual assertions from Statement Three are that: (1) the kitten was alive, and this fact is evident from the photos posted by Lenina; (2) CEN sold a false story that the kitten was dead; and (3) there has been no apparent

24

attempt to correct the story despite its being false. Plaintiffs must show that there is a material issue of fact regarding the falsity of all three of these statements.

Regarding the first two assertions, Plaintiffs present no evidence to show that Lenina's kitten was dead at the time they reported the Pink Kitten Story. Plaintiffs cannot even demonstrate that they investigated the kitten's status before writing the Pink Kitten Story. That is, Plaintiffs (once again) could not depend on their own reporting database to determine who wrote the story and who could verify its contents. (See April 2018 Leidig Dep. Tr. 370:13-373:13, 381:23-382:15; id. Ex. 76.)

Plaintiffs also do not contest the third assertion. In a book entitled Buzz Bottom Feeders, which was written by Leidig and intended to refute the Article (see id. 299:18-301:7), Plaintiffs acknowledge that to "issue a correction is to admit a mistake was made, and that makes clients nervous[,]" and which is why their related story, *Pretty in Pink Kitten is Still Alive Claims Star*, was simply a "follow-up," and not a correction. (See id. Ex. 64 at 13, 22.) Thus, the part of Statement Three in which BuzzFeed claims that CEN never corrected the Pink Kitten Story is substantially true.

In sum, Plaintiffs provide no evidence to refute *Gawker's Antiviral's* or BuzzFeed's reporting that the kitten

was alive when the Pink Kitten Story was first published. Plaintiffs also acknowledge that the second story by CEN is simply a "follow-up" as opposed to a correction. Thus, Plaintiffs fail to point to a genuine issue of material fact in relation to the falsity of Statement Three.

D. STATEMENT FOUR

In Statement Four, BuzzFeed asserts that CEN "appears" to have copied "photos, invented a newsworthy narrative, inserted false names for the women, credited a nonexistent photographer, and fabricated four sets of quotes to fill out the text." (Complaint ¶ 55.) BuzzFeed supports those assertions through the declaration of Craig Silverman ("Silverman"), a journalist who contacted Gene Oryx ("Oryx"), the photographer who took the photos of the nude women that CEN used in the story. (See "Silverman Decl.," Dkt. No. 108 ¶¶ 42-43.) Oryx told Silverman that CEN published incorrect names for both the women and himself in the Nude Women Story. (See id.)

Plaintiffs do not refute those facts. During his deposition, Leidig could not provide any details regarding the Nude Women Story, including the source of the quotes that were used in CEN's reporting of the story. (See April 2018 Leidig Dep. Tr. 343:12-348:16.) Leidig assumed that such

26

details, including the names of the women as reported by CEN,
arose from other Russian media outlets. (Id. 348:11-16.)

Plaintiffs rely exclusively on the conclusory
declaration of Fleming Emil Hansen ("Hansen"), which was
originally filed in connection with Plaintiffs' motion for
summary judgment. (See "Hansen Decl.," Dkt. No. 19.) Citing
the declaration, Plaintiffs claim that they were merely
parroting Russian media reports, and did not falsify names or
quotes. (See Opposition at 4.) Plaintiffs further assert that
"the professional photographer contacted by BuzzFeed wasn't
the only one taking pictures that day" and CEN did not use
Oryx's photographs. (Id.)

Upon examination, Hansen's three-page declaration proves
to be unreliable and, of greater concern for Plaintiffs,
unhelpful to them. Hansen asserts that CEN picked up the story
from Russian media outlets and that there were other
photographers who effectively seeded the story for local
media. (Hansen Decl. ¶¶ 4-6.) But Hansen never refutes that
CEN used Oryx's photograph. Further, despite describing
widespread coverage of the Nude Women Story in Russian media,
Hansen attaches only a single example from a Russian website
allegedly covering the episode. (See id. Ex. 2.) That example
is accompanied by an unauthenticated machine translation,
which does not include any of the critical details the Article

27

claims CEN made up. (Compare id. Ex. 2, with Complaint ¶ 55 and April 2018 Leidig Dep. Tr. Ex. 71.)

Thus, even if there were other photographers covering the story, Plaintiffs do not present any evidence to substantiate the origin of the names or quotes CEN reported in the Nude Women Story -- let alone that they are accurate. The photograph used in the CEN story is clearly attributable to Oryx (see Silverman Decl. ¶¶ 43-46; id. Ex. 15), and it is irrelevant that there were other photographers present if CEN did not speak with them or use their photographs. Hence, the Court finds that Statement Four is substantially true, and there is no genuine issue of material fact in relation to its falsity.

E. STATEMENT FIVE

In Statement Five, BuzzFeed questions how Plaintiffs managed to get a quote for CEN's Two-Headed Goat Story from the farmer when local news agencies were unable to do so, implying that the quotes are fabricated. (See Complaint ¶ 62.) Silverman, who wrote this portion of the Article, traced the photograph of the goat published in the CEN story to Xinhua News Agency, which had first reported the same story, but without some of the quotes that appeared in the CEN version. (See Silverman Decl. ¶¶ 33-35.) Silverman also consulted with "an expert in digital photo forensics," who

28

concluded that the photograph was "either a digital composite or a series of selective enhancements." (Id. ¶¶ 36-40.)

Unsurprisingly, Leidig stated in his depositions that he does not know where the quotes in the Two-Headed Goat Story came from. (See April 2018 Leidig Dep. Tr. 444:17-445:22.) Further, CEN's attempt to verify the story failed. After the Article was published, Feng was unable to verify CEN's reporting or find any of the disputed quotes in the Article, even though he allegedly managed to find other local-media interviews with the farmer that he translated which did not contain the details CEN reported. (See Feng Dep. Tr. 142:17-144:7.) Under these circumstances, it does not appear that anyone at CEN ever spoke directly with the farmer.

Plaintiffs fail to provide any support for their position that BuzzFeed's reporting on the Two-Headed Goat Story was false. Thus, the Court finds that Statement Five is substantially true and there are no genuine issues of material fact regarding its falsity.

F. STATEMENT SIX

The remaining statements, including Statement Six, do not address specific stories or reports by Plaintiffs. Instead, they are broader statements about the operations of Plaintiffs, and, in some sense, suggest reasonable inferences of conclusions that follow from BuzzFeed's reporting on the

veracity of the individual CEN stories highlighted in the
Article. (See Complaint ¶¶ 1, 7, 33.)

Statement Six allegedly implies that, because Plaintiffs
suffered financial losses "after 9/11" and "seemingly never
recovered, . . . it appear[ed]" Leidig launched these various
news websites through which Plaintiffs "[scoured] for images
and posts on social networks that [Plaintiffs] could weave a
story around in order to hit up old clients with a new kind
of content." (See Complaint ¶ 7; see also Dkt. No. 1-1 at
8.)[2]

Plaintiffs fail to produce any evidence supporting their
allegations that the facts or implied facts in Statement Six
are false. On the other hand, BuzzFeed supports Statement Six
with Leidig's own words. Leidig wrote about CEN's origins in
an article dated March 14, 2013. (See "Press Gazette Article,"

---

[2]     The use of speculative language such as "seemingly" and "appears"
indicates that Statement Six could be construed as one of opinion rather
than fact. See, e.g., Bellavia Blatt & Crossett, P.C. v. Kel & Partners
LLC, 151 F. Supp. 3d 287, 293-94 (E.D.N.Y. 2015) (rhetorical indicators
such as the use of "appeared to be," "might well be," "could well happen,"
and "should be" "signal presumptions and predictions rather than facts"
(internal quotation marks omitted)); Biro, 883 F. Supp. 2d at 460 ("Often,
statements of 'rhetorical hyperbole' or 'imaginative expression' are held
not actionable, because they 'cannot reasonably be interpreted as stating
actual facts' that could be proved false." (quoting Milkovich v. Lorain
Journal Co., 497 U.S. 1, 20, 25 (1990))). Although BuzzFeed never raised
this argument, determining a statement's falsity necessarily requires
that the Court first determine whether the statement conveys fact (and is
verifiable) or opinion (and is non-verifiable). Nevertheless, even though
the facts are fully developed and Plaintiffs thus would not suffer any
prejudice from a ruling regarding whether Statement Six constitutes an
opinion, the Court declines to rule against Plaintiffs on grounds not
explicitly raised by BuzzFeed. See, e.g., In re 650 Fifth Ave. & Related
Props., 830 F.3d 66, 96-97 (2d Cir. 2016).

April 2018 Leidig Dep. Tr. Ex. 19.) In the Press Gazette Article, Leidig confirmed that he founded CEN, in part, because of the financial difficulties arising from reliance on original content. Thus, he changed his business model as "there was no longer value in original content, and that was because of the competition from the internet." (Id. at 7.) These statements support the part of Statement Six which claims that Plaintiffs altered their business model in the face of financial difficulties.

As for the remainder of Statement Six, Plaintiffs claim that it implies that Plaintiffs are in the "business of fabricating and selling fake news stories" (see Complaint ¶ 8), but do not even attempt to make the "especially rigorous showing" that BuzzFeed "intend[ed]" or "endorse[d]" that implication beyond the specific stories covered in the Article. Biro, 883 F. Supp. 2d at 465-66. Because Plaintiffs are unable to refute BuzzFeed's specific factual claims in the Article, they also cannot refute the more general claim in Statement Six. Consequently, the Court finds that Plaintiffs are unable to meet their burden of demonstrating a genuine issue of fact regarding the falsity of Statement Six.

31

## G. STATEMENT SEVEN

Statement Seven implies that CEN falsifies quotes in part because "CEN's stories frequently contain lines from someone that no one else could persuade to talk." (See Complaint ¶¶ 33-34.) Of course, as is apparent from the discussion of Statements One through Five above, Plaintiffs have presented no evidence to refute a single specific instance in the Article where BuzzFeed alleges CEN falsified a quote. Thus, Plaintiffs must rely on self-serving blanket denials that they do not falsify quotes. (See, e.g., "Leidig Decl.," Dkt. No. 18 ¶ 2; "Martinez Dep.," Dkt. No. 104-17 at 58:25-59:9; see also Opposition at 3-4.) However, as the Court has explained, such blanket denials are inadequate. See Celle, 209 F.3d at 188. Plaintiffs fail to provide any support that Statement Seven was false. Thus, the Court finds that Statement Seven is substantially true and there are no genuine issues of material fact regarding its falsity.

## H. STATEMENT EIGHT

Plaintiffs allege that the headline of the Article -- "The King of Bullsh*t News," intends and asserts that Plaintiffs are, in fact, "The King of Bullshit News" and that Plaintiffs are "in the business of publishing news articles presented as true that are false, and known to be false by

[Plaintiffs], and that [Plaintiffs] are largest purveyors of such articles in the world." (Complaint ¶¶ 1-3.)

At best, any defamatory fact gleaned from this headline manifests an implication supported by the substantial truth of the Article itself. Much as is the case regarding with Statements Six and Seven, however, Plaintiffs fail to specify how the headline implies any defamatory fact the statement embodies that is not contained in the rest of the Article. The only possible additional defamatory fact is that Plaintiffs read, without any support, the reference to "king" in the headline to mean "largest." In context, such an interpretation derives not from the actual text of the headline, but from the hyperbolic spin Plaintiffs put on it, especially in their reference to "largest purveyors in the world." (Id.) But, even if this construction reflected a fair reading, the difference between being the "largest" or a "large" purveyor of such news stories is immaterial in the context of this Article. See Tannerite, 864 F.3d at 242-43. Such fine distinctions between "largest" and "large" are likely to be lost on the reader considering the "substantial

truth" of the facts and reporting in the Article. See id. at
243.

Because Plaintiffs are unable to demonstrate that
Statement Eight is false, the Court finds that there are no
genuine issues of material fact regarding its falsity.

* * *

For each of the eight statements that comprise
Plaintiffs' libel claims, BuzzFeed has shown that no
reasonable juror could find the statement or its reasonable
implications false. Because falsity is a required element of
Plaintiffs' libel claims, the Court must enter judgment in
favor of BuzzFeed.

## IV.  ORDER

Accordingly, it is hereby

**ORDERED** that the motion of defendant BuzzFeed Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. Nos. 101, 102) dismissing the action herein brought by plaintiffs Michael Leidig and Central European News Ltd is **GRANTED**.

The Clerk of the Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           27 March 2019

VICTOR MARRERO
U.S.D.J.